**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM WILSON, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> AURORA CANNABIS INC., TERRY BOOTH, STEPHEN DOBLER, GLEN IBBOTT, CAM BATTLEY AND MICHAEL SINGER, <br><br> Defendants. | No.: 2:19-cv-20588-JMV-JBC <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DILIP PARMANAND TO: (1) CONSOLIDATE RELATED ACTIONS; (2) APPOINT LEAD PLAINTIFF; AND (3) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL** <br><br> <u>CLASS ACTION</u> <br><br> **Motion Date: February 18, 2020** |

[Additional caption on next page]

i

| | |
|---|---|
| ANDREW L. WARREN, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>AURORA CANNABIS INC., TERRY BOOTH, STEPHEN DOBLER, GLEN IBBOTT, CAMERON BATTLEY, MICHAEL SINGER and JASON DYCK,<br><br>　　　　Defendants. | No.: 2:20-cv-00555-JMV-JBC<br><br>CLASS ACTION |

# TABLE OF CONTENTS

BACKGROUND ............................................................................................1
ARGUMENT ................................................................................................8
  I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED ......................8
  II.  MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF ......................9
    A.  MOVANT IS WILLING TO SERVE AS A CLASS REPRESENTATIVE 10
    B.  MOVANT HAS THE LARGEST FINANCIAL INTEREST..................10
    C.  MOVANT SATISFIES THE REQUIREMENTS OF RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE ...................................................11
    D.  MOVANT WILL FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS .......................................................................12
  III. MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED...13
CONCLUSION .............................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008)...................................................................................9
*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998).....................................................................................9
*In re Vicuron Pharm., Inc. Sec. Litig.*,
   225 F.R.D. 508 (E.D. Pa. 2004) ................................................................................8, 9

**Statutes**

15 U.S.C. § 78u-4...........................................................................................6, 7, 8, 10, 11

**Rules**

Fed. R. Civ. P. 42(a)........................................................................................................6
Rule 23(a)....................................................................................................................7, 9

Plaintiff Dilip Parmanand ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)    the related actions should be consolidated as they involve common questions of law and fact and consolidation would promote judicial economy;

(b)    appointing Movant as Lead Plaintiff for the Class of all persons or entities who purchased or otherwise acquired publicly traded securities of Aurora Cannabis Inc. ("Aurora" or the "Company") between October 23, 2018 and January 6, 2020, inclusive (the "Class Period"); and

(c)    approving Movant's selection of The Rosen Law Firm P.A. ("Rosen Law") as Lead Counsel.

## BACKGROUND

This action was filed on November 21, 2019 against the Company and certain of its officers, directors, and underwriters for violations under the Exchange Act. That same day an early notice, pursuant to the PSLRA, was issued advising class members of, *inter alia,* the allegations and claims in the complaint, the Class

Period, and advising class members of their option to seek appointment as Lead Plaintiff. A copy of the early notice is attached as Exhibit 1 to the Declaration of Laurence M. Rosen filed herewith ("Rosen Decl." or "Rosen Declaration").

On January 16, 2020, the later filed action *Warren v. Aurora Cannabis Inc., et al.,* Case No. 2:20-cv-00555-JMV-JBC (the *Warren* action) was filed. The *Warren* action brings substantially the same claims under the Exchange Act against the substantially the same defendants, with an extended class period.1

Aurora purports to produce and distribute cannabis products. It is vertically integrated and horizontally diversified across various segments of the cannabis value chain, including facility engineering and design, cannabis breeding, genetics research, production, derivatives, high value-add product development, home cultivation, wholesale, and retail distribution. The Company produces various strains of dried cannabis, cannabis oil and capsules, and topicals kits. Aurora has been publicly traded on the Toronto Stock Exchange since July 2017, was traded

---

1 The action *Wilson  v. Aurora Cannabis Inc., et al.,* 2:19-cv-20588-JMV-JBC ("*Wilson* Action") has a class period of September 11, 2019 and November 14, 2019. The action *Warren v. Aurora Cannabis Inc., et al*., 2:20-cv-00555-JMV-JBC ("*Warren* Action") has a class period of October 23, 2018 and January 6, 2020. A more inclusive class period is favored at the lead plaintiff stage. *Deering v. Galena Biopharma, Inc.*, No. 3:14-CV-00367-SI, 2014 WL 4954398, at \*10 (D. Or. Oct. 3, 2014) (recognizing that courts commonly select "most inclusive class period" at lead plaintiff stage); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113- 114 (E.D.N.Y. 2012) (court favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage).

over-the-counter in the United States under the ticker symbol "ACBFF" until October 2018, and since October 23, 2018 has traded on the NYSE under the ticker symbol "ACB."

According to the complaints, Defendants throughout the Class Period made false and/or misleading statements and/or failed to disclose that: (1) defendants had materially overstated the demand and potential market for Aurora's consumer cannabis products; (2) Aurora's ability to sell products had been materially impaired by extraordinary market oversupply, including oversupply that was the product of Aurora's own aggressive ramp in production capacity; (3) Aurora's spending growth and capital commitments were slated to exceed its revenue growth; (4) as a result, Aurora faced heightened liquidity concerns and the need to significantly curtail capital expenditures, including halting the development of the Aurora Sun and Aurora Nordic 2 facilities; (5) Aurora had violated German law mandating that companies receive special permission to distribute medical products exposed to regulated irradiation techniques, threatening its primary European market access; (6) as opposed to the Company's representations, Aurora's revenue would decline in its first quarter of fiscal 2020 ended September 30, 2019; and (7) as a result, Defendants' statements about the Aurora's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at

all relevant times.

On October 18, 2018, Aurora issued a press release as an exhibit to a Form 6-K filed with the SEC, titled "Aurora Cannabis to Commence Trading on the NYSE," announcing that its common shares had been approved for listing on the NYSE and would commence trading effective the open of markets, October 23, 2018. In the press release, defendant Booth touted the "growing" demand for consumer cannabis. That press release also noted that Aurora's facilities were built to meet EU GMP standards and Aurora Deutschland was certified.

On November 12, 2018, the Company issued a press release announcing its first quarter 2019 financial results. The release touted Aurora's 260% revenue growth and its production increases. On January 8, 2019, Aurora issued a press release in which the Company represented that its strategic expansion was well underway and that it was executing in not only increasing revenues, but also in controlling costs, as it saw "sustained strong demand from the adult usage market[.]"

On February 11, 2019, the Company issued a press release announcing its second quarter 2019 results. The press release stated that the Company had achieved "83% Sequential Net Revenue Growth to $54.2 Million." In addition, the Company touted the progress it was purportedly making on its Aurora Sky facility,

4

which it claimed would yield production efficiencies. This press release also touted the strong and sustained demand for the Company's products.

Also on February 11, 2019, Aurora hosted its second quarter 2019 earnings call led by defendants Booth, Ibbott, and Battley. During the call, defendant Battley emphasized the "strong market demand" for the Company's products that purportedly justified ramping up production. Defendant Battley also represented that in Europe, Aurora "continue[d] to capitalize on the strong central presence [it had] established in Germany."

On June 21, 2019, Aurora issued a press release stating that it was "prepared" for the "expansion of Canada's cannabis market." On October 3, 2019, Aurora issued a press release updating investors on its global growth initiatives and operations, and specifically on the status of its construction projects for the Aurora Nordic 2 and Aurora Sun facilities. This press release stated that Aurora Sun and Aurora Nordic 2 were near completion and work was continuing on both projects.

Then, on November 14, 2019, Aurora announced extremely disappointing financial results for its first quarter of 2020, with a net income decrease of 90% year-over-year, and a 50% larger loss than analyst expectations. The Company also reported a 25% sequential decline in sales. Aurora also announced that it was indefinitely deferring the remaining construction and commission activities at

Aurora Sun and Aurora Nordic 2.

During Aurora's earnings call to discuss its first quarter 2020 results, defendant Booth acknowledged the market oversupply and stated that this drop-off was anticipated heading into the quarter, despite defendants' prior statement to the contrary, stating that, "yes, we had a drop in cannabis sales, but it was anticipated. The provinces were oversupplied." Following this news, analysts and reports such as an article from *Marketwatch* noted that "it would be fair for investors not to believe [Aurora]."

On November 15, 2019, Aurora's share price fell $0.56 per share, from $3.29 per share on November 14, 2019 to $2.73 per share on November 15, 2019, or over 17%, on unusually heaving trading volume.

Then, on November 29, 2019, *Marijuana Business Daily* reported that German pharmacies were recently asked to stop the sale of Aurora's cannabis products by German health authorities. The report also stated the production step in question was connected to a method that Aurora uses to protect the shelf life of the flower, which was later reported to relate to irradiation techniques.

Following these revelations, the price of Aurora common stock again declined. On November 29, 2019, Aurora's share price fell $0.17 per share, from an open of $2.61 per share on November 29, 2019 to a close of $2.44 per share on

6

December 2, 2019, or approximately 7%.

On Friday, December 20, 2019, Aurora filed an insider transaction disclosure revealing that defendant Dyck had sold 1,082,500 shares of Aurora at C$3.095 per share, representing about 57% of his holdings. on Saturday, December 21, 2019, after an internal memo leaked, Aurora issued a press release announcing that defendant Battley, the Company's CCO, and would be stepping down. Media reports stated that Battley had been forced out.

On this news, the price of Aurora common stock fell once again. Aurora's share price fell from $2.25 per share on December 20, 2019 to $2.01 per share on December 23, 2019, or more than 10%.

Then, on January 6, 2020, media reports stated that the Company had listed its nine-hectare greenhouse in Exeter, Ontario, for sale for $17 million.

On this news, the Company's share price fell $0.19, from an open of $2.02 per share on January 6, 2020 to a close of $1.83 per share on January 7, 2020, or nearly 10%. As a result of defendants' wrongful acts and omissions, plaintiff and the Class purchased Aurora securities at artificially inflated prices, suffered significant losses and were damaged thereby.

## ARGUMENT

### I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. §78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

Both of the above-captioned related actions have been filed in this District alleging similar factual and legal grounds to support allegations of violations of the Exchange Act by Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the above-captioned cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

## II.  MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the latter of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Movant satisfies all of these criteria and is thus entitled to the presumption that he is the most adequate plaintiff of the class, and that, as a result, Movant should be appointed as Lead Plaintiff.

9

## A. MOVANT IS WILLING TO SERVE AS A CLASS REPRESENTATIVE

Movant has filed herewith a PSLRA certification attesting that it is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

## B. MOVANT HAS THE LARGEST FINANCIAL INTEREST

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). In assessing the largest financial interest, courts in the Third Circuit assess the following three factors in determining the movant with the largest financial interest: (i) the number of shares the movant purchased during the class period; (ii) the total net funds the movant expended during the class period; and (iii) the approximate loss the movant suffered. *In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (recognizing that the financial loss is the most significant of these factors).

Movant lost $246,666.66 in connection with its purchases of Aurora shares. *See* Rosen Decl., Ex. 3. Movant is not aware of any other movant that has suffered greater losses in Aurora securities during the Class Period. Accordingly, Movant

10

satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

### C. MOVANT SATISFIES THE REQUIREMENTS OF RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant satisfies the requirements of Rule 23 is sufficient. *Vicuron*, 225 F.R.D. at 511; *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 439 (S.D.N.Y. 2008). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182

11

F.R.D. 42, 49 (S.D.N.Y. 1998).

Movant fulfills the requirements of Rule 23. Movant's claims share substantially similar questions of law and fact with the members of the class, and his claims are typical of those of the members of the class. Movant and all members of the class allege that defendants violated the Exchange Act by failing to disclose material facts about the Company's business and financial condition. Movant, as did all of the members of the class, purchased Aurora securities at prices artificially inflated by Defendants' misstatements and omissions, and was damaged thereby. These shared claims also satisfy the requirement that the claims of the representative parties be typical of the claims of the class.

Thus, the close alignment of interests between Movant and other class members, as well as the strong desire of the proposed Lead Plaintiff to prosecute this action on behalf of the class, provide ample reasons to grant Movant's motion to serve as Lead Plaintiff.

### D. MOVANT WILL FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

(aa)  will not fairly and adequately protect the interests of the class; or

(bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Movant's ability, and his desire, to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses defendants could raise against him, that would render Movant inadequate to represent the Class. Accordingly, the Court should appoint Movant as Lead Plaintiff for the Class.

## III.    MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with lead plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been actively researching Movant's and the Class' claims including initiating this action, reviewing publicly available financial and other documents while gathering information in support of the claims against the defendants. Furthermore, the firm is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in numerous cases throughout the nation. The firm has prosecuted securities fraud class actions and other complex

13

litigation and obtained substantial recoveries on behalf of investors. Rosen Law's resume is attached as Exhibit 4 to the Rosen Declaration.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court issue an Order: (1) consolidating the related actions; (2) appointing Movant as Lead Plaintiff; (3) approving Lead Plaintiff's selection of Rosen Law as Lead Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: January 21, 2020                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen LR-5733
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and the Class*

14

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of January 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence M. Rosen