## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re AURORA CANNABIS INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Case No. 2:19-cv-20588-JMV-JBC<br><br>Motion Date: March 1, 2021<br><br>ORAL ARGUMENT REQUESTED |

## DEFENDANTS' REPLY BRIEF
## IN SUPPORT OF THEIR MOTION TO DISMISS
## THE AMENDED CLASS ACTION COMPLAINT

Kevin H. Marino
John D. Tortorella
MARINO, TORTORELLA & BOYLE P.C.
437 Southern Boulevard
Chatham, NJ 07928-1488
Phone: 973-824-9300
Fax: 973-824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

Stephen L. Ascher (*pro hac vice*)
Andrew J. Lichtman
Logan J. Gowdey (*pro hac vice*)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022-3908
Phone: 212-891-1600
Fax: 212-891-1699
sascher@jenner.com
alichtman@jenner.com
lgowdey@jenner.com

Howard S. Suskin (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654-3456
Phone: 312-222-9350
Fax: 312-527-0484
hsuskin@jenner.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

I.    **Plaintiffs Do Not Allege Any Actionable Misstatement or Omission** .......2

    A.    Plaintiffs Ignore Aurora's Timely and Detailed Risk Disclosures .........2

    B.    Many of the Alleged Statements Are Protected by the Safe Harbor and Are Not Otherwise Actionable ...................................................................5

II.   **Plaintiffs Do Not Adequately Allege Scienter** .............................................9

    A.    Plaintiffs Do Not Adequately Plead Scienter Under the Core Operations Doctrine.................................................................................9

    B.    The Timing of Events Does Not Support Scienter ...............................11

    C.    Stock-Financed Acquisitions Do Not Support Scienter .......................13

    D.    The AC Is Weaker for Lack of Internal Witnesses or Documents .......14

III.  **Plaintiffs' Loss Causation Allegations Are Inadequate.** ..........................15

CONCLUSION ...............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aetna, Inc. Sec. Litig.*,
  617 F.3d 272 (3d Cir. 2010) ...................................................................5, 8, 14

*In re Agria Corp. Sec. Litig.*,
  672 F. Supp. 2d 520 (S.D.N.Y. 2009) .............................................................13

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
  No. 09-md-2058, 2012 WL 1353523 (S.D.N.Y. Apr. 12, 2012) ........................9

*In re Cambrex Corp. Sec. Litig.*,
  No. 03-cv-4896, 2005 WL 2840336 (D.N.J. Oct. 27, 2005)..............................14

*In re Celgene Corp. Sec. Litig.*,
  No. 18-cv-4772, 2019 WL 6909463 (D.N.J. Dec. 19, 2019)
  (Vazquez, J.) ..................................................................................................14

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
  399 F.3d 651 (6th Cir. 2005) ...........................................................................8

*In re CPI Card Grp. Sec. Litig.*,
  No. 16-cv-4531, 2017 WL 4941597 (S.D.N.Y. Oct. 30, 2017) ........................13

*In re Galena Biopharma, Inc. Sec. Litig.*,
  No. 17-cv-929, 2021 WL 50227 (D.N.J. Jan. 5, 2021)
  (Vazquez, J.) ..................................................................................................15

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
  No. 13-cv-7050, 2017 WL 1536223 (D.N.J. Apr. 27, 2017) ........................7, 14

*Institutional Inv'rs Grp. v. Avaya*,
  564 F.3d 242 (3d Cir. 2009) ......................................................................10, 14

*In re JP Morgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005) .............................................................13

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
  437 F.3d 588 (7th Cir. 2006) ...........................................................................8

iii

*Medis Inv'r Grp. v. Medis Techs., Ltd.*,
   586 F. Supp. 2d 136 (S.D.N.Y. 2008) ................................................................10

*In re Merck & Co. Sec. Litig.*,
   432 F.3d 261 (3d Cir. 2005) .................................................................................8

*In re Newell Brands, Inc. Sec. Litig.*,
   No. 18-cv-10878, 2019 WL 6715055 (D.N.J. Dec. 10, 2019)
   (Vazquez, J.) ..................................................................................4, 5, 6, 13

*In re PXRE Grp. Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009) ...............................................................13

*Rahman v. Kid Brands, Inc.*,
   736 F.3d 237 (3d Cir. 2013) .......................................................................10, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).................................................................................8, 10, 13

*In re Toronto-Dominion Bank Sec. Litig.*,
   No. 17-cv-1665, 2018 WL 6381882 (D.N.J. Dec. 6, 2018) ...............................10

*In re ViroPharma Inc. Sec. Litig.*,
   21 F. Supp. 3d 458 (E.D. Pa. May 15, 2014) .....................................................14

*White v. H&R Block, Inc.*,
   No. 02-cv-8965, 2004 WL 1698628 (S.D.N.Y. July 28, 2004) ...........................9

*In re Yukos Oil Co. Sec. Litig.*,
   No. 04-cv-5243, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) ...........................9

**Statutes**

15 U.S.C. § 78u-5........................................................................................6, 7

iv

**INTRODUCTION**

Plaintiffs' Opposition does not cure the pleading deficiencies in the AC, including that Plaintiffs have failed to allege (i) actionable misstatements or omissions, (ii) a strong inference of scienter, or (iii) loss causation. Each of these independent grounds is fatal to Plaintiffs' claims.[1]

First, Plaintiffs try to manufacture omissions by dismissing Aurora's risk disclosures as "empty boilerplate," but in fact Aurora's disclosures included more than sufficient detail to alert investors to the risks of its nascent business. Plaintiffs similarly try to avoid the PSLRA's safe harbor, but again, Plaintiffs mostly ignore the relevant disclosures, which are specific and directly related to the alleged misstatements.

Plaintiffs' arguments in support of scienter are similarly unavailing. Plaintiffs argue that Defendants made statements "with actual knowledge" that statements were "false or misleading," but nothing in the AC supports this contention; indeed, Plaintiffs do not cite any confidential witnesses or internal documents suggesting any challenged statement was believed to be false when made. Plaintiffs also invoke the "core operations doctrine," but Plaintiffs do not allege specific information about Aurora's core operations that was known to and misrepresented by Defendants, so

---

[1] Unless noted otherwise, capitalized terms used in this reply brief have the same definitions as set forth in Defendants' Opening Brief. *See* Dkt. No. 32-1.

the doctrine does not apply.   Plaintiffs next point to the "temporal proximity" between Aurora's announcement about its EBITDA projections and its subsequent financial results.  But the timing of Aurora's miss does not support a strong inference of scienter, where, as here, the Company *was* tracking toward positive EBITDA throughout 2019 and missed its revenue projection by only 1%.  Similarly meritless is Plaintiffs' theory that Defendants had a motive to commit securities fraud because Aurora financed five acquisitions using Aurora's stock: Plaintiffs do not allege any personal gain to Defendants and Plaintiffs do not allege any causal connection between the alleged misrepresentations and the acquisitions.

Finally, with respect to loss causation, Plaintiffs' primary argument is that it would be "premature" to dismiss the case on the pleadings, but dismissal is appropriate, where, as alleged here, all the material facts were known to investors. [2]

## I.      Plaintiffs Do Not Allege Any Actionable Misstatement or Omission

### A. Plaintiffs Ignore Aurora's Timely and Detailed Risk Disclosures

Plaintiffs first argue that Defendants misled investors by warning about "*undersupply*, not *oversupply*."   Opp. at 2 (emphasis in original).   In reality, Defendants repeatedly disclosed both risks to investors.

For example, in September 2018—a month prior to the Class Period—Aurora

---

[2] Plaintiffs have dropped their argument based on Item 303, which does not provide a predicate for securities fraud against a Canadian issuer. *See* Opp. at 18 n.82.

disclosed "product sales expectations and corresponding forecasted increase in revenue" as a risk, and that the "sale and distribution of marijuana will fluctuate widely due to," among other reasons, "how young the marijuana industry is" and "global or regional consumptive patterns."  Opening Br. at 9 (quoting Ex. D at 54, 60).  The next month, the Company again disclosed that "projected sales" could be "materially different" than expected.  Opening Br. at 9 (quoting Ex. I at 3).  Thus, Aurora timely disclosed the risk of over-supply and under-demand.

Next, Plaintiffs admit that Defendants "did not fail to disclose the *fact* of limited outlets and a black market," but instead claim that Aurora's initial disclosures were "boilerplate" and that detailed disclosures were "belated."  *See* Opp. at 22–23.  Again, Plaintiffs ignore Aurora's detailed disclosures, which started before the beginning of the putative Class Period.  In particular, with respect to Plaintiffs' claim about "limited outlets," Aurora disclosed in September 2018 that "the Canadian recreational cannabis market will be subject to significant provincial and territorial regulation," which could "limit[]" Aurora's "ability to participate in such market."  Opening Br. at 8 (quoting Ex. D at 50).  A month later, Aurora disclosed "provincial regulations" as a risk factor.  *Id.* (quoting Ex. I at 3).  In November 2018, Aurora disclosed the risk of "actions by governmental authorities, including changes in laws, regulations, and guidelines, which may have adverse effects on the Company's operations."  *Id.* (quoting Ex. F at 35).  Aurora repeated

3

these disclosures throughout the putative Class Period, including additional detail as regulatory restrictions emerged. *See id.* at 19 (Ex. N at 15 (February 2019 earnings call explaining that the Canadian "retail infrastructure" would "take some time to iron out")). These detailed disclosures contradict Plaintiffs' claim that Aurora's disclosures were "boilerplate."

Likewise, Aurora's disclosures about the ongoing cannabis black market were timely and detailed. Plaintiffs do not dispute that the earliest press about the black market was in February 2019. *See* Opp. at 23–24. Aurora disclosed this risk at the very next earnings call after this risk appeared. *See* Opening Br. at 20.

These disclosures refute that Aurora's statements were false or misleading.[3] Rather, the more plausible explanation of the risks that materialized is that Aurora's expansion strategy in the nascent cannabis market was a "business decision[] made in good faith that d[id] not play out as hoped." *In re Newell Brands, Inc. Sec. Litig.*, No. 18-cv-10878, 2019 WL 6715055, at *11 (D.N.J. Dec. 10, 2019).[4]

---

[3] Plaintiffs misleadingly quote an analyst as saying that investors should not trust Aurora, implying that the analyst said investors could not trust Aurora's statements about supply and demand. Opp. at 16 (quoting AC ¶ 179). The quote is out of context; it was not a criticism related to these risk disclosures, but instead concerned whether to "trust [Aurora] *won't further dilute shareholders*." *See* Supplemental Certification of Kevin H. Marino, Ex. A (Nov. 15, 2019 Jefferies analyst report) (emphasis added).

[4] Plaintiffs attempt to distinguish this Court's on-point decision in *Newell* by arguing incorrectly that the plaintiffs there relied on "second-hand comparisons of industry competitors." Opp. at 21–22 & n.99. In fact, the *Newell* plaintiffs had a much

### B. Many of the Alleged Statements Are Protected by the Safe Harbor and Are Not Otherwise Actionable

Plaintiffs next offer a grab-bag of arguments around the PSLRA's safe harbor.

First, Plaintiffs argue that "[s]everal" statements are "then-current statements regarding then-existing supply and demand conditions and then-existing confidence in profitability." Opp. at 24–25. While Defendants agree that portions of statements referring to the present are not entitled to the safe harbor, many of the statements highlighted by Plaintiffs themselves explicitly refer to Aurora's future expectations.[5]

Second, Plaintiffs assert that Aurora's cautionary language in its SEC filings was not "meaningful." *See* Opp. at 27. Cautionary language is "meaningful" if it is "extensive, specific, and directly related to the alleged misrepresentation." *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 282 (3d Cir. 2010). Aurora's contemporaneous SEC filings include disclosures that address in detail each topic challenged by Plaintiffs, listing the "important factors that could cause actual results to differ materially from those in [Aurora's] forward-looking statement[s]" as required by the

---

stronger basis for their claims than Plaintiffs: "interviews with former Newell employees, customers, and suppliers." 2019 WL 6715055, at *2.

[5] *See, e.g.*, Opp. at 25 & Ex. A (stating expectation that "increasing production capacity *will result* in continued acceleration of revenue growth" (emphasis added)); *id.* (stating that "we are facing demand that outstrips supply" and "w[e] *anticipate* this dynamic to continue"); *id.* (stating that, "*[g]oing forward*, we see sustained strong demand" (emphasis added)); *id.* at 26 (stating that company expected to "*continue*[] to construct purpose-built facilities," referring to future construction (emphasis added)).

PSLRA. *Id.* (quoting 15 U.S.C. § 78u-5(c)(1)(A)(i)). Aurora's disclosures directly address the key issues that Plaintiffs identify about demand,[6] the lack of retail infrastructure,[7] and the ongoing black market.[8]  In fact, the cautionary language included in Exhibit A is comparable in specificity to the cautionary language this Court approved in *Newell*.  2019 WL 6715055, at *13 (holding that the safe harbor applied to risk factors including "reliance on purchases from large customers," a "relatively fragmented" customer base, a lack of long-term contracts, a "cost savings plan," and the risk of "organizational change").

Plaintiffs cite inapposite authorities addressing much more generic disclosures.  For instance, Plaintiffs cite cases in which defendants used "vague cautionary language [that] never change[d]," even as they admit in a footnote that

---

[6] *See* Ex. A, Statements No. 4 (statements about "future growth" and "product sales expectations" are forward looking), 6 (identifying risk based on "management's expectation of consumer demand in Canada."), 7–8 (same), 16 (same), 17 (same), 26–27 (same), 28–29 (same), 30 ("[S]hifts in market demand . . . could potentially reduce the market for our products."), 37–39 (statements about "future growth" and "product sales expectations" are forward looking), 40 (identifying risk based on "management's expectation of consumer demand in Canada.").

[7] *See* Ex. A, Statements No. 4 (noting risk from "actions by governmental authorities, including changes in laws, regulations and guidelines."), 6 (Risks include "the development of third party government and non-government adult-use sales channels."), 7–8 (same), 16 (same), 17 (same), 26–27 (same), 28–29 (same), 30 (noting risk of "significant provincial and territorial regulation" that "varies across provinces and territories and results in asymmetric regulatory and market environments."), 37–39 (noting risk of "the development of third party government and non-government adult-use sales channels."), 40–41 (same).

[8] *See* Ex. A, Statement No. 30 (Risk of "competition from illegal cannabis dispensaries, who do not have a valid license.").

6

Aurora's specific cautionary language *did* change as new risks emerged.  Opp. at 22 n.101 (citing *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, No. 13-cv-7050, 2017 WL 1536223, at *15 (D.N.J. Apr. 27, 2017)).  In *Hertz*, the "same sentence that appeared in [an early filing] continued to appear after [the defendant] announced that it had to . . . adjust its previously issued financial statements."  2017 WL 1536223, at *15.  In contrast, Aurora revised its disclosures as new information came to light.  *See supra* pp. 2–4.

Third, Plaintiffs claim that Defendants' financial projection of positive EBITDA is an actionable forward-looking statement because it was made "without a reasonable basis."  *See* Opp. at 29.  But Plaintiffs rely on pre-PSLRA cases for this statement of the law, *see id.* & nn.132–34[9]—reliance foreclosed by the statutory text, which denies liability for forward-looking statements unless plaintiffs allege "actual knowledge by [the speaker] that the statement was false or misleading."  15 U.S.C. § 78u-5(c)(1)(B).  Plaintiffs also claim that Defendants' EBITDA forecast was made with "an inadequate consideration of the available data," but this conclusory contention is unsupported by any such data—let alone evidence that Defendants' statements were knowingly false.  *See* Opp. at 29–30.

Finally, Plaintiffs fail to explain how the allegedly misleading statements are

---

[9] *In re Burlington Coat Factory Securities Litigation* was governed by pre-PSLRA standards because it was filed before the PSRLA took effect.  *See* 114 F.3d 1410, 1418 n.6 (3d Cir. 1997).

material.  Plaintiffs contend that Defendants' statements were not puffery because they contained an implicit factual basis.  Opp. at 30–31.  To support this argument, Plaintiffs selectively quote single phrases out of context rather than addressing the complete language cited in Defendants' Opening Brief.  *See* Opening Br. at 29 n.10. And even the select phrases Plaintiffs cherry-pick are "too vague to ascertain anything on which a reasonable investor might rely."  *Aetna*, 617 F.3d at 284.  For example, statements like "strong demand," "massive shortage of cannabis," or "the market is undersupplied" are classic puffery.  *See, e.g.*, *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 671 (6th Cir. 2005) (collecting examples of puffery, including that a company "was enjoying unprecedented market demand" or that a company "should deliver income growth consistent with its historically superior performance" (citation omitted)).[10]

Plaintiffs also fail to explain how information about the cannabis market that was widely known can form the basis of a material omission.  *See In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 268, 271 (3d Cir. 2005).  Instead, Plaintiffs contend that applying the "truth on the market" doctrine is "seldom appropriate at the pleading stage."  Opp. at 31–32.  But "rarely appropriate is not the same as never

---

[10] *See also Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 597 (7th Cir. 2006) (holding statements such as "demand . . . remains strong" and "demand . . . is exceeding our expectations" to be "meaningless" puffery), *vacated on other grounds*, 551 U.S. 308 (2007).

appropriate." *White v. H&R Block, Inc.*, No. 02-cv-8965, 2004 WL 1698628, at *12 (S.D.N.Y. July 28, 2004) (citation omitted).  Plaintiffs themselves allege a "wealth of publicly available information" addressed to the allegedly misleading statements—as demonstrated by the dozens of citations to contemporaneous press reports in the AC.  *In re Yukos Oil Co. Sec. Litig.*, No. 04-cv-5243, 2006 WL 3026024, at *21 (S.D.N.Y. Oct. 25, 2006) (granting dismissal because "newspapers were saturated with references" to the activity that plaintiffs alleged was inadequately disclosed).[11]

## II.    Plaintiffs Do Not Adequately Allege Scienter

As an independent basis for dismissal, the Court should reject Plaintiffs' scienter arguments, which fall far short of the demanding standard of the PSLRA.

### A. Plaintiffs Do Not Adequately Plead Scienter Under the Core Operations Doctrine

Plaintiffs first argue that the "core operations doctrine supports scienter where, as here, defendants made misleading statements concerning a business segment that was of 'central importance to [the Company's] success." Opp. at 35. However, the mere fact that an alleged misrepresentation relates to a company's core operations cannot give rise to a compelling inference of scienter. If it could, it would

---

[11] *See also White*, 2004 WL 1698628, at *12–13 (granting dismissal because "the truth was all over the market" through "extensive press coverage" in "newspapers from coast to coast"); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, No. 09-md-2058, 2012 WL 1353523, at *8 (S.D.N.Y. Apr. 12, 2012) (same).

be incredibly easy to plead scienter, contrary to the statutory text as interpreted by the Supreme Court. *Tellabs*, 551 U.S. at 324–25.

As far as Defendants are aware, the Third Circuit has accepted the theory only once, based on very different allegations that a CEO and CFO "affirmatively denied the existence of intense price competition at a time when the company actively was granting steep price discounts." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246 (3d Cir. 2013) (discussing *Institutional Inv'rs Grp. v. Avaya*, 564 F.3d 242, 268 (3d Cir. 2009)). The one case Plaintiffs cite contains similarly compelling (and equally inapt) facts: the plaintiffs there relied on "statements from nineteen [confidential witnesses]" at "multiple levels" of the company alleging "widespread misconduct" based on emails and other contemporaneous evidence. *In re Toronto-Dominion Bank Sec. Litig.*, No. 17-cv-1665, 2018 WL 6381882, at *1, *7 (D.N.J. Dec. 6, 2018).[12]

Plaintiffs allege nothing of the sort here. Instead, the *sole* allegation on which Plaintiffs rely is that Defendants "carefully monitored sell-through data from the provinces to cannabis retailers." Opp. at 35. This fails to plead scienter because Plaintiffs do not allege that Defendants made any misleading statements about the

---

[12] Several cases "question[] the continued validity of the 'core operations'" doctrine in light of the heightened pleading requirements set forth in the PSLRA. *See Medis Inv'r Grp. v. Medis Tech., Ltd.*, 586 F. Supp. 2d 136, 145 (S.D.N.Y. 2008) (citations omitted).

sell-through data or other "specific information conveyed to management and related to fraud." *Rahman*, 736 F.3d at 247 (citation omitted). Thus, Defendants did not mislead investors about the only core information Plaintiffs identify, and so the core operations doctrine does not support scienter.

## B. The Timing of Events Does Not Support Scienter

Plaintiffs' second attempt to plead scienter relies on the "temporal proximity" of three events: an August 6, 2019 announcement that Aurora continued to track toward positive EBITDA and a related revenue target; the September 2019 announcement that the Company had missed those targets; and subsequent cost saving measures involving halting construction at two facilities and selling a third facility, which was still under construction. Opp. at 36. The timing of these events, however, does not support a compelling inference of scienter under the holistic analysis required by *Tellabs*. Plaintiffs imply that just weeks after making a disclosure, the Company's disclosure turned out to be flagrantly wrong. That is not so. While the Company's performance did turn out to be worse than expected, the difference was not nearly so dramatic as to lead to the inference that the disclosure must have been fraudulent when made. For example, the statement that Aurora "continue[d] to track toward positive EBITDA" in August 2019 was true: the Company's adjusted EBITDA had improved from negative C$68 million (Q1 2019) to negative C$36.6 million (Q3 2019). Opening Br. at 12-13. Notably, the August

11

2019 statement did not specify that positive EBITDA would be achieved in Q4 2019 or at any other time.

And the August 2019 statement was in fact true: Aurora did "continue[] to track toward positive . . . EBITDA" in Q4 2019 as well.  Aurora posted EBITDA of negative C$11.7 million, which represented a 68% improvement over the previous quarter's EBITDA.  Moreover, Aurora's revenue miss, also announced in September 2019, was only 1% (*see* Opp. at 14 n.58), hardly the type of discrepancy that suggests the Company must have known its previous statement was false.

Finally, in late 2019 and early 2020, Aurora did cease construction on two facilities and sell a third facility that was not yet operational.  But Plaintiffs do not allege any false or misleading statements regarding these facilities.  And cutting costs is a rational response to lower-than-expected financial results.[13]

In sum, that Aurora announced disappointing Q4 2019 results six weeks after the press release, and cut costs thereafter, does not suggest that Defendants acted with recklessness.  This Court rejected a similar argument where financial projections were not borne out two months after they were made.  Opening Br. at

---

[13] Defendants did not "waive" arguments regarding these facilities.  Opp. at 15 n.66. Plaintiffs do not allege any false or misleading statement about the facilities in the AC or the Opposition.  And Defendants provided cautionary language explaining that statements about completing the facilities were forward-looking.  *See, e.g.*, Ex. A statements no. 4 ("[C]ompletion of construction of production facilities" is a forward-looking statement.), 15 ("Forward-looking statements made in this release include . . . statements regarding the completion of the facility.").

12

26–27 (citing *Newell*, 2019 WL 6715055, at *11 (rejecting "*ex post facto* analysis as to why [the defendant] failed to meet its prior projections")).[14]

### C. Stock-Financed Acquisitions Do Not Support Scienter

As a third attempt to plead scienter, Plaintiffs argue that Defendants had "a specific motive to effectuate five acquisitions during the Class Period financed with stock the defendants inflated." Opp. at 37. This theory is defeated by *Tellabs*, which explained that the relevant issue for motive is "personal financial gain." 551 U.S. at 325. Moreover, the rare cases allowing motive based on stock-financed acquisitions have required a close causal connection between alleged misrepresentations and the acquisitions, such as where "a specific acquisition . . . would not otherwise be possible without fraudulently inflating stock prices." *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 532 n.24 (S.D.N.Y. 2009).[15]

Plaintiffs here fail to identify any causal connection between the alleged

---

[14] Plaintiffs' cases are not on point. *See* Opp. at 36 n.170. In *Berson v. Applied Signal Technology, Inc.*, there were only "two weeks" between a misleading statement and corrective disclosure. 527 F.3d 982, 988 n.5 (9th Cir. 2008). In *Friedberg v. Discreet Logic Inc.*, the defendants "admit[ted]" their "advance knowledge" of a competitor's planned introduction of a new competing product "for a long time" prior to their corrective disclosure. 959 F. Supp. 42, 51 (D. Mass. 1997). Plaintiffs' other cases arise under Sections 11 and 12 of the Exchange Act and do not even address scienter. *See In re CPI Card Grp. Sec. Litig.*, No. 16-cv-4531, 2017 WL 4941597, at *3 (S.D.N.Y. Oct. 30, 2017); *In re Agria Corp. Sec. Litig.*, 672 F. Supp. 2d 520, 526 (S.D.N.Y. 2009).

[15] *See also In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 620 (S.D.N.Y. 2005) (noting that "generalized allegations of a desire to achieve favorable terms in a merger or acquisition are insufficient" to plead motive).

misrepresentations and the five acquisitions during the Class Period.  Instead, they argue that the "terms" of these acquisitions would have been different "[a]bsent defendants' inflation of Aurora's share price."  Opp. at 37–38.  If the test for motive were simply that the acquisitions would have been on different "terms," then all stock-based acquisitions would support a finding of motive.  That is not the law.

### D. The AC Is Weaker for Lack of Internal Witnesses or Documents

Finally, Plaintiffs contend that "neither use of internal documents nor statements from former employees are necessary at the pleading stage."  Opp. at 22 n.100.  But securities fraud cases without them rarely survive a motion to dismiss. Plaintiffs implicitly concede as much by relying heavily on cases with such evidence.[16]   As the Third Circuit has observed, "[w]here . . . plaintiffs lack documentary evidence such as internal memoranda, reliance on confidential sources to supply the requisite particularity for their fraud claims assumes a heightened importance."  *Avaya*, 564 F.3d at 261 (citation omitted).  Plaintiffs lack both, relying

---

[16] *See, e.g.*, *Aetna*, 617 F.3d at 275 (confidential witnesses with firsthand knowledge of defendants' decisions); *Avaya*, 564 F.3d at 263 (misstatements based on confidential witnesses); *In re Celgene Corp. Sec. Litig.*, No. 18-cv-4772, 2019 WL 6909463, at *11–12 (D.N.J. Dec. 19, 2019) (Vazquez, J.) (crediting confidential witness statements as "sufficient to support [the] complaint"); *Hertz*, 2017 WL 1536223, at *4 (two confidential witness statements); *In re ViroPharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, 473 (E.D. Pa. May 15, 2014) (confidential witnesses described "meetings with top . . . executives"); *In re Cambrex Corp. Sec. Litig.*, No. 03-cv-4896, 2005 WL 2840336, at *13 (D.N.J. Oct. 27, 2005) (scienter pleading based on "anonymous source").

instead on analyst opinions about the Canadian cannabis market to attempt to show that Defendants could not have believed what they said about expected demand. Plaintiffs' conclusory allegations fall far short of a compelling inference of scienter.

## III.    Plaintiffs' Loss Causation Allegations Are Inadequate.

Plaintiffs contend that it is "premature" to dismiss a complaint based on loss causation, Opp. at 39, but the cases Plaintiffs cite say no such thing.  In *Dura Pharmaceuticals, Inc. v. Broudo*, the Supreme Court held that the plaintiffs "fail[ed] adequately to *allege*" loss causation and reinstated a 12(b)(6) dismissal.  544 U.S. 336, 346–47 (2005) (emphasis in original).  Just last month, this Court dismissed a portion of a complaint on loss causation grounds.  *In re Galena Biopharma, Inc. Sec. Litig.*, No. 17-cv-929, 2021 WL 50227, at *8 (D.N.J. Jan. 5, 2021) (Vazquez, J.). Moreover, even if Plaintiffs identify drops in Aurora's stock price, Opp. at 39, they do not respond to the more fundamental flaw with their loss causation theory: any disclosures in late 2019 or early 2020 were not *new*, but instead were repeatedly disclosed by the press throughout the Class Period.  *See* Opening Br. at 38–39.

**CONCLUSION**

The Amended Complaint should be dismissed, with prejudice.[17]

---

[17] Plaintiffs seek leave to amend but fail to explain what facts they would allege that they could not have developed in the ten months between the filing of the original complaint and the AC.  The Court therefore should deny leave to amend.  *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 280 (3d Cir. 2004).

15

Dated: February 18, 2021         By: _____

Kevin H. Marino
John D. Tortorella
Marino, Tortorella & Boyle, P.C.
437 Southern Boulevard
Chatham, NJ 07928-1488
Phone: 973-824-9300
Fax: 973-824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

Stephen L. Ascher
Andrew J. Lichtman
Logan J. Gowdey
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022-3908
Phone: 212-891-1600
Fax: 212-891-1699
sascher@jenner.com
alichtman@jenner.com
lgowdey@jenner.com

Howard S. Suskin
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654-3456
Phone: 312-222-9350
Fax: 312-527-0484
hsuskin@jenner.com

*Attorneys for Defendants*

16