**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

*In re* AURORA CANNABIS, INC.
SECURITIES LITIGATION

Civil Action No. 19-20588
(JMV) (JBC)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

   In this putative class action, Plaintiffs, purchasers of Aurora Cannabis, Inc.'s ("Aurora")

stock between October 23, 2018 and February 6, 2020 (the "Class Period"), allege that Aurora and

seven of its officers[1] engaged in securities fraud violations.  Currently pending before the Court is

Defendants' motion to dismiss Plaintiffs' Second Amended Complaint (the "SAC") pursuant to

Federal Rule of Civil Procedure 12(b)(6).  D.E. 55.  The Court reviewed all the submissions in

support and in opposition[2] and considered the motion without oral argument pursuant to Federal

Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the reasons discussed below,

Defendants' motion is **GRANTED**.

---

[1] The officers are Defendants Terry Booth, Stephen Dobler, Glen Ibbott, Cameron Battley, Michael
Singer, Jason Dyck, and Allan Cleiren.  *See* SAC ¶¶ 23-29.  The parties and the Court refer to
these Defendants collectively as the Individual Defendants.

[2] The Court refers to Defendants' brief in support of their motion as "Defs. Br.," D.E. 55-1;
Plaintiffs' opposition brief as "Plfs. Opp.," D.E. 57; and  Defendants' reply brief as " Defs. Reply,"
D.E. 61.

## I.   FACTUAL BACKGROUND[3] & PROCEDURAL HISTORY

For purposes of the instant motion, the Court does not retrace this case's full factual and procedural history. This Court's July 6, 2021 opinion granting Defendants' motion to dismiss the First Amended Complaint (the "MTD Opinion") includes a detailed recounting of the factual background of this matter. D.E. 42. To the extent relevant to the instant motion, the Court incorporates the factual and procedural history from the MTD Opinion.

Briefly, Aurora manufacturers and produces cannabis products. It operates in more than 25 countries and purports to be one of Canada's leading licensed producers. SAC ¶¶ 2, 22. Plaintiffs allege that Defendants touted the growing demand for consumer cannabis in Canada and Aurora's priority to increase production and capacity in response. *Id.* ¶ 3. Plaintiffs further allege that Defendants unrealistically projected that Aurora would have positive earnings before interest, taxes, depreciation, and amortization ("EBITDA") for its fourth fiscal quarter of 2019 ("4Q19"). *Id.* Aurora missed its 4Q19 EBITDA projection, posting a loss of more than $11 million. *Id.* ¶ 10. Plaintiffs allege that Defendants engaged in securities fraud by misleading investors on numerous fronts, including profitability and consumer demand. *Id.* ¶ 11. Defendants' alleged false statements and omissions largely pertain to Aurora's ability to meet its 4Q19 projection.

In the First Amended Complaint ("FAC"), Plaintiffs identified three factors that Defendants allegedly knew, or recklessly disregarded, would impact Aurora's 4Q19 projection: (1) an over-production of cannabis by Aurora and other Canadian licensed producers; (2) the limited number of retail stores in Ontario and Quebec; and (3) competition from the cannabis black market. MTD Opinion at 6. In the SAC, Plaintiffs still allege that Aurora's sale of cannabis in

---

[3] The factual background is taken from the SAC. D.E. 49. When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the pleading. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Canada, and therefore its EBITDA projection, was "severely constrained by at least" the overproduction of cannabis by Aurora and other Canadian licensed producers and the limited number of retail stores in Ontario and Quebec.  SAC ¶ 56.  Plaintiffs continue to allege that Defendants knew, or recklessly disregarded, these factors.  *Id.*  Plaintiffs, however, no longer emphasize black market competition.

Plaintiffs also include new allegations about an alleged sham transaction with Radient, an affiliated entity.  Plaintiffs allege that Defendants entered into the transaction to inflate Aurora's financials.  Radient was formed in 2001 to pursue commercial opportunities in extraction technology.  *Id.* ¶ 113.  In January 2017, Aurora and Radient entered into a joint venture research agreement, through which the parties agreed to research the extraction of materials from cannabis. In November 2017, Aurora and Radient entered into a Master Services Agreement ("MSA"), whereby Radient agreed to process cannabis biomass from Aurora into extracts, distillates, concentrates, or oils for a fee.  *Id.* ¶ 114.

The MSA also includes an Investor Rights Agreement that provides Aurora with the ability to appoint a director to Radient's board and participate in Radient equity offerings.  *Id.* ¶ 116.  As of March 31, 2019, Aurora owned approximately 14% of Radient's issued and outstanding common shares, and Defendant Cleiren served as a member of Radient's board from February 2019 through December 2020.  *Id.* ¶ 118.  Aurora's CEO, Defendant Booth, was a member of Radient's board from 2017 to February 2019.  *Id.* ¶ 118 n.10.  In addition, "certain of Radient's public disclosures from July 8, 2019 state: Aurora and its affiliates will have access to material confidential information respecting the Company [Radient]."  *Id.*  Plaintiffs allege that these factors enabled Aurora to exert significant control over Radient when the alleged sham transaction occurred.  *Id.* ¶ 119.

Turning to the transaction, in June 2019, Plaintiffs allege that Radient purchased $21.7 million of dried cannabis biomass from Aurora. *Id.* ¶ 109.  Plaintiffs claim that although Aurora never relinquished control of the product, it "repurchased" the biomass from Radient for $18 million.  Aurora recorded Radient's purchase as revenue. *Id.* ¶¶ 131-32, 141.  Plaintiffs allege that there was no business reason for this transaction, and it was simply an orchestrated "round-trip" transaction to boost Aurora's financials. *Id.* ¶ 131.  Plaintiffs continue that Aurora needed to inflate its financial picture to continue its acquisition and expansion strategy.  Using Aurora stock, Aurora acquired five separate entities between November 2018 and August 2019. *Id.* ¶ 274.  Plaintiffs assert that Defendants' statements about Aurora's positive 4Q19 EBITDA projection were false because they knew that the Radient transaction was fraudulently engineered to boost Aurora's sales. *Id.* ¶ 208.  Plaintiffs add that Defendants made material omissions in SEC filings by failing to disclose the Radient transaction as a related-party transaction and for recognizing revenue. *Id.* ¶¶ 160-63.

Plaintiffs continue that through of a series of partial disclosures beginning in September 2019, when Aurora's 4Q19 financial results were released, the value of Aurora's common stock declined.  In addition, Plaintiffs address several analyst articles that subsequently disclosed Aurora's misconduct.  Plaintiffs contend that these articles also caused declines in Aurora's common stock price. *Id.* ¶ 278.

Plaintiff William Wilson filed the initial class action Complaint in this matter on November 21, 2019.  D.E. 1.  On July 23, 2020, this Court entered an order granting Wilson's motion to consolidate his case with another case filed by Plaintiff Andrew L. Warren.  D.E. 16.  Plaintiffs filed the FAC on September 21, 2020.  The FAC alleged two counts: (1) violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 ("Count One"); and

(2) violation of Section 20(a) of the Exchange Act against the Individual Defendants ("Count Two"). FAC ¶¶ 216-223. Defendants moved to dismiss the FAC, D.E. 32, which the Court granted. In dismissing Plaintiffs' Section 10(b) and Rule 10b-5 claim, the Court explained that Plaintiffs failed to allege sufficiently any actionable misrepresentations or omissions. MTD Opinion at 23-27. The Court also noted that Plaintiffs' allegations as to scienter appeared lacking, *id.* at 30, and addressed potential shortcomings with Plaintiffs' allegations of loss causation, *id.* at 32. Finally, because Plaintiffs failed to state a Section 10(b) claim, the Court also dismissed the Section 20(a) control person liability claim. *Id.* at 32-33.

In granting Defendants' motion to dismiss, the Court provided Plaintiffs with leave to file an amended pleading to address the identified deficiencies. D.E. 43. Plaintiffs filed the SAC on September 7, 2021. D.E. 49. On December 6, 2021, Defendants filed the instant motion. D.E. 55.

## II.   LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient

facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint in a light most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols., LLC*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### B. Federal Rule of Civil Procedure 9(b)

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002). Pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013)

(citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).  This heightened pleading standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

### C.  The Private Securities Litigation Reform Act (PSLRA)

The PSLRA imposes further pleading requirements.  "The PSLRA established heightened pleading requirements for a plaintiff to meet in order to plead a cause of action successfully in class actions alleging securities fraud." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 241 (3d Cir. 2013).  The PSLRA "requires that a complaint state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention to deceive, manipulate, or defraud." *Id.* at 241-42 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)) (internal quotations omitted).  In other words, plaintiffs bringing a claim involving an allegedly false or misleading statement must "(1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u-4(b)(1), and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' § 78u-4(b)(2)." *Rahman*, 736 F.3d at 242 (quoting *Tellabs*, 551 U.S. at 321).

Both provisions of the PSLRA pleading standard require that facts be pled "with particularity," echoing the requirement set forth in Federal Rule of Civil Procedure 9(b).  *Id.* at 241 n.3.  Although the "PSLRA replaced Fed. R. Civ. P. 9(b) as the applicable pleading standard in private securities class actions," Rule 9(b)'s particularity requirement "is comparable to and effectively subsumed by the requirements" of the PSLRA.  *Id.*  This standard "requires plaintiffs

to plead the who, what, when, where and how: the first paragraph of any newspaper story." *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009). Section 78u-4(b)(1) also adds the requirement that where "an allegation regarding [a defendant's] statement or omission is made on information or belief," plaintiffs must "state with particularity all facts on which that belief is formed"; that is, they must describe the sources of information with particularity, including "the who, what, when, where and how of the sources, as well as the who, what, when, where, and how of the information those sources convey." *Id.*; *see* 15 U.S.C. § 78u-4(b)(1).

As to state of mind, the PSLRA's approach for pleading scienter sharply deviates from Rule 9(b), which allows plaintiffs to plead the relevant mental state element generally. *Avaya*, 564 F.3d at 253. Under the PSLRA, a court must evaluate whether all the facts in the complaint as alleged, taken collectively, give rise to a "strong inference of scienter" – not whether any individual allegation viewed in isolation meets that standard. *Tellabs*, 551 U.S. at 323. In determining whether the alleged facts give rise to a strong inference of scienter, a court must "take into account plausible opposing inferences." *Id.* This involves a comparative inquiry that evaluates how likely one conclusion is as compared to others, considering the pleaded facts. *Id.* Thus, a court must consider plausibly pled, nonculpable explanations for the defendant's conduct as well as inferences favoring the plaintiff. *Id.* at 324. Although the inference that the defendant acted with scienter need not be irrefutable, the inference must be more than merely "reasonable" or "permissible." *Id.* A complaint will survive only if a reasonable person would "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

## III.   ANALYSIS

### A.  Securities Fraud (Count One)

In Count One, Plaintiffs allege that Defendants violated Section 10(b) and Rule 10b-5:

> Section 10(b) of the Exchange Act prohibits the "use or employ[ment], in connection with the purchase or sale of any security . . . [, of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). SEC Rule 10b-5 implements this provision by making it unlawful to, among other things, "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). The Supreme Court has implied a private cause of action from the text and purpose of [S]ection 10(b). *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 36-37 (2011).

*City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014). Accordingly, to state a securities fraud claim under Section 10(b) and Rule 10b-5, Plaintiffs "must allege (1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." *Id.* at 167.

Defendants assert that Plaintiffs fail "to allege (1) any actionable material misrepresentation or omission, (2) scienter, and (3) loss causation." Defs. Br. at 16. The Court addresses each requirement in turn.

### 1. Material Misrepresentations or Omissions

As to the first element, a plaintiff must "identify a false representation of material fact or omission that makes a disclosed statement materially misleading." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1419 (3d Cir. 1997)). "[A] fact or omission is material only if 'there is a substantial likelihood that it would have been viewed by the reasonable investor as having significantly altered the "total mix" of information' available to the investor." *Id.* (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-232 (1988)). Courts must "examine statements in the full context of the documents

9

which they are a part" and not engage in a "selective reading" of the statements. *Pfizer*, 754 F.3d at 168-69 (citing *Burlington Coat Factory*, 114 F.3d at 1426; *Tellabs*, 551 U.S. at 322).

In dismissing Count One of the FAC, the Court concluded that Plaintiffs failed to plead any actionable omissions pertaining to Defendants' failure to disclose that Aurora's sales were constricted by an oversupplied market, lack of retail stores, or the black market. MTD Opinion at 24-28. Plaintiffs still focus on Defendants' alleged omissions regarding oversupply and lack of retail stores, but their allegations about these alleged omissions are unchanged in the SAC. Therefore, for the same reasons discussed in the MTD Opinion, the Court determines that Plaintiffs fail to allege any actionable omissions pertaining to oversupply or the dearth of retail stores.

Plaintiffs instead focus on the Radient deal, which Defendants contend is also insufficiently pled. Defendants first assert that the deal was not a sham, setting forth a counter-narrative. Defs. Br. at 21-27. Defendants explain that Radient purchased cannabis biomass from Aurora, processed the biomass into oils or extracts, and Aurora purchased the processed products from Radient. *Id.* at 9-15. In support, Defendants largely rely on Radient's financial statements and other documents referenced in passing in the SAC. *See, e.g.*, *id.* at 24 (citing to Radient's 2019 financial statements).

At this stage, the Court is focused on plausible factual allegations. *See Twombly*, 550 U.S. at 555 (explaining that Fed. R. Civ. P. 8(a)(2) requires that pleadings include "[f]actual allegations" that "raise a right to relief above the speculative level"); *see also Fowler*, 578 F.3d at 213 ("[I]t has been noted that a plaintiff is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." (internal quotation omitted)). Although the Court could arguably rely on some of these documents, "[t]he proper place to resolve factual disputes is not on

a motion to dismiss[.]"[4]  *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).  As result, the Court will accept Plaintiffs' allegations as true and does not consider Defendants' alternate factual arguments at this time.

Next, Defendants argue that the Court should not accept allegations from Plaintiffs' confidential witnesses because Plaintiffs do not indicate that they worked for Aurora or shared the alleged information with any Aurora employees.  Defs. Br. at 27-29.  In alleging that the Radient deal was a sham, Plaintiffs partially rely on allegations from four former Radient employees (the "FEs").  The FEs' allegations include information about the size of the transaction, Radient's extraction capabilities at the time, and Radient's finances.  *See, e.g.,* SAC ¶¶ 133-37.

As discussed, "the PSLRA imposes a particularity requirement on all allegations, whether they are offered in support of a statement's falsity or of a defendant's scienter."  *Avaya*, 564 F.3d at 263 (quoting 15 U.S.C. § 78u–4(b)(1), (b)(2)).  Thus, when considering allegations from confidential sources, the Third Circuit instructs that courts apply the particularity requirement by "evaluating the 'detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia.'"  *Cal. Pub. Emps.' Ret. Sys. v. Chubb,* 394 F.3d 126, 147 (3d Cir. 2004).  If anonymous source allegations are found

---

[4] When deciding a Rule 12(b)(6) motion to dismiss, a court may consider the pleadings, "exhibits attached to the complaint and matters of public record," and "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  A court may also rely on "a document integral to or explicitly relied upon in the complaint."  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citation omitted).  Defendants fail to explain how the Court could properly consider these documents in deciding the motion to dismiss.  The Court also notes that none of the documents that Defendants rely upon reflect whether Aurora repurchased the biomass or instead purchased extracts from Radient, or whether Radient ever took possession of the product.

wanting with respect to these criteria, a court "must discount them steeply." *Avaya*, 564 F.3d at 263. But if a confidential witness' allegations are adequately particularized, a court need not dismiss them "simply on account of their anonymity." *Id.*

Defendants maintain that because the FEs did not communicate with any Aurora employees, the FEs cannot be used to substantiate Plaintiffs' allegations about Defendants purported accounting violations from the Radient deal. *See* Defs. Br. at 15-16; Defs. Reply at 7. But the cases Defendants cite in support do not support such a position. Moreover, the Court does not view the FEs' allegations as only relevant to the alleged accounting fraud. Rather, the FEs' allegations also reflect that this was an unusual and large-scale transaction for Radient. Therefore, Plaintiffs do not necessarily need to plead that the FEs communicated with Aurora to satisfy the particularity requirement. Plaintiffs' allegations permit the Court to plausibly infer that at least two of the Individual Defendants knew information raised by the FEs. Plaintiffs allege that Aurora owned Radient stock, had access to Radient's confidential information, and that Cleiren was a Radient Board member at the time of the transaction. SAC ¶ 120. Moreover, Booth previously served on Radient's Board. *Id.* ¶ 23.

Defendants do not otherwise challenge the veracity of the FEs' allegations. Thus, the Court concludes that Plaintiffs provide sufficient information to establish the confidential sources' bases of knowledge and their allegations otherwise corroborate the FEs' information. Consequently, the Court will not discredit, or steeply discount, the allegations from the four FEs.

Finally, Defendants argue that Plaintiffs failed to sufficiently allege that the transaction violated any International Accounting Standards ("IAS"). Plaintiffs assert that Aurora's financial statements failed to disclose that Aurora and Radient were related parties under IAS 24. SAC ¶¶ 160-63. IAS 24 sets forth the requirements to determine whether entities are related, such that an

entity must disclose related party transactions and commitments.  Defs. Br. at 29-31; *see also* Marino Decl., Ex. M at 5-7.  IAS 24.9(b) sets forth several, fact-specific definitions to use in determining whether entities are related.  *Id.* at 6-7.  Here, Plaintiffs plead that Aurora and Radient are related parties because Aurora had the ability to exert significant influence over Radient.[5]  SAC ¶ 162.  But it is not clear on which subsection of IAS 24.9(b) Plaintiffs rely.  Consequently, as alleged, the Court adequately cannot analyze whether Plaintiffs sufficiently plead that Radient and Aurora were related parties under IAS 24.  Plaintiffs' allegations as to an IAS violation, therefore, are deficient.

Defendants also maintain that even accepting Plaintiffs' allegations that Aurora repurchased biomass from Radient, Aurora was permitted to recognize the revenue on its sale to Radient under International Financial Reporting Standard ("IFPS") 15 because Aurora was not contractually obligated to repurchase the biomass.  Defs. Br. at 22-23.  IFRS 15 explains circumstances when a company can recognize revenue when purchasing assets from a customer via a contract.  *See* Marino Decl., Ex. K.  Plaintiffs allege that IFRS 15 requires that contracts have commercial substance to recognize revenue.  SAC ¶ 139.  Here, Plaintiffs plausibly allege that the deal lacked commercial substance because Radient could not pay for the purchase and never took control of the product.  SAC ¶¶ 134, 137.  Thus, regardless of whether there was a contract for repurchase, Plaintiffs plausibly allege that Radient should not have recognized revenue because the contract lacked commercial substance.

---

[5] Plaintiffs plead that Booth and Cleiren both served on Radient's Board.  However, Plaintiffs fail to further plead the relevant section of IAS 24.

In sum, except for the related party disclosure allegations, the Court rejects Defendants'
arguments to dismiss alleged omissions about the Radient transaction.   Plaintiffs, therefore,
sufficiently plead actionable omissions related to the Radient deal.[6]

### 2.  Scienter

Defendants also seek to dismiss Count One as to Plaintiffs' scienter allegation.  The Court
only addresses scienter as to the Radient deal because the other allegations, as noted above, are
not plausibly pled.  "Scienter is a mental state embracing intent to deceive, manipulate, or defraud,
and requires a knowing or reckless state of mind."[7]  *Avaya*, 564 F.3d at 252 (internal citations and
quotations omitted) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976) and
citing *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534-35 (3d Cir. 1999)).  The PSLRA scienter
standard "requires plaintiffs to allege facts giving rise to a 'strong inference' of 'either reckless or
conscious behavior.'"  *Id.* at 267 (quoting *Advanta*, 180 F.3d at 534-35).  A reckless statement is
one "involving not merely simple, or even inexcusable negligence, but an extreme departure from
the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is
either known to the defendant or is so obvious that the actor must have been aware of it."  *Id.* at

---

[6] In their reply brief, Defendants argue that many of the alleged wrongful statements are protected
by the PSLRA safe harbor, and rely on arguments from their motion to dismiss the FAC.  Defs.
Reply at 9-10.  But the FAC did not include allegations about the Radient deal.  The Court will not
consider new arguments made in the reply that could have been made in the initial brief.  *See
Cobra Enters., LLC v. All Phase Servs., Inc.*, No. 20-4750, 2020 WL 2849892, at *1 (D.N.J. June
1, 2020) ("As a matter of procedure, this Court will not accept arguments offered for the first time
in the reply brief, as they were not properly asserted in the opening brief and Plaintiffs have not
had the opportunity to respond to them.").   Consequently, the Court declines to consider
Defendants' safe harbor arguments.

[7] This standard is distinguishable from the mental state for forward-looking statements, which
requires actual knowledge, under the PSLRA Safe Harbor provision.  *See* 15 U.S.C. § 78u-5(c).

267 n.42 (citing *Advanta*, 180 F.3d at 535). "'[C]laims essentially grounded on corporate mismanagement' do not adequately plead recklessness." *Id.* (citing *Advanta*, 180 F.3d at 540).

A "strong inference" of scienter is one that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 267 (quoting *Tellabs*, 551 U.S. at 324). It is more than "merely 'reasonable' or 'permissible.'" *Tellabs*, 551 U.S. at 324. To make this determination, a court must "weigh the plausible nonculpable explanations for the defendant's conduct against the inferences favoring the plaintiff." *Avaya*, 564 F.3d at 267 (quoting *Tellabs*, 551 U.S. at 324) (internal quotations omitted). However, "[t]he inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the most plausible of competing inferences." *Id.* (quoting *Tellabs*, 551 U.S. at 324). "The pertinent question is 'whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 267-68 (quoting *Tellabs*, 551 U.S. at 323). "Omissions and ambiguities 'count against inferring scienter.'" *Id.* at 268 (quoting *Tellabs*, 551 U.S. at 326). "Motive and an opportunity to commit fraud" are just a factor in this analysis. *Advanta*, 180 F.3d at 534-35. In sum, "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

Defendants contend that Plaintiffs' allegations about Radient do not support a strong inference of scienter because Plaintiffs do not allege that any Defendant had knowledge of Radient's internal information. Defendants reiterate that as alleged, none of the FEs were in communication with Defendants. Defs. Br. at 33-34. But Plaintiffs allege that Aurora had access to Radient's confidential information and that Cleiren and Booth served as Radient Board members. SAC ¶ 118. Thus, it is plausible to infer that Cleiren and Booth were aware of Radient's

15

financial situation and extraction capabilities, as explained by the FEs.  And given the scope of the Radient deal, it is also more than plausible to infer that Cleiren and Booth knew that Radient would have difficulty processing and paying for the biomass.  More importantly, as alleged, Aurora never relinquished control of the product and repurchased it as is.  This information is clearly within Aurora's control and reflects a sham transaction.

Plaintiffs also point to their allegations of motive;  namely, that Aurora needed to keep its stock inflated to consummate five acquisitions as part of its expansion strategy.  Plfs. Opp. at 31-32 (citing SAC ¶ 274).  "Motive is not an independent means of establishing scienter," however, "its presence can assist the Court's determination and its absence can raise a compelling inference against scienter."  *Roofer's Pension Fund v. Papa*, No. 16-2805, 2018 WL 3601229, at *17 (D.N.J. July 27, 2018) (internal quotations omitted).  Moreover, "when corporate defendants materially misrepresent the financial status of a company to enable stock-based business acquisitions at the time of the alleged misrepresentations, that alleged motive can give rise to a strong inference of scienter."  *Hull v. Glob. Digit. Sols., Inc.*, No. 16-5153, 2017 WL 6493148, at *20 (D.N.J. 2017).  Although Plaintiffs' motive allegations alone would not be sufficient, the allegations make the inference of scienter more compelling.

Defendants counter that the scienter allegations fail because "non-culpable explanations for Defendants' actions are much more compelling than culpable interferences."  Defs. Br. at 34.  Defendants, however, rely on their counter-narrative that Aurora sold biomass to Radient and then Aurora purchased processed extracts and oils.  *Id.*  As discussed, Plaintiffs plausibly plead that Aurora engaged in a round-trip transactions of cannabis biomass, and the Court does not consider Defendants' theory at the motion to dismiss stage.  In assessing scienter, the Court must consider

plausibly pled allegations.  *See Tellabs*, 551 U.S. at 324.  Consequently, Defendants cannot rely on their alternate theory to also defeat Plaintiffs' scienter allegations.

Finally, Plaintiffs maintain that knowledge can be imputed to a company's key corporate officers for issues critical to a company's core business.  This is known as the core operations doctrine.  Plaintiffs continue that due to the magnitude of the Radient deal, it is appropriate to impute knowledge to all Defendants.  Plfs. Opp. at 31 (citing *In re Campbell Soup Co. Sec. Litig.*, 145 F. Supp. 2d 574, 599 (D.N.J. 2001)).  But "a corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter."  *Rahman*, 736 F.3d at 247.  Rather, there must be "some additional allegations of specific information conveyed to management and related to fraud."  *Id.*  Here, the SAC lacks such additional allegations demonstrating that the remaining Individual Defendants, besides Cleiren and Booth, knew or recklessly disregarded that the Radient deal was fraudulent.  For example, the SAC does not explain who orchestrated the Radient transaction, include allegations from confidential witnesses demonstrating that Booth and/or Cleiren shared information about Radient's financial picture or extraction capabilities with the other Individuals Defendants, or identify any documents or information about Defendants' decision-making process regarding Aurora's financial statements related to the Radient transaction.  Without additional allegations such as these, the Court will not infer scienter as to the remaining Individual Defendants.

Defendants, therefore, fail to sufficiently plead scienter as to the remaining Individual Defendants.  Defendants' motion is granted as to these Defendants and the SAC is dismissed as to

them.  But because Plaintiffs sufficiently plead scienter as to Aurora, Cleiren, and Booth, the Court addresses Defendants' argument as to loss causation.[8]

### 3.  Loss Causation

Defendants contend that Count One must be dismissed because Plaintiffs do not adequately plead loss causation.  Defs. Br. at 34-39.  Loss causation requires "a causal connection between the material misrepresentation and the loss."  *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).  Specifically, the "loss causation inquiry asks whether the misrepresentation or omission proximately caused the economic loss."  *Id.* at 426 (citing *Semerenko v. Cendant Corp.*, 223 F.3d 165, 185-87 (3d Cir. 2000)).  To establish loss causation in a typical § 10(b) case in which a plaintiff alleges that public misstatements or omissions affected the price of publicly traded stock, "a plaintiff must show that its 'losses are related specifically to the market's discovery of the misrepresentation and the corresponding decrease in price due to that misrepresentation.'"  *De Vito v. Liquid Holdings Grp., Inc.*, No. 15-6969, 2018 WL 6891832, at *39 (D.N.J. Dec. 31, 2018) (quoting *Pure Earth, Inc. v. Call*, 531 F. App'x 256, 260 (3d Cir. 2013)).

Defendants argue that Plaintiffs fail to plausibly allege any loss caused by the Radient transaction.  Defendants explain that Plaintiffs do not identify any corrective disclosures about the Radient deal, nor do they plausibly plead that Aurora's stock dropped after analyst articles about the Radient transaction were published on October 9, 2019 and October 18, 2019.  Defs. Br. at 36-37; Defs. Reply at 14.  Defendants are correct that Plaintiffs do not identify any corrective

---

[8] While not raised by any party, the scienter of the Individual Defendants who made actionable statements, who are corporate officers, is imputed to Aurora.  *See Avaya*, 564 F.3d at 251-52 ("Although Shareholders' Complaint focuses on the statements of McGuire and Peterson, liability for these statements, if they were fraudulent, can also be imputed to Avaya because a corporation is liable for statements by employees who have apparent authority to make them.").

disclosures related to the Radient deal.  Plaintiffs also fail to plead that Aurora's stock price declined after the two analyst articles.  Plaintiffs, however, argue that "the nature of these articles as corrective disclosures is explicitly and extensively discussed in the SAC . . . and the price declines are judicially noticeable."  Plfs. Opp. at 39 n. 169.  Even if the Court were to take judicial notice of stock prices, Plaintiffs' argument that the articles constitute corrective disclosures that resulted in a stock drop do not appear in the SAC.  Plaintiffs cannot amend the SAC through a brief.  *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984)). Because Plaintiffs fail to include these critical allegations in the SAC, Plaintiffs do not sufficiently plead loss causation.  Plaintiffs, therefore, fail to state a claim in Count One as to Booth, Cleiren, and Aurora.

### B.  Control Person Liability (Count Two)

"Section 20(a) of the Exchange Act imposes joint and several liability on any individual who exercises control over a 'controlled person' who violates Section 10(b)."  *Carmack v. Amaya Inc.*, 258 F. Supp. 3d 454, 466 (D.N.J. 2017) (citing 15 U.S.C. § 78t(a); *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 275 (3d Cir. 2005)).  The three elements to this claim are "(1) the defendant controlled another person or entity; (2) the controlled person or entity committed a primary violation of the securities laws; and (3) the defendant was a culpable participant in the fraud."  *Id.* (citing *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 286 (3d Cir. 2006)). Thus, "liability under Section 20(a) is contingent upon sufficiently pleading an underlying violation of Section 10(b) by the controlled person."  *Id.*  Because the Section 10b claim is dismissed for failure to state a claim, Plaintiffs' Section 20(a) claim is also dismissed.

### C.  Leave to Amend

Defendants maintain that the SAC should be dismissed with prejudice because there are factual deficiencies that cannot be cured.  Defs. Br. at 39-40.  When granting a motion to dismiss, a court must decide whether to dismiss with or without prejudice, the latter of which provides a plaintiff with opportunity to amend.  Dismissal with prejudice is appropriate if an amendment would be inequitable or futile.  *See Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004).  Because the SAC includes new allegations about the Radient transaction, Plaintiffs have not had a previous opportunity to address any deficiencies related to such allegations.  The Court, therefore, denies Defendants' request to dismiss the SAC with prejudice and will provide Plaintiffs with one further, and final, opportunity to file an amended pleading.

### IV.   CONCLUSION

For the foregoing, the Court grants Defendants' motion to dismiss Plaintiffs' SAC.  D.E. 55.  The dismissal is without prejudice.  Plaintiffs shall have thirty (30) days to file an amended complaint, which cures the deficiencies noted herein.  If Plaintiffs do not do so, this matter will be dismissed with prejudice.  An appropriate Order accompanies this Opinion.

Dated:  September 23, 2022

_____
John Michael Vazquez, U.S.D.J.