# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re AURORA CANNABIS INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br>ALL ACTIONS | Case No. 2:19-cv-20588-JMV-JBC<br>Hon. John M. Vazquez, U.S.D.J.<br><br>Motion Date:  April 17, 2023<br><br>ORAL ARGUMENT REQUESTED |

# REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED CLASS ACTION COMPLAINT

Kevin H. Marino
John D. Tortorella
MARINO, TORTORELLA & BOYLE P.C.
437 Southern Boulevard
Chatham, NJ 07928-1488
Phone: 973-824-9300
Fax: 973-824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

Stephen L. Ascher[†]
Andrew J. Lichtman
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036-2711
Phone: 212-891-1600
Fax: 212-891-1699
sascher@jenner.com
alichtman@jenner.com

Howard S. Suskin[†]
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Phone: 312-222-9350
Fax: 312-527-0484
hsuskin@jenner.com

*Attorneys for Defendants*

---

[†] Admitted *pro hac vice.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................1

ARGUMENT ........................................................................................................3

I.    Aurora's September 11, 2019 Financial Results .............................................3

II.   The October 9, 2019 Wiggins Article ...........................................................8

III.  The October 17, 2019 *Yahoo Finance Canada* Article.................................13

IV.   Aurora's November 14, 2019 Financial Results ...........................................15

CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Alaska Electrical Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ...................................................................................7

*In re Apollo Group, Inc. Securities Litigation*,
   2010 WL 5927988 (9th Cir. June 23, 2010)...................................................10

*Bartesch v. Cook*,
   941 F. Supp. 2d 501 (D. Del. 2013).................................................................3

*Bishins v. CleanSpark, Inc.*,
   2023 WL 112558 (S.D.N.Y. Jan. 5, 2023) .........................................................10

*Canez v. Intelligent Systems Corp.*,
   2021 WL 3667012 (E.D.N.Y. Aug. 18, 2021) ...........................................8, 9, 14

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
   310 F.R.D. 69 (S.D.N.Y. 2015) .........................................................................12

*In re Chicago Bridge & Iron Co. N.V. Securities Litigation*,
   2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020)...................................................10

*De Vito v. Liquid Holdings Group, Inc.*,
   2018 WL 6891832 (D.N.J. Dec. 31, 2018)...................................................4, 13

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005)..............................................................................................4

*In re DVI, Inc. Securities Litigation*,
   2010 WL 3522090 (E.D. Pa. Sept. 3, 2010).......................................................6

*In re Eros International PLC Securities Litigation*,
   2021 WL 1560728 (D.N.J. Apr. 20, 2021)........................................................13

*Fila v. Pingtan Marine Enterprise Ltd.*,
   195 F. Supp. 3d 489 (S.D.N.Y. 2016) ..................................................................9

*Howard v. Arconic Inc.*,
   2021 WL 2561895 (W.D. Pa. June 23, 2021) .....................................................4

ii

*Hull v. Global Digital Solutions, Inc.*,
  2017 WL 6493148 (D.N.J. Dec. 19, 2017)...........................................................6

*In re Initial Public Offering Securities Litigation*,
  399 F. Supp. 2d 261 (S.D.N.Y. 2005) ..................................................................6

*King County v. IKB Deutsche Industriebank AG*,
  708 F. Supp. 2d 334 (S.D.N.Y. 2010) ................................................................13

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005) .........................................................................12, 13

*McCabe v. Ernst & Young, LLP*,
  494 F.3d 418 (3d Cir. 2007) ................................................................................3

*Mineworkers' Pension Scheme v. First Solar Inc.*,
  881 F.3d 750 (9th Cir. 2018) ...............................................................................7

*National Junior Baseball League v. Pharmanet Development Group*
  *Inc.*, 720 F. Supp. 2d 517 (D.N.J. 2010)..........................................................5, 6

*Sjunde AP-Fonden v. Goldman Sachs Group, Inc.*,
  545 F. Supp. 3d 120 (S.D.N.Y. 2021) ..........................................................14, 15

*Swanson v. Interface, Inc.*,
  2022 WL 2003990 (E.D.N.Y. June 6, 2022).......................................................12

*In re Tellium, Inc. Securities Litigation*,
  2005 WL 2090254 (D.N.J. Aug. 26, 2005) ..........................................................6

*United States v. Allstate Insurance Co.*,
  __F. Supp. 3d__, 2022 WL 3213529 (E.D. Mich. Aug. 9, 2022) ......................11

*Zhong Zheng v. Pingtan Marine Enterprise Ltd.*,
  379 F. Supp. 3d 164 (E.D.N.Y. 2019)..................................................................9

## PRELIMINARY STATEMENT

Defendants' opening brief methodically goes through each of the four dates on which Plaintiffs allege that a drop in Aurora's stock price caused them damages, and shows why Plaintiffs do not adequately allege loss causation for any of these dates. In response, Plaintiffs do not conduct a similarly rigorous date-by-date analysis. In fact, they do not show that any—let alone all—of the alleged stock drops were caused by corrective disclosures. Instead, Plaintiffs make broad legal arguments that try to elide the facts of each distinct date. But their legal arguments are mistaken, and the undisputed and judicially noticeable facts doom their case.

Most important, Plaintiffs repeatedly mischaracterize the premise of this motion as a contention that there can be no causation unless Aurora has actually admitted to the fraud in the corrective disclosures. That is not our argument. Rather, our argument is based on this Court's articulation of the central focus of the loss-causation inquiry: "a plaintiff must show that its 'losses are related *specifically* to the market's discovery of the misrepresentation and the corresponding decrease in price due to that misrepresentation.'" ECF No. 64 at 18 ("MTD Op.") (citation omitted) (emphasis added).

Here, Plaintiffs' allegations do not satisfy that standard because the stock drops on the four dates in question are not "specifically related to the market's discovery" of facts concerning the Radient transaction. Rather, in each instance, the

stock drops were the result of either *other* information released by Aurora, or market-wide drops in the stocks of cannabis companies.  As a result, Plaintiffs still fail to show "any loss caused by the Radient transaction." *Id.* at 18-19.

Recognizing that Aurora's September 11, 2019 and November 14, 2019 financial results did not disclose the Radient transaction, Plaintiffs argue that the "announcement of missed earnings guidance can suffice to plead loss causation" because it represents a materialization of the risk of that transaction.  ECF No. 73 at 22 ("Opp.").  But courts have uniformly rejected plaintiffs' attempts to rely on an announcement of missed earnings guidance that did not specifically disclose the alleged fraud at issue.  Far from being the materialization of any risk relating to Radient, Aurora's stock dropped due to conditions facing the entire sector, including an oversupplied market, lack of sufficient retail stores, and a robust black market—circumstances that the Court has already held were adequately disclosed by Aurora.

Plaintiffs also try to use vague legal arguments to salvage their allegations concerning the October 9 and 17, 2019 articles, arguing that "courts routinely reject invitations from defendants to extend the holding in *Omnicom*"—*i.e.*, that opinion pieces based on public information are not corrective disclosures—particularly "at the motion to dismiss stage."  Opp. 30-31 (citation omitted).  To the contrary, courts have consistently granted motions to dismiss when dealing with similar third-party reporting.  Moreover, Plaintiffs argue that the Court should not weigh "competing

2

theories" as to what may have caused the stock drops following those articles, Opp. 26, but Plaintiffs' cases do not address the situation here, in which a judicially noticeable marketwide phenomenon caused comparable losses throughout the industry. Cannabis stocks dropped significantly on October 10 in response to news that a major cannabis company withdrew its revenue guidance and on October 18 in response to articles highlighting the disappointing first year of legal cannabis.

## ARGUMENT

### I.      Aurora's September 11, 2019 Financial Results

A complaint fails to state a claim for securities fraud unless it properly alleges that "the defendant misrepresented or omitted the *very facts* that were a substantial factor in causing the plaintiff's economic loss (loss causation)." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425 (3d Cir. 2007) (emphasis added). Given that the Court has already concluded that "Plaintiffs do not identify any corrective disclosures related to the Radient deal," MTD Op. 18-19, Plaintiffs have pivoted to a materialization-of-the-risk theory of causation with respect to Aurora's September 11, 2019 financials, Opp. 18-19. But Plaintiffs cannot avoid dismissal by swapping one legal theory for another.[1]

Plaintiffs' authority confirms that the "ultimate loss causation inquiry under

---

[1] "The Third Circuit has not adopted the 'materialization of risk' test but, instead, requires that there have been corrective disclosures that exposed the alleged fraud." *Bartesch v. Cook*, 941 F. Supp. 2d 501, 512 (D. Del. 2013).

either the corrective disclosure theory or the materialization of a concealed risk theory is the same:  whether a 'misstatement or omission concealed something from the market that, when *disclosed*, negatively affected the value of the security.'"  *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *39 n.37 (D.N.J. Dec. 31, 2018) (citation omitted) (emphasis added).  Thus, as another case discussed by Plaintiffs confirms, the materialization-of-the-risk theory permits a party to allege loss causation by "showing an event that *reveals* that an earlier statement was false," something Plaintiffs have not done here.  *Howard v. Arconic Inc.*, 2021 WL 2561895, at *17 (W.D. Pa. June 23, 2021) (emphasis added).  These cases within the Third Circuit are consistent with the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, which held that if the purchaser sells the shares "before the relevant truth begins to *leak out*, the misrepresentation will not have led to any loss."  544 U.S. 336, 342 (2005) (emphasis added).

Here, Plaintiffs themselves allege that the October 2019 "Wiggins and *Yahoo Finance* reports were the first inkling of the sham Radient transaction."  Opp. 32.  As such, nothing about the alleged fraud was "disclosed," reveal[ed]," or "leak[ed] out" prior to October 2019.  Plaintiffs are thus forced to acknowledge that Aurora's stock price "remained inflated" as of September 11, 2019, Opp. 21, which means that Plaintiffs did not suffer any actionable loss the following day.  *Dura*, 544 U.S. at 342 (explaining that an "inflated purchase price" does not by itself "constitute or

4

proximately cause the relevant economic loss").

Plaintiffs try to escape this result by reframing what materialized. Instead of arguing that the September 2019 financials were an "event that reveal[ed]" something about the Radient deal itself, Plaintiffs claim that the "undisclosed risk of defendants' fraudulent EBITDA projections materialized when defendants announced on September 11, 2019 that Aurora missed its much-touted projection of positive adjusted EBITDA for 4Q19." Opp. 21. In other words, Plaintiffs argue that an "announcement of missed earnings guidance can suffice to plead loss causation." *Id.* at 22. Courts in the Third Circuit have rejected this argument time and again because it shows that something besides the alleged fraud caused the loss.

For example, in *National Junior Baseball League v. Pharmanet Development Group Inc.*, the plaintiffs argued that "because significant aspects of the still-concealed fraud actually provided the catalyst for an anticipated failure to meet earnings forecasts, the share price decline following [the defendant's] public disclosures indeed disseminated the fraudulent price inflation." 720 F. Supp. 2d 517, 563 n.35 (D.N.J. 2010). But the court held that these allegations failed to support loss causation because "Plaintiff improperly relies on negative financial results after each of the quarterly public disclosures when there have been no allegations that the market recognized any of the alleged fraud, or that the cause of the decline in stock price was substantially caused by the alleged fraud." *Id.* at 561. The court explained

5

that "this type of pleading has been rejected to show loss causation because it does not adequately demonstrate a market correction of the artificial inflation caused by Defendants' misrepresentations." *Id.* Likewise, in *In re Tellium, Inc. Securities Litigation*, "the heart of Plaintiffs' allegations [was] that [the defendants] perpetuated a scheme in which they went public on the basis of false contractual purchase commitments and sales expectations." 2005 WL 2090254, at *3 (D.N.J. Aug. 26, 2005). Relying on *Dura*, the court held that "Plaintiffs have failed to allege a corrective disclosure, or some other corrective event" because they did not allege that the "concealed scheme was disclosed to the market." *Id.* These types of allegations fail because they show that the loss was caused by something else—exactly the opposite of what Plaintiffs need to prove.[2]

Ignoring these on-point Third Circuit cases, Plaintiffs rely on two out-of-circuit cases for their contention that "plaintiffs do not need to allege that Aurora's September 11, 2019 EBITDA-guidance miss 'revealed' or 'disclosed' anything

---

[2] *See also In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) ("[F]ailure to meet earnings forecasts has a *negative* effect on stock prices, but not a *corrective* effect. . . . It does not disclose the scheme; therefore, it cannot correct the artificial inflation caused by the scheme."); *Hull v. Glob. Digit. Sols., Inc.*, 2017 WL 6493148, at *13 (D.N.J. Dec. 19, 2017) (no loss causation where financials "show lower revenues, which is not a disclosure of [defendant's] alleged scheme"); *In re DVI, Inc. Sec. Litig.*, 2010 WL 3522090, at *6 (E.D. Pa. Sept. 3, 2010) ("A disclosure of disappointing earnings or other indications of the 'true financial condition' of the company, without any evidence of a link between the disclosure and the fraud, is not a corrective disclosure.") (record citation omitted).

about Aurora's relationship with Radient." Opp. 22-23, 22 n.76. To the contrary, both cases confirm that loss causation requires a disclosure of the relevant truth.[3]

Plaintiffs' remaining arguments fare no better. Plaintiffs argue that there is no "'mirror image' requirement for loss causation." Opp. 19. But that simply means that the disclosure need not be a "complete," "fact-for-fact" disclosure of the alleged relevant truth. *Id.* at 19 n.65 (quoting *In re Merck & Co. Sec. Derivative & ERISA Litig.*, 2011 WL 3444199, at *32 (D.N.J. Aug. 8, 2011)). Here, Aurora's September 11, 2019 financial statements contained no disclosure whatsoever of the alleged relevant truth. Along the same lines, Plaintiffs argue that the "truth can be revealed through a series of partial corrective disclosures." Opp. 18 (quoting *In re Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 655-56 (E.D. Pa. 2015)). But again, there was no such partial disclosure here. Nor do Defendants argue that they must "*admit* to the sham nature of the Radient transaction" for Plaintiffs to show loss causation. Opp. 20. Plaintiffs do not allege that the market "discover[ed]" anything about Radient. MTD Op. 18.

In short, Plaintiffs' materialization-of-the-risk theory must fail, not only

---

[3] *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009) (rejecting argument that "loss causation may result when the 'true financial condition' of a company becomes known—regardless of whether the disclosure of the company's true financial condition corrects past misstatements"); *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (confirming plaintiff must show "the defendant misrepresented or omitted the *very facts* that were a substantial factor in causing the plaintiff's economic loss") (citation omitted).

because the theory is not recognized in this Circuit, but also because Plaintiffs do not allege that the financials revealed anything bearing on the Radient issue.

**II.      The October 9, 2019 Wiggins Article**

Plaintiffs also do not meaningfully respond to Defendants' arguments that the October 9 article cannot support loss causation because: (1) it expressed a journalist's negative opinions of public information; (2) Plaintiffs point to a stock drop on the wrong day; and (3) Plaintiffs fail to allege that Aurora's stock dropped as a result of disclosures about Radient as opposed to other economic factors.

*First*, Plaintiffs argue that "courts routinely reject invitations from defendants to extend the holding in *Omnicom*," Opp. 30.   In fact, courts routinely cite *Omnicom*—including "at the motion to dismiss stage," *id.* at 31—for the proposition that opinion pieces based on public information are not corrective disclosures.  For example, in *Canez v. Intelligent Systems Corp.*, the court granted a motion to dismiss based on loss causation because the analyst report did not disclose any new facts about the transaction; "it merely expressed opinions 'based on information that was already publicly available.'"  2021 WL 3667012, at *9 (E.D.N.Y. Aug. 18, 2021) (citation omitted).  Applying *Omnicom*, the court explained that, "[s]o long as a third-party report relied 'on facts already publicly available,' . . . it is not corrective. To the extent that district court opinions previously 'express[ed] a different view of the legal standard for loss causation, they are no longer persuasive authority.'"  *Id.*

at *10 (citations omitted). Another court granted a motion to dismiss based on *Omnicom* where "the [] Article did not reveal any undisclosed information. Rather, the [] Article relied on public information and merely represented the author's opinion that [the defendant's] 'shares are likely worthless.'" *Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 178 (E.D.N.Y. 2019) (record citation omitted). Similarly, in *Fila v. Pingtan Marine Enterprise Ltd.*, the court dismissed the complaint where the analyst made clear that his article was based on his review of "the company's SEC filings" and the article contained his "personal opinion" about the company." 195 F. Supp. 3d 489, 497 (S.D.N.Y. 2016).

The same reasoning requires dismissal here. Wiggins repeated twelve times in his article that he was merely offering his "opinion," *see, e.g.*, Ex. A, and Plaintiffs acknowledge that the article was "based on extensive analysis of myriad SEC filings by both Radient and Aurora" (*i.e.*, public information), Opp. 29. Thus, the October 9 article cannot serve as a corrective disclosure.

To avoid this conclusion, Plaintiffs argue, "[i]n addition to analyzing public data associated with Aurora's and Radient's financials and the Radient transaction, Wiggins reported that Aurora confirmed to him that Radient could purchase outside of its tolling agreement (which made no economic sense) but with no explanation as to why." Opp. 12. But this single statement in Wiggins' 9-page article merely repeated what Wiggins had already learned from Radient's public filings, which said

9

that, "in addition to tolling arrangements, Radient began purchasing cannabis for its own account. During the quarter ended June 30, 2019, the Company entered into agreements with Licensed Producers, including Aurora, to purchase approximately $21.7 million of dried cannabis biomass." Ex. A at 2 (emphasis omitted). Since Radient publicly disclosed that it "could"—and in fact did—"purchase outside of its tolling agreement" with Aurora, Opp. 12, the statements in the Wiggins article attributed to Aurora management were not "new" and thus not corrective.

Plaintiffs' citations to the contrary are not on point. Opp. 29-31. Plaintiffs rely on *In re Apollo Group, Inc. Securities Litigation*, 2010 WL 5927988 (9th Cir. June 23, 2010), but that one-page, unpublished decision from another circuit offers almost no detail as to the relevant facts there. Moreover, unlike here, in *In re Chicago Bridge & Iron Co. N.V. Securities Litigation*, the third-party report contained information that "was *new* to the market," including information about "questionable accounting treatment" and "statements by [defendant's] management [that] had not been previously disclosed." 2020 WL 1329354, at *7 (S.D.N.Y. Mar. 23, 2020) (emphasis added). As for *Bishins v. CleanSpark, Inc.*, the information uncovered in the third-party report was previously "buried in the bankruptcy filings of an unrelated company." 2023 WL 112558, at *12 (S.D.N.Y. Jan. 5, 2023).

*Second*, Plaintiffs argue that "there is no per se rule limiting the pleading of loss causation to the day of disclosure," Opp. 32, but that is not what Defendants

10

argue.  Rather, where, as here, the relevant announcement came out "before the stock market opened," courts assess the drop that occurred the day of the disclosure.  ECF No. 72-1 ("MTD") at 20-21 (quoting *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 715 (S.D.N.Y. 2013); *In re Ikon Off. Sols., Inc.*, 277 F.3d 658, 664 (3d Cir. 2002)).  This is especially true given Plaintiffs' allegation that the "market for Aurora common stock promptly digested current information regarding Aurora."  TAC ¶ 273; *see* MTD at 22.[4]

Plaintiffs do not dispute that Aurora's stock drop of less than 1% between closing on October 8 and 9 is "negligible under the securities laws."  MTD at 22-23 (collecting cases).  Without a material stock drop in response to the article, Plaintiffs fail to allege loss causation.

Instead of responding to Defendants' actual argument, Plaintiffs cite inapposite cases for the proposition that a "[m]ulti-day window for investor loss is

---

[4] Apparently backtracking on their allegation that the market for Aurora stock was efficient, Plaintiffs point out that the Wiggins article was published behind a "paywall."  Opp. 32.  This is irrelevant.  For one thing, courts take judicial notice of articles published behind paywalls.  *See United States v. Allstate Ins. Co.*, 2022 WL 3213529, at *7 (E.D. Mich. Aug. 9, 2022) (finding argument that court should not take judicial notice of an article because it was behind a paywall lacked merit and citing an example of a court taking judicial notice of information in subscription-based sources such as the Wall Street Journal and Washington Post). Moreover, Plaintiffs do not explain why information published behind a paywall would not be known to the market on the day it was published but would become known by the next day.  To the contrary, Plaintiffs allege that the "fraud further emerged" on October 9, 2019—the day the article was published.  *See* TAC ¶¶ 14, 211.

commonly pled and recognized by courts." Opp. 32-33, 33 n.110. In *Swanson v. Interface, Inc.*, the defendant's stock dropped the day after the SEC concluded its investigation into the defendant, but there was no argument that the announcement was made before the market opened. 2022 WL 2003990, at *3 (E.D.N.Y. June 6, 2022). Nor was there a pre-market disclosure in *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, where the "event date [was] June 27, and the reaction occurred on June 28." 310 F.R.D. 69, 96 n.187 (S.D.N.Y. 2015).

*Third*, Plaintiffs argue that on a motion to dismiss they need not demonstrate that their allegations point to "the *only* possible cause for decline in the stock price," but again, that is not what Defendants argue. Opp. 25 (citations omitted). Instead, "when the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases, and a plaintiff's claim fails when it has not adequately pled facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005) (internal quotation marks and citation omitted); *see* MTD at 23-25 (collecting cases).

None of Plaintiffs' cases involve "intervening events" "causing comparable

losses."[5]  Plaintiffs also try to downplay the import of *Dura*, but Plaintiffs' own case refutes their argument.  Opp. 23-24, 26-27.  Specifically, *De Vito* warns that "[t]here may be intervening causes that disrupt the causal chain"—including the "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events" identified in *Dura*—and that "[s]uch confounding factors may prevent the plaintiff from sustaining its burden in proving loss causation."  2018 WL 6891832, at *39 (citation omitted).  Such is the case here. Investors across the industry suffered comparable losses on October 10 because one of the major cannabis companies at that time withdrew its revenue guidance.  MTD at 11.  Indeed, the stocks of the five largest Canadian cannabis companies dropped between 7.2% and 13.5% that day.  *Id.*  Accordingly, Plaintiffs have failed to allege that their loss on October 10 "was caused by the alleged misstatements as opposed to intervening events."  *Lentell*, 396 F.3d at 174 (citation omitted).

## III.         The October 17, 2019 *Yahoo Finance Canada* Article

Plaintiffs' arguments based on the October 17 *Yahoo Finance Canada* article fail for similar reasons.  In response to Defendants' argument that the October 17

---

[5] *See In re Eros Int'l PLC Sec. Litig.*, 2021 WL 1560728, at *15 (D.N.J. Apr. 20, 2021) (no discussion of other investors' losses); *De Vito*, 2018 WL 6891832, at *40 (no discussion of other investors' losses and concluding "corrective disclosures [were] intimately tied to the earlier misstatements outlined in plaintiffs' complaint"); *King Cnty. v. IKB Deutsche Industriebank AG*, 708 F. Supp. 2d 334, 344-45 (S.D.N.Y. 2010) (finding marketwide phenomenon was not sole reason for price decline given market as a whole and defendant's stock dropped at different times).

article cannot serve as a corrective disclosure because—just like the October 9 article—it is based on "speculation and opinion concerning public information," *see* MTD at 12, Plaintiffs point out that the October 17 article included comments from both Aurora and Radient, *see* Opp. 13.  But those comments contain nothing "new" that could support loss causation.  *Canez*, 2021 WL 3667012, at *9.  For its part, Radient confirmed that its previously disclosed transaction with Aurora "complied with regulations and that it had nothing further to add."  Opp. 13.  As for Aurora, it essentially repeated what was already disclosed in Radient's financials, *see supra* 9-10—stating that Radient "purchased [its] initial inventory from Aurora and other [licensed producers] to commence their commercial extractions runs." *Id.*

Relatedly, in response to Defendants' argument that the October 17 article cannot serve as a corrective disclosure because it regurgitates the information from the October 9 article, MTD at 26-27, Plaintiffs contend that the October 17 article "elicited new, suspicious, defensive comments from both Radient and Aurora that concerned investors."  Opp. 29-30.  This argument fails for at least two reasons.  For one thing, as just discussed, there was nothing new or material about these comments.  For another, the October 17 article need only be "substantially similar" (not identical) to the October 9 article to preclude it from serving as an "actionable" disclosure.  *Sjunde AP-Fonden v. Goldman Sachs Group, Inc.*, 545 F. Supp. 3d 120, 147-49 (S.D.N.Y. 2021).  Plaintiffs do not dispute that the analysis of the alleged

14

sham transaction is substantially similar in both articles and that the conclusion about the "potential to double dip on sales" is identical. *See* MTD at 12 (emphasis omitted). As a result, the October 17 article was an inactionable "materialization of known risk." *Sjunde*, 545 F. Supp. 3d at 149.

In addition, Plaintiffs attempt to minimize the "slew of articles" that were published on October 17 highlighting the disappointing one-year anniversary of legal cannabis, Opp. 26, but Plaintiffs cannot avoid the fact that these articles caused comparable losses across the industry, MTD at 27. These "industry-specific" conditions defeat loss causation for the same reasons discussed above in connection with the October 9 article. *See supra* 12-13.

## IV.    Aurora's November 14, 2019 Financial Results

Finally, Plaintiffs argue that "a fuller extent of the known risk associated with the sham Radient transaction materialized" on November 14, 2019, when Aurora "announc[ed] deeply disappointing financial results." Opp. 14. For the same reasons already discussed, *see supra* 3-8, Plaintiffs' materialization-of-the-risk theory fails because Plaintiffs do not allege that Aurora revealed anything—let alone anything new—about the Radient transaction on November 14.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Third Amended Complaint should be dismissed for failure to state a claim, with prejudice.

15

Dated: April 6, 2023          By: _____

Kevin H. Marino
John D. Tortorella
MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, NJ 07928-1488
Phone: 973-824-9300
Fax: 973-824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

Stephen L. Ascher[†]
Andrew J. Lichtman
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036-2711
Phone: 212-891-1600
Fax: 212-891-1699
sascher@jenner.com
alichtman@jenner.com

Howard S. Suskin[†]
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Phone: 312-222-9350
Fax: 312-527-0484
hsuskin@jenner.com

*Attorneys for Defendants*

---

[†]Admitted *pro hac vice*.

16