Not For Publication

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re AURORA CANNABIS INC. SECURITIES LITIGATION | Civil Action No. 19-cv-20588<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this putative class action, Plaintiffs allege that Aurora Cannabis Inc. ("Aurora") and two of its chief officers engaged in fraud in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Currently pending before the Court is Defendants' motion to dismiss Plaintiffs' Third Amended Complaint ("TAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 72. The Court has reviewed the parties submissions in support and in opposition and has decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

I.   **BACKGROUND**[1]

For present purposes, the Court does not retrace the full factual or procedural background of this case. The Court has already provided a fulsome background in opinions regarding Defendants' previous motions to dismiss. D.E. 42; D.E. 64. To the extent relevant, the Court incorporates the factual history, procedural history, and legal standards from these opinions.

---

[1] Factual background is drawn from the TAC, D.E. 68. In evaluating the sufficiency of a complaint under Rule 12(b)(6), a district court must accept all well-pleaded facts as true. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Plaintiffs are individuals who purchased Aurora common stock between January 8, 2019 and November 14, 2019 (the "Class Period"). TAC ¶¶ 1, 23-26. Defendant Aurora is a corporation based in Canada that manufactures and distributes cannabis products. *Id.* ¶ 27. Defendants Terry Booth and Allan Cleiren served as the CEO and COO, respectively, of Aurora during the Class Period. *Id.* ¶¶ 28-29.[2] In this case, Plaintiffs allege that Defendants engaged in securities fraud as to statements and omissions regarding Aurora's financial projections for FQ4 2019. *Id.* ¶¶ 3-10.

In essence, Plaintiffs allege that cannabis sales were constrained by overproduction and limited retail stores throughout the Class Period, but that Defendants disclosed or otherwise stated that Aurora would achieve positive adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA"). *Id.* ¶¶ 4-5. Specifically, Plaintiffs allege that Defendants omitted to disclose a sham transaction that Aurora undertook to inflate these metrics for FQ4 2019 (the "Sham Transaction"). *Id.* ¶¶ 5-9. The Sham Transaction involved the sale of cannabis to Radient, an entity in which Aurora held significant equity. *Id.* ¶ 107.[3] According to Plaintiffs, there was no legitimate business reason for Radient to purchase the cannabis, which it later resold to Aurora. *Id.* ¶¶ 107, 120.

On July 6, 2021, the Court dismissed Plaintiffs' First Amended Complaint for failure to plead false or misleading statements. D.E. 42; D.E. 43. The Court found that Plaintiffs did not address Defendants' disclosure of the risks associated with an oversupplied market and a lack of sufficient retail stores before the Class Period. D.E. 42 at 24-26.[4] As to loss causation, the Court

---

[2] Booth was also an Aurora director during the Class Period. TAC ¶ 28.

[3] Cleiren was a Radient director during most of the Class Period. TAC ¶ 29.

[4] The Court also found that black market competition became apparent in February 2019, that Plaintiffs did not contest Defendants' disclosure of the associated risk in May 2019, and that the

noted that "Plaintiffs should have addressed the legal impact, if any, third-party information had vis-a-vis proximate cause." *Id.* at 32.[5]

Allegations about the Sham Transaction were added to the Second Amended Complaint, *see, e.g.*, D.E. 49 ¶¶ 109, 113-14, 116, 118-19, 131-32, 141, 160-63, 208, 274, 278. On September 23, 2022, the Court dismissed Plaintiffs' Second Amended Complaint for failure to sufficiently plead loss causation. D.E. 65; D.E. 64 at 19. As an initial matter, the Court found that Plaintiffs managed to plead actionable omissions regarding the Sham Transaction. D.E. 64 at 14.[6] The Court explained that Plaintiffs could rely on allegations from former employees at Radient concerning the Sham Transaction and that Plaintiffs did not need to allege communications between the former employees and Aurora. *Id.* at 11-12. Yet, the Court concluded that Plaintiffs failed to adequately plead loss causation because there were no allegations of any "corrective disclosures that resulted in a stock drop[.]" *Id.* at 19.[7] The Court indicated that failure to cure

---

First Amended Complaint did not explain how the statements and reports issued between February and May misled investors. D.E. 42 at 26-28. Plaintiffs have since abandoned allegations regarding black market competition.

[5] The Court also did not make any definitive rulings as to scienter. *Id.* at 30. However, the Court found it suspicious that Defendants projected positive EBITDA after the close of FQ4 2019, only to announce that this metric was missed when financial results were released the following month. *Id.* The Court also found it suspicious that Defendants touted and then halted facility construction within the course of a few weeks. *Id.* Nevertheless, the Court noted that Plaintiffs failed to show that Aurora management relied upon third-party information regarding oversupply, retail sufficiency, or the black market, or that Aurora management "provided information that was materially inconsistent with their own internal information." *Id.*

[6] Relatedly, the Court found that "Plaintiffs plausibly allege[d] that Radient should not have recognized revenue because the contract lacked commercial substance." D.E. 64 at 13.

[7] As to scienter, the Court found that the allegations supported an inference of knowledge or reckless indifference on the part of Aurora and Defendants who served on the Radient board, but not on the part of other individual Defendants. *Id.* at 15-17.

3

these deficiencies would result in dismissal with prejudice, D.E. 65, and Plaintiffs thereafter filed the TAC, D.E. 68.

In the TAC, Plaintiffs point to four corrective disclosures or materializations of concealed risk with respect to the alleged fraud: a September 11, 2019 statement regarding missed EBITDA projections (the "September Statement"); an October 9, 2019 report from the analyst Craig Wiggins (the "Wiggins Report"); an October 17, 2019 report from the website *Yahoo Finance Canada* (the "Yahoo Report"); and a November 14, 2019 statement regarding revenue decline and EBITDA losses (the "November Statement").  TAC ¶ 262.

Plaintiffs assert that the September Statement was a materialization of the risk associated with the Sham Transaction, and not only a corrective disclosure vis-à-vis the EBITDA projections. *Id.* ¶¶ 11-12, 206, 265-66.  Plaintiffs continue that the analyst Craig Wiggins first became suspicious of the Sham Transaction following the September Statement. *Id.* ¶¶ 207, 265.  Plaintiffs also maintain that the missed EBITDA projections would have been more significant if not for the Sham Transaction and that the stock price remained inflated because the Sham Transaction "remained concealed." *Id.* ¶¶ 13, 200.

As to the Wiggins and Yahoo Reports, Plaintiffs assert that these disclosures revealed the Sham Transaction, resulting in stock price deflation in the day immediately after each disclosure, and then again in the following days. *Id.* ¶¶ 14-15, 219, 223, 267-68.  Plaintiffs continue that the stock prices remained inflated in the following weeks because Defendants did not concede to the Sham Transaction. *Id.* ¶ 224.  Plaintiffs also maintain that the inflation persisted until the

November Statement, which was a final indication that Aurora's forecasts could not be trusted and a further materialization of the risk associated with the Sham Transaction. *Id.* ¶¶ 16-17, 233, 269.[8]

On January 6, 2023, Defendants filed the present motion to dismiss the TAC, D.E. 72, along with a brief in support of the motion to dismiss, D.E. 72-1 ("Br."). On March 7, Plaintiffs filed an opposition brief, D.E. 73 ("Opp."), and on April 6, Defendants filed a reply brief, D.E. 74 ("Reply").

## II.  LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016)

---

[8] As to scienter, Plaintiffs allege that Defendants knew or recklessly disregarded the falsity of statements made more than a month after FQ4 2019 was complete because Booth, Cleiren, and Battley had access to the financial results by virtue of their positions as CEO, COO, and CCO. *Id.* ¶ 255. Plaintiffs also allege that Defendants knew or recklessly disregarded the falsity of statements made throughout the Class Period because "[Aurora leadership] monitored the forecast balance of supply and demand in the Canadian markets" and because "sales and revenue from consumer cannabis in the Canadian market went to Aurora's core operations[.]" *Id.* ¶ 256. According to Plaintiffs, scienter is supported by the fact that "analysts and financial writers were publishing this data" and by Booth's acknowledgment that "Ontario and British Columbia 'shat the bed' when rolling out their retail models for recreational cannabis, and that the only provinces that 'got it right' were Alberta and 'perhaps' Saskatchewan." *Id.* ¶¶ 256-57. Furthermore, Plaintiffs suggest that scienter is supported by Aurora "halting construction on facilities only a few weeks after it had praised the construction of such facilities." *Id.* ¶ 258.

(citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims."  *Id.* at 789.

In evaluating the sufficiency of a complaint under Rule 12(b)(6), a district court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations."  *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).  If, after viewing the allegations in a light most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss a complaint for failure to state a claim.  *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 456 (3d Cir. 2006).

Additionally, Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") impose heightened pleading requirements of factual particularity with respect to allegations of fraud.  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 241 (3d Cir. 2013).  Under Rule 9(b), a party alleging fraud must support its allegations with factual details such as "the who, what, when, where and how of the events at issue."  *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016).  Meanwhile, the PSLRA requires that class action plaintiffs detail "both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate, or defraud."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (citations omitted).  The PSLRA's approach for pleading scienter sharply deviates from Rule 9(b), which allows plaintiffs to plead the relevant mental state element generally.  *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir.

6

2009). However, neither Rule 9(b) nor the PSLRA applies to allegations of loss causation. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

### III. ANALYSIS

#### A. Section 10(b) of the Exchange Act (Count One)

To state a claim for securities fraud under Section 10(b) of the Exchange Act, a party must plead "(1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014). Defendants argue that Plaintiffs fail to plead loss causation because the September Statement, the Wiggins Report, the Yahoo Report, and the November Statement did not amount to corrective disclosures or materializations of the risk associated with the Sham Transaction. Br. at 15-28.

#### 1. The September and November Statements

Defendants argue that the September Statement cannot support a finding of loss causation because it did not reveal the Sham Transaction or otherwise serve as a corrective disclosure. Br. at 15. Defendants further assert that the materialization of the risk theory has not been adopted by the Third Circuit, and that in any event, the relevant risk did not materialize in the September Statement. *Id.* at 18. Defendants similarly contend that the November Statement cannot support a finding of loss causation for the same reasons. *Id.* at 27-28.

In response, Plaintiffs maintain that the materialization of the risk theory has been adopted by the Third Circuit. Opp. at 18. According to Plaintiffs, "[t]he Radient transaction and [D]efendants' attendant misstatements regarding the contrived revenue derived from it, and Aurora's false and misleading EBITDA projections and statements about its financial condition,

constitute undisclosed risk[s] that materialized[.]" *Id*. at 20 (citations omitted). Thus, Plaintiffs argue that the September and November Statements did not need to admit, disclose, or otherwise reveal the Sham Transaction. *Id.* at 20, 23. Instead, Plaintiffs suggest that the disclosures only needed to reveal the alleged falsity of the EBITDA guidance. *Id.* at 23.

In reply, Defendants assert that focusing on the alleged falsity of the EBITDA guidance "shows that something other than the alleged fraud caused the loss." Reply at 5. Defendants likewise contend that the September and November Statements needed to reveal the Sham Transaction in order to support a finding of loss causation. *Id.* at 7.

"Loss causation demonstrates that the fraudulent misrepresentation actually caused the loss suffered." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 173 (3d Cir. 2001). If "the plaintiff shareholder alleges that a fraudulent misrepresentation or omission has artificially inflated the price of a publicly-traded security," then "the plaintiff must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff." *McCabe v. Ernst & Young, LLP.*, 494 F.3d 418, 425–26 (3d Cir. 2007). In other words, the investor must "allege sufficient facts to show that the alleged misrepresentations proximately caused the decline in the security's value." *In re Bradley Pharmaceuticals, Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 827 (D.N.J. 2006) (citations omitted). "[W]here the price of a security declines for reasons unrelated to the fraud, the investor has no right to recovery." *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 559 (D.N.J. 2010).

Plaintiffs fail to allege that revelation of the Sham Transaction caused the stock price drops that followed the September and November Statements. In fact, Plaintiffs do not even allege that the September or November Statements revealed the Sham Transaction. Rather, Plaintiffs' theory

is that the September and November Statements revealed the falsity of the EBITDA guidance, that the Sham Transaction was intended to cover-up this falsity, and that the disclosures thereby materialized the risks of both the EBITDA guidance and the Sham Transaction. However, the Court has already ruled that the EBITDA guidance is inactionable and the risk of the Sham Transaction could not have materialized if the disclosures did not reveal that alleged fraud. Indeed, the materialization of the risk theory recognizes "an event that *reveals* that an earlier statement was false," *Paxton v. Provention Bio, Inc.*, 2022 WL 3098236, at *18 (D.N.J. Aug. 4, 2022) (citations omitted and emphasis added), or a circumstance where "a misstatement or omission concealed something from the market that, *when disclosed*, negatively affected the value of the security," *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *39 n.37 (D.N.J. Dec. 31, 2018) (emphasis added).[9] Here, the only actionable misstatements or omissions concern the Sham Transaction, and that alleged fraud was not revealed or disclosed by the September or November Statements.[10]

Additionally, other courts in this district have routinely concluded that loss causation is lacking in similar contexts. For example, *In re Tellium, Inc. Sec. Litig.*, 2005 WL 2090254, at *3 (D.N.J. Aug. 26, 2005) involved statements with "false contractual purchase commitments and

---

[9] Although a court in this district has suggested that the Third Circuit does not endorse the materialization of the risk theory, *Pharmanet*, 720 F. Supp. 2d at 563 n.35, the Third Circuit has expressed some support for this approach to loss causation, *McCabe*, 494 F.3d at 429, and other courts have applied the framework, as detailed below.

[10] *Pharmanet* is instructive. In that case, the disclosures revealed goodwill impairment charges, backlog fluctuations, and contract cancellations, but not the alleged fraud that was designed to hide these negative financial results—*i.e.*, the failure to timely record goodwill impairment charges, the inclusion of delayed projects that resulted in overstated backlogs, and the client dissatisfaction that led to cancelled contracts. 720 F. Supp. 2d at 560-61. Since there were "no allegations that the market recognized any of the alleged fraud," the court found that there was no loss causation. *Id.* at 560.

9

sales expectations" and "projected revenues that were not based on any real commitments," followed by disclosures about lower-than-expected revenues and the need for new customers in order to meet revenue projections. Similarly, *Hull v. Glob. Digital Sols., Inc.*, 2017 WL 6493148, at *3, 13 (D.N.J. Dec. 19, 2017) involved the untrue statement that existing lines of business and additional acquisitions would facilitate a specific revenue run rate, followed by disclosures that "revealed less than anticipated GDS revenue[.]" Although the relevant misstatements were related to positive revenue estimates and the relevant disclosures relayed negative revenue metrics, the courts found that the plaintiffs failed to plead loss causation, as the disclosures did not reveal the "subject," *Tellium*, 2005 WL 2090254, at *3, or "false nature," *Hull*, 2017 WL 6493148, at *13, of the misrepresentations. Here too, the Sham Transaction was related to positive EBITDA projections and the September and November Statements relayed negative EBITDA metrics, but the disclosures did not reveal the subject or false nature of the alleged fraud.[11]

Because there are no allegations that the Sham Transaction was revealed therein, loss causation has not been pled sufficiently as to the September or November Statements. *See Dura*, 544 U.S. at 342-43 ("[If] the purchaser sells the shares quickly before the relevant truth begins to

---

[11] The cases cited by Plaintiffs are inapposite; in those cases, the disclosures revealed the subject or false nature of the misrepresentations, which allowed this Court and other courts in this district to apply the materialization of the risk theory. *See, e.g.*, *In re Celgene Corp. Sec. Litig.*, 2019 WL 6909463, at *14, 16, 22 (D.N.J. Dec. 19, 2019) (defendant misrepresented strength of sales for one drug while omitting need for further regulatory testing on another drug, and disclosures revealed poor sales and regulatory hurdles); *In re Galena Biopharma, Inc. Sec. Litig.*, 2019 WL 5957859, at *16, 19 (D.N.J. Nov. 12, 2019) (defendant misrepresented commercial health by insisting sales were expanding despite police raid on largest prescribers, and disclosure revealed discontinuance of commercial business); *Kanefsky v. Honeywell Int'l Inc.*, 2020 WL 2520669, at *3-4, 7 (D.N.J. May 18, 2020) (disclosure was announcement of SEC investigation, which revealed subject and false nature of misrepresentations); *see also Industriens Pensionsforsikring A/S v. Becton, Dickinson and Company*, 620 F. Supp. 3d 167, 199 (D.N.J. 2022) (defendant misrepresented severity of regulatory issues, and disclosure revealed FDA communications about serious regulatory issues).

leak out, the misrepresentation will not have led to any loss."). Accordingly, the motion to dismiss Count One is granted as to these disclosures.

### 2. The Wiggins and Yahoo Reports

Defendants argue that the Wiggins Report cannot support a finding of loss causation "for multiple, independent reasons." Br. at 19. First, Defendants assert that "negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure[.]" *Id.* (citations omitted). Second, Defendants contend that "[b]ecause the article came out before markets opened on October 9, the relevant day for assessing any stock drop is October 9—not October 10." *Id.* at 20 (emphasis omitted). Third, Defendants maintain that the stock drop on October 10 could have been related to "other economic factors." *Id.* at 23.[12] Defendants also argue that the Yahoo Report cannot support a finding of loss causation for most of the same reasons. Br. at 25.[13]

In opposition, Plaintiffs assert that "third-party analysis of public information is capable of contributing new information to the market" and that the Wiggins and Yahoo Reports "questioned Aurora and Radient with original reporting." Opp. at 28-29.[14] Plaintiffs also contend that "there is no per se rule limiting the pleading of loss causation to the day of disclosure" and that the

---

[12] Defendants point out that "the stocks of all five of the biggest Canadian cannabis companies dropped significantly on October 10 because one of the major cannabis companies withdrew its revenue guidance." Br. at 23.

[13] Defendants point out that "[t]he stocks of all five major Canadian cannabis companies dropped on October 18 as a result of an onslaught of articles highlighting the disappointing one-year anniversary of legal cannabis," *id.* at 25, and that the Yahoo Report "regurgitates the same information about the Aurora-Radient relationship" as the Wiggins Report, *id.* at 26.

[14] Plaintiffs point out that the Wiggins Report was "based on extensive analysis of myriad SEC filings by both Aurora and Radient," and that the Yahoo Report "elicited new, suspicious, defensive comments from both Aurora and Radient that concerned investors." Opp. at 29-30.

11

Wiggins Report "was published that day behind a subscriber paywall, potentially impacting the market's ability to access it." *Id.* at 32.

In reply, Defendants argue that the comments in the Wiggins and Yahoo Reports attributed to Aurora and Radient were not new because they were already made in public filings or merely confirmed compliance with regulations. Reply at 10, 14.[15] As to the temporal connection between disclosures and stock price declines, Defendants acknowledge that while there is no per se rule limiting loss causation to the day of disclosure, a pre-market disclosure should be reflected in the market that same day. *Id.* at 10-11. Similarly, as to the causal connection between other economic factors and stock price declines, Defendants maintain that there is no requirement to disaggregate every variable, but that Plaintiffs should account for "a marketwide phenomenon" or "industry-specific conditions" that could have caused the loss. *Id.* at 12, 15 (citations omitted).

The Court agrees with Plaintiffs that loss causation has been pled adequately as to the Wiggins and Yahoo Reports. Plaintiffs allege that the Wiggins and Yahoo Reports revealed the Sham Transaction, and that stock prices declined following the disclosures. Although the Wiggins Report was based on public filings, it did not merely elucidate the "magnitude" of a previously disclosed metric, and it involved more than a "reporter simply [doing] the math" or "performing one subtraction and one multiplication" from information in a single public filing. *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 270-71 (3d Cir. 2005).[16] Likewise, the Yahoo Report did "not

---

[15] Alternatively, Defendants point out the Yahoo Report was "substantially similar" to the Wiggins Report. *Id.* at 14.

[16] *Merck* involved a materiality analysis, not a loss causation analysis. 432 F.3d at 268. And Defendants incongruously argue that the Sham Transaction remained concealed in the September Statement but that discussion of the Sham Transaction in the Wiggins Report contained no new information.

12

merely repeat information" from the Wiggins Report; while the disclosures "address the same subject matter," namely the Sham Transaction, "each provided new information as to the seriousness and extent of the Company's alleged fraud." *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *27 (D.N.J. Dec. 27, 2019).[17] In any event, "[t]he exposure of the alleged fraud need not occur in a single, all-encompassing corrective disclosure." *In re Merck & Co., Inc. Sec., Derivative, & ERISA Litig.*, 2011 WL 3444199, at *31 (D.N.J. Aug. 8, 2011).

Moreover, the Court is unconvinced by Defendants' arguments about the dates of stock price decreases. The Third Circuit has found that information may take two days to impact stock prices in an efficient market, *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 635 (3d Cir. 2011), and another court in this district has found loss causation to be present where prices have fallen within five and three days of disclosures, *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, 2009 WL 2855601, at *3-4 (D.N.J. Sept. 2, 2009). Likewise, other courts in this circuit have disclaimed the view that the stock price must fall on the day of disclosure in an efficient market, *Allegheny Cnty. Employees' Ret. Sys. v. Energy Transfer LP*, 623 F. Supp. 3d 470, 485 (E.D. Pa. 2022), or the view that price impact cannot occur the day after disclosure, *Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 486 (E.D. Pa. 2021).[18] And this Court has observed that, "[a]t the motion to dismiss stage,

---

[17] The Yahoo Report did not only summarize the Wiggins Report and quote Wiggins; the disclosure also offered subsequent comments from Aurora and Radient, who refused to elaborate on the Sham Transaction, as well as subsequent quotes from an executive and an academic, who further requested improved disclosures. D.E. 72-2 at 33-36.

[18] Even if Plaintiffs "must show a sound conceptual and evidentiary basis" for considering stock price declines beyond the first day, *Energy Transfer LP*, 623 F. Supp. 3d at 485, such as "clarifying information" on the second day, *Pelletier*, 338 F.R.D. at 486, or subsequent announcements, *In re EQT Corp. Sec. Litig.*, 2022 WL 3293518, at *18 (W.D. Pa. Aug. 11, 2022), any fact-intensive analysis of the contours of the market reaction is better suited for class certification or expert testimony. Therefore, while it is unclear whether Plaintiffs intend to consider the stock price only on October 10, or both on October 9 and on October 10, "revisiting this specific issue at a later

Plaintiffs do not need to explain why other market forces did not affect the share price." *In re Eros Int'l PLC Sec. Litig.*, 2021 WL 1560728, at *15 (D.N.J. Apr. 20, 2021).[19]  As such, the Court is also unmoved by Defendants' arguments about the significance of other economic circumstances surrounding stock price fluctuations.

Therefore, notwithstanding the timing of stock price declines or the possibility that other economic factors caused stock price drops, loss causation has been pled sufficiently as to the Wiggins and Yahoo Reports.  Accordingly, the motion to dismiss Count One is denied as to these disclosures.

### B. Section 20(a) of the Exchange Act (Count Two)

To state a claim for securities fraud under Section 20(a) of the Exchange Act, a party must plead "(1) the defendant controlled another person or entity; (2) the controlled person or entity committed a primary violation of the securities laws; and (3) the defendant was a culpable participant in the fraud." *Carmack v. Amaya Inc., 258 F. Supp. 3d 454*, 466 (D.N.J. 2017) (citing *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 286 (3d Cir. 2006)).  Defendants argue that Plaintiffs fail to plead a primary violation due to the absence of loss causation.  Br. at 28.[20]

---

date" is more appropriate, to the extent relevant. *EQT Corp. Sec. Litig.*, 2022 WL 3293518, at *18 (finding that expert witness could use two-day window to establish price impact at class certification).

[19] The same holds true, even if particular economic factors are singled out by Defendants. *Merck*, 2011 WL 3444199, at *31; *see also In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 297 (D.N.J. 2007) (citations omitted) (holding that "a securities plaintiff need not plead facts indicating that disclosure of the alleged fraud was the sole reason for the investment's decline in value").

[20] Since Defendants do not dispute that Plaintiffs plead the other elements of this cause of action, the Court only addresses the primary violation.

As detailed above, Plaintiffs fail to adequately plead a primary violation as to the September and November Statements due to the absence of loss causation, but Plaintiffs manage to plead a primary violation as to the Wiggins and Yahoo Reports due the presence of loss causation. Accordingly, the motion to dismiss Count Two is granted in part and denied in part.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is granted in part and denied in part. An appropriate order follows this Opinion.

*John Michael Vazquez, U.S.D.J.*

Dated: August 24, 2023