**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re AURORA CANNABIS INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>    ALL ACTIONS. | Civil Action No. 19-20588(JMV)(JBC) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION AND/OR CLARIFICATION OF THE COURT'S AUGUST 24, 2023 OPINION**

James E. Cecchi
Donald A. Ecklund
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Local Counsel for Lead Plaintiffs*

Samuel H. Rudman
Alan I. Ellman
ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road,
Suite 200
Melville, NY 11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
aellman@rgrdlaw.com

Steve W. Berman
Shayne C. Stevenson
HAGENS BERMAN SOBOL
    SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: 206/268-9340
206/623-0594 (fax)
steve@hbsslaw.com
shaynes@hbsslaw.com

*Co-Lead Counsel for Lead Plaintiffs*

*[Additional counsel appear on signature page.]*

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT......................................1

II.   BACKGROUND.................................................5

III.  ARGUMENT..................................................6

    A.    Defendant's September 11, 2019 Statements first partially disclosed circumstances of the Sham Transaction................................7

    B.    The September 11, 2019 Statements also corrected Defendants' false and misleading August 6, 2019 statements that Aurora was tracking for positive EBITDA weeks after the quarter had closed——a point Defendants did not contest.........................................11

IV.   CONCLUSION................................................12

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Asirifi v. Omni Asset Mgmt., LLC*,
   2013 WL 4858711 (D.N.J. Sept. 11, 2013) ......................7

*Boretsky v. Governor*,
   433 F. App'x 73 (3d Cir. 2011) ..............................7

*Cordero v. Mountcastle-Thomas*,
   2023 WL 4882805 (D.N.J. July 31, 2023) ......................6

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................10

*Dworjan v. United States*,
   2016 WL 355074 (D.N.J. Jan. 28, 2016) .......................6

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
   2011 WL 3444199 (D.N.J. Aug. 8, 2011) .................3, 4, 10

*Okogun v. Creegan*,
   2023 WL 5177449 (D.N.J. Aug. 11, 2023) ...................6, 7

*Sanofi-Aventis U.S., LLC v. Great Am. Lines, Inc.*,
   2016 WL 4472949 (D.N.J. Aug. 22, 2016) ......................6

*In re Wilmington Tr. Sec. Litig.*,
   29 F. Supp. 3d 432 (D. Del. 2014) ..........................11

**OTHER AUTHORITIES**

L. Civ. R. 7.1(i).............................................7

Fed R. Civ. P. 8.........................................10, 11

Lead Plaintiffs Doug Daulton, Francisco Quintana, Donald S. Parish, and Quang Ma ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for partial reconsideration and/or clarification of this Court's August 24, 2023 Opinion (ECF No. 75) and accompanying Order (ECF No. 76) (collectively, the "August 24, 2023 Opinion") as to Count One and Count Two insofar as the allegations of loss causation are based on the alleged disclosures of September 11, 2019.[1]

## I.   PRELIMINARY STATEMENT

Reconsideration is rarely necessary and, by the undersigned counsel, rarely requested. But courts in this District have recognized that some situations warrant it. This is one of those situations. Respectfully, in its August 24, 2023 Opinion, the Court did not address material, determinative facts regarding Defendant Aurora Cannabis Inc.'s September 11, 2019 financial disclosures.

In its September 23, 2022 Opinion (ECF No. 64), the Court held that Plaintiffs adequately alleged the Defendants,[2] with

---

[1] Plaintiffs do not seek reconsideration or clarification of the Court's holding insofar as the allegations of loss causation are based on the disclosures of November 14, 2019. *See* Aug. 24, 2023 Opinion at 7-11.

[2] Defendants are Aurora Cannabis, Inc. ("Aurora" or the "Company"), Aurora's former Chief Executive Officer Terry Booth, and Aurora's former Chief Operating Officer Allan Cleiren.

scienter, omitted material facts concerning their orchestration and execution of a $21.7 million sham transaction with Radient Technologies Inc. ("Radient"), an entity affiliated with Aurora ("Sham Transaction"). *See* Sept. 23, 2022 Opinion at 10-18. The Court, however, dismissed Plaintiffs' claims for failure to "identify any corrective disclosures about the Radient deal" or to "plausibly plead that Aurora's stock dropped after analyst articles about the Radient transaction were published on October 9, 2019 and October 18, 2019." *Id*. at 18.

In response, Plaintiffs filed the Third Amended Complaint ("TAC") (ECF No. 68). On August 24, 2023, in denying and granting in part Defendants' Motion to Dismiss the TAC, the Court granted Defendants' motion for failure to plead loss causation with respect to Defendants' statements on September 11, 2019 concerning Aurora's financial results for the fourth fiscal quarter of 2019 ("Q4 2019") and the 2019 fiscal year ending June 30, 2019 (collectively, the "September 11, 2019 Statements"). The Court held that because "the only actionable misstatements or omissions concern the Sham Transaction, and that alleged fraud was not revealed or disclosed" by Defendants' September 11, 2019 Statements, loss causation allegations could not survive for that date. *See* Aug. 24, 2023 Opinion at 9-10.

In making this determination, the Court overlooked Plaintiffs' allegations that the September 11, 2019 Statements

- 2 -

were *the first partial corrective disclosures* in a series of disclosures of the truth about the Sham Transaction. Specifically, the September 11, 2019 Statements disclosed the *subject* of the Sham Transaction——more than $20 million of wholesale bulk cannabis revenue booked by Aurora——which analyst Craig Wiggins described as "miraculous," as it represented an astonishing *870% increase* from the previous quarter. Wiggins also noted that the $12.3 million of wholesale gross margin reported by Aurora on September 11, 2019 for Q4 2019 represented an $11 million quarter-over-quarter increase——representing an *896% increase*——and contributed substantially to the adjusted EBITDA improvement of $9 million for the quarter.

In fact, Wiggins——who broke the story that Aurora and Radient appeared to have engaged in a fraudulent, round-trip transaction designed to meet Aurora's EBITDA guidance——expressly attributed his initial suspicions of the Sham Transaction to Aurora's September 11, 2019 conference call. And Plaintiffs sufficiently allege that Aurora's stock price declined significantly in response.

The Court overlooked these facts when it held that the September 11, 2019 Statements did not reveal the Sham Transaction, especially because "[the] exposure of the alleged fraud need not occur in a single, all-encompassing corrective disclosure"; instead, the truth can be revealed through a

- 3 -

"series of partial corrective disclosures." *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig*., 2011 WL 3444199, at *31- *32 (D.N.J. Aug. 8, 2011). Investors rightly reacted with worry about this partial disclosure, causing the stock to drop 9.5% in response. TAC ¶ 14.

The Court also overlooked Plaintiffs' allegations that Defendants' statements on August 6, 2019——five weeks after Q4 2019 had ended——that Aurora was tracking for positive EBITDA for Q4 2019 were materially false and misleading because Defendants had access to the Company's Q4 2019 financial results and knew, or recklessly disregarded, that Aurora had already missed its guidance. The Court characterized Defendants' conduct in this regard as "suspicious." July 6, 2021 Opinion (ECF No. 42) at 30. Plaintiffs alleged that the September 11, 2019 Statements were corrective *of the false August 6, 2019 statements* that Aurora continued to track toward positive EBITDA. Defendants did not address this argument in their Motion to Dismiss and, as Plaintiffs pointed out in their Opposition to the Motion to Dismiss, Defendants waived the argument.

Because the Court did not address the fact that Plaintiffs sufficiently alleged for pleading purposes that the September 11, 2019 Statements were the first partial disclosure of the Sham Transaction and that the September 11, 2019 Statements also partially corrected the false and misleading statements by

- 4 -

Defendants the month prior, Plaintiffs respectfully request that the Court partially reconsider and/or clarify its August 24, 2023 holding with respect to loss causation attendant to the September 11, 2019 Statements and find that Plaintiffs sufficiently plead loss causation resulting from the September 11, 2019 Statements.

## II.    BACKGROUND

On September 21, 2020, Plaintiffs filed their first Amended Complaint for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. ECF No. 24 ("FAC"). On July 6, 2021, the Court dismissed the FAC for failure to plead false or misleading statements. *See* July 6, 2021 Opinion.

Allegations about the Sham Transaction were added to the Second Amended Complaint ("SAC"). ECF No. 49. On September 23, 2022, the Court found that the SAC adequately alleged that Defendants made actionable omissions with scienter, *see* Sept. 23, 2022 Opinion at 9-18, but dismissed the SAC for failure to sufficiently plead loss causation. *See id*. at 18-19.

On November 7, 2022, Plaintiffs filed the TAC. The TAC alleges four corrective disclosures or materializations of concealed risk with respect to the alleged fraud: the September 11, 2019 Statements; an October 9, 2019 report from Wiggins; an October 17, 2019 report from *Yahoo Finance Canada*; and November 14, 2019 statements by Aurora regarding revenue decline and

- 5 -

EBITDA losses. TAC ¶ 262; *see also* Aug. 24, 2023 Opinion at 4. On January 6, 2023, Defendants moved to dismiss the TAC (ECF No. 72). On March 7, 2023, Plaintiffs opposed the Motion to Dismiss ("Pls. Opp. Br.," ECF No. 73). Defendants replied on April 6, 2023 (ECF No. 74). The Court decided the Motion to Dismiss on August 24, 2023.

## III. ARGUMENT

Though reconsideration is granted "very sparingly," it should be granted when a movant can show that reconsideration is necessary "to correct a clear error of law . . . or prevent manifest injustice." *Sanofi-Aventis U.S., LLC v. Great Am. Lines, Inc*., 2016 WL 4472949, at *1 (D.N.J. Aug. 22, 2016) (reconsideration granted as to one motion and order partially vacated); *Dworjan v. United States*, 2016 WL 355074 (D.N.J. Jan. 28, 2016) (reconsideration granted and prior order vacated). "A party seeking to persuade the court that reconsideration is appropriate bears the burden of demonstrating one of the following: '(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'" *Cordero v. Mountcastle-Thomas*, 2023 WL 4882805, at *2 (D.N.J. July 31, 2023) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Under the third

- 6 -

prong, "the motion may only be granted if dispositive factual matters or controlling decisions of law were presented to the court but were overlooked." *Okogun v. Creegan*, 2023 WL 5177449, at *2 (D.N.J. Aug. 11, 2023); *see also Boretsky v. Governor*, 433 F. App'x 73, 78 (3d Cir. 2011) (motions for reconsideration appropriate to "identify pertinent law or facts that the District Court overlooked"). Motions for reconsideration are governed by Local Civil Rule 7.1(i), which requires the moving party to "set[] forth concisely the matter or controlling decisions which the party believe the Judge or Magistrate Judge has overlooked[.]" L. Civ. R. 7.1(i). Likewise, "[m]otions for clarification are often evaluated under the standard for a motion for reconsideration in this jurisdiction." *Asirifi v. Omni Asset Mgmt., LLC*, 2013 WL 4858711, at *1 (D.N.J. Sept. 11, 2013).

As detailed below, the August 24, 2023 Opinion overlooked dispositive factual allegations that sufficiently plead loss causation for the September 11, 2019 Statements. In light of these overlooked facts, Plaintiffs respectfully ask the Court to reconsider and/or clarify the August 24, 2023 Opinion to avoid a manifest injustice to Plaintiffs and the putative Class.

**A.    Defendant's September 11, 2019 Statements first partially disclosed circumstances of the Sham Transaction.**

In the August 24, 2023 Opinion, the Court held "Plaintiffs fail to allege that revelation of the Sham Transaction caused the stock price drops that followed the September . . . Statements. In fact, Plaintiffs do not even allege that the September . . . Statements revealed the Sham Transaction"; rather, the September Statements merely "revealed the falsity of the EBITDA guidance[.]" Aug. 24, 2023 Opinion at 8.[3] This determination, however, overlooked the critical fact that the September 11, 2019 Statements disclosed for the first time Aurora's "miraculous"——in analyst Wiggins' words——$20 million wholesale bulk cannabis revenue, which represented an *870% increase* from the previous quarter. TAC ¶ 251. Wiggins also noted that the $12.3 million of wholesale gross margin reported by Aurora for Q4 2019 represented an $11 million quarter-over-quarter increase——reflecting an *896% increase*——and contributed substantially to the adjusted EBITDA improvement of $9 million for the quarter. TAC ¶ 211. Thus, the September 11, 2019 Statements disclosed that Aurora's wholesale segment, which had

---

[3]  *See also* August 24, 2023 Opinion at 9 ("Here, the only actionable misstatements or omissions concern the Sham Transaction, and that alleged fraud was not revealed or disclosed by the September . . . Statements.").

been Aurora's smallest contributor of revenue (*see* Aurora 2019 Annual Report at 41, ECF No. 33-5), jumped by an astronomical amount.

Moreover, as Wiggins noted, the September 11, 2019 Statements revealed the outsized impact of the wholesale revenue on Aurora's bottom line: "without the Wholesale Revenue figure and the accompanying Gross Margin contribution Aurora would have had a much different Quarter, with Cannabis Sales of $74.6 million versus $94.6 million and likely back sliding on Adj EBITDA QoQ instead of improving." TAC ¶ 212. Further, during Aurora's September 12, 2019 earnings call before the market opened, and knowing that the Radient transaction was a one-time sham transaction intended to meet Defendants' projections, Aurora's Chief Financial Officer cynically cautioned investors against "expecting bulk sales of the magnitude we achieved in Q4 2019 to be consistent or repeatable" (TAC ¶ 197)——yet another partial disclosure pointing to the suspicious nature of the Sham Transaction.

Indeed, Wiggins acknowledged the revelatory impact of the September 11, 2019 Statements when he wrote: "***Our suspicions ... started September 11, 2019 with Aurora's June 30, 2019 conference call,*** regarding Aurora's miraculous $20 million in wholesale revenue (a +870% incremental increase QoQ)." TAC ¶

- 9 -

251.[4] Following up on the suspicions raised in the September 11, 2019 Statements, and after digging into Aurora's and Radient's financials and speaking with both companies' executives (TAC ¶¶ 211-217), Wiggins published his first written report of the Sham Transaction less than a month later. TAC ¶ 211.

Accordingly, the September 11, 2019 Statements were the first in a series of partial corrective disclosures of the truth about the Sham Transaction——*i.e.*, the "begin[ning]" of the truth "leak[ing] out" to the market. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005); *see also Merck & Co.*, 2011 WL 3444199, at *31-*32 ("[the] exposure of the alleged fraud need not occur in a single, all-encompassing corrective disclosure"; instead, the truth can be revealed through a "series of partial corrective disclosures").

At the pleading stage, this is sufficient to state a claim. *See Dura Pharms.*, 544 U.S. at 346-48 (with respect to loss causation, "[the] ordinary pleading rules are not meant to impose a great burden upon a plaintiff," and "require only" satisfaction of Rule 8(a)(2)'s pleading standard, without "any special further requirement in respect to the pleading of

---

[4]   The TAC alleged this fact repeatedly (*see, e.g.*, TAC ¶¶ 14, 207, 251, 265), and Plaintiffs argued the point in their brief opposing Defendants' Motion to Dismiss. *See* Pls. Opp. Br. at 11, 21.

proximate causation or economic loss"). In addition to the Rule 8 threshold, and as the Court noted previously, "[t]he proper place to resolve factual disputes is not on a motion to dismiss." Sept. 23, 2022 Opinion at 11 (quoting *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022)). "Third Circuit precedent instructs that loss causation is a fact intensive inquiry which is best resolved by the trier of fact." *In re Wilmington Tr. Sec. Litig.*, 29 F. Supp. 3d 432, 450 (D. Del. 2014) (citing *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 884 (3d Cir. 2000) ("[w]hether the plaintiff has proven [loss] causation is usually reserved for the trier of fact")).

Respectfully, reconsideration of these overlooked allegations is necessary here and leads to the conclusion that Plaintiffs' sufficiently alleged loss causation regarding the September 11, 2019 Statements.

> **B.    The September 11, 2019 Statements also corrected Defendants' false and misleading August 6, 2019 statements that Aurora was tracking for positive EBITDA weeks after the quarter had closed—a point Defendants did not contest.**

As explained above, in the TAC, Plaintiffs alleged that Defendants' statements projecting positive EBITDA by the end of Q4 2019——made before the close of Q4 2019——were materially false and misleading due to the known existence of the Sham Transaction. Plaintiffs separately alleged that Defendants' statements on August 6, 2019, *five weeks after Q4 2019 had*

- 11 -

*ended*, that Aurora was tracking for positive EBITDA for Q4 2019 were materially false and misleading for the additional reason that Defendants had access to the Company's Q4 2019 financial results and knew, or recklessly disregarded, that Aurora had already missed its guidance. TAC ¶¶ 9-10, 12, 189-191, 193, 205, 255, 266.[5]  As a result, Plaintiffs alleged that the September 11, 2019 Statements were disclosures *corrective of* the false August 6, 2019 statements that Aurora continued to track toward positive EBITDA. TAC ¶ 266. Defendants did not address this argument in their Motion to Dismiss and, as Plaintiffs pointed out in their Opposition to the Motion to Dismiss, Defendants waived the argument. *See* Pls. Opp. Br. at 24 n.85. Defendants also failed to address this argument in their Reply.

Respectfully, reconsideration of these overlooked allegations is also necessary here and leads to the conclusion, on separate grounds, that Plaintiffs sufficiently alleged loss causation with regard to the September 11, 2019 Statements.

---

[5]  Without ruling on scienter in the FAC, the Court noted that "it is suspicious that on August 6, 2019 – after the close of FQ4 2019 but before the results from that quarter were released – Defendants reiterated their expectation of achieving positive EBITDA in a press release and, ultimately, fell short of that metric when the results were released on September 11, 2019." July 6, 2021 Opinion at 30.

- 12 -

## IV.    CONCLUSION

For all these reasons, Plaintiffs respectfully request that the Court grant their motion for partial reconsideration and/or clarification and find loss causation sufficiently pled with respect to the Defendants' September 11, 2019 Statements.


DATED: September 8, 2023    Respectfully submitted,

CARELLA, BYRNE, CECCHI, OLSTEIN,
 BRODY & AGNELLO, P.C.
JAMES E. CECCHI
DONALD A. ECKLUND


*/s/ James E. Cecchi*
JAMES E. CECCHI

5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Local Counsel*

ROBBINS GELLER RUDMAN & DOWD LLP
SAMUEL H. RUDMAN
ALAN I. ELLMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
aellman@rgrdlaw.com

- 13 -

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN
SHAYNE C. STEVENSON
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)
steveb@hbsslaw.com
shaynes@hbsslaw.com

*Lead Counsel for Lead Plaintiffs and
the Proposed Class*

SCHALL LAW FIRM
BRIAN SCHALL
1880 Century Park East, Suite 404
Los Angeles, CA  90067
Telephone:  310/301-3335
310/338-0192 (fax)
brian@schallfirm.com

*Additional Counsel*

- 14 -