# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re AURORA CANNABIS INC. SECURITIES LITIGATION<br><br><br>This Document Relates To:<br>ALL ACTION | Case No. 2:19-cv-20588-BRM-JBC<br>Hon. Brian R. Martinotti, U.S.D.J. |

# DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION AND/OR CLARIFICATION OF THE COURT'S AUGUST 24, 2023 OPINION

Kevin H. Marino
John D. Tortorella
MARINO, TORTORELLA & BOYLE P.C.
437 Southern Boulevard
Chatham, NJ 07928-1488
Phone: 973-824-9300
Fax: 973-824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

Stephen L. Ascher (*pro hac vice*)
Andrew J. Lichtman
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036-2711
Phone: 212-891-1600
sascher@jenner.com
alichtman@jenner.com

Howard S. Suskin (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Phone: 312-222-9350
hsuskin@jenner.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ..................................................................................................3

I.   Defendants' Motion to Dismiss................................................................3

II.  Plaintiffs' Opposition Brief ....................................................................5

III. The Court Rejects Plaintiffs' Allegations About the September
     Statement ................................................................................................7

IV.  Plaintiffs' Motion for Reconsideration....................................................9

ARGUMENT ......................................................................................................9

I.   The Court Rejected Plaintiffs' Argument That the September
     Statement Partially Disclosed the Sham Transaction...................................11

II.  The Court Rejected Plaintiffs' Argument That the September
     Statement Corrected Defendants' August 2019 Statements .........................14

CONCLUSION................................................................................................15

# TABLE OF AUTHORITIES

*De Vito v. Liquid Holdings Grp., Inc.*,
  2018 WL 6891832 (D.N.J. Dec. 31, 2018)...........................................................6

*Dogan v. Bureau of Prisons*,
  2016 WL 1162373 (D.N.J. Mar. 23, 2016) .....................................................10, 13

*Gutierrez v. Johnson & Johnson*,
  743 F. Supp. 2d 418 (D.N.J. 2010).............................................................11, 13

*Howard v. Arconic Inc.*,
  2021 WL 2561895 (W.D. Pa. June 23, 2021) ......................................................6

*Kadonsky v. Ahsan*,
  782 F. App'x 87 (3d Cir. 2019) ...........................................................................10

*Lazaridis v. Wehmer*,
  591 F.3d 666 (3d Cir. 2010) ...............................................................................10

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*,
  176 F.3d 669 (3d Cir. 1999) ...............................................................................10

*McCabe v. Ernst & Young, LLP*,
  494 F.3d 418 (3d Cir. 2007) .................................................................................4

*Rita v. United States*
  551 U.S. 338 (2007)............................................................................................11

*Sanofi-Aventis U.S., LLC v. Great Am. Lines, Inc.*,
  2016 WL 4472949 (D.N.J. Aug. 22, 2016) .........................................................10

*United States v. Pinkhasov*,
  2009 WL 150669 (D.N.J. Jan. 21, 2009)..............................................................10

**Other Authorities**

Local Civil Rule 7.1 .................................................................................................9

ii

Defendants Aurora Cannabis, Inc. ("Aurora" or the "Company"), Terry Booth, and Allan Cleiren respectfully submit this memorandum of law in opposition to Plaintiffs' Motion for Partial Reconsideration and/or Clarification of the Court's August 24, 2023 Opinion ("Motion").

## PRELIMINARY STATEMENT

After carefully considering the parties' respective arguments, the Court concluded that Aurora's September 11, 2019 financials ("September Statement") could not support loss causation because "Plaintiffs fail to allege that revelation of the Sham Transaction caused the stock price drop[] that followed the September . . . Statement[]." ECF No. 75 ("MTD Op.") at 8. "In fact, Plaintiffs do not even allege that the September . . . Statement[] revealed the Sham Transaction." *Id.* The Court surveyed the relevant cases and explained that "other courts in this district have routinely concluded that loss causation is lacking in similar contexts" (*i.e.*, where the "disclosures did not reveal" the "subject" or "false nature" of the alleged fraud). *Id.* at 9-10 (internal quotation marks omitted).[1]

In their Motion, instead of identifying any clear error of fact or law, as they must, Plaintiffs repeat the same allegations and arguments that the Court already

---

[1] To be clear, Defendants deny Plaintiffs' allegations that there was any "sham transaction," but recognize that for purposes of Defendants' motion to dismiss they were required to assume that Plaintiffs' allegations were true, as did the Court. *See generally* ECF No. 68 ("TAC").

(correctly) rejected.    Indeed, Plaintiffs claim the Court overlooked certain allegations, but the Court's opinion demonstrates exactly the opposite.

Recognizing that the September Statement did not disclose the Radient relationship itself, Plaintiffs first argue that the Court "overlooked" Plaintiffs' allegation that the "September 11, 2019 Statements disclosed the *subject* of the Sham Transaction—more than $20 million of wholesale bulk cannabis revenue booked by Aurora[.]"  ECF No. 80-1 ("Mot.") at 2-3 (emphasis in original).  To the contrary, the Court expressly rejected this argument, holding that the September Statement "did not reveal the *subject* or the false nature of the alleged fraud."  MTD Op. at 10 (emphasis added).  Moreover, the Court recognized that the "Sham Transaction was related to positive EBITDA projections," but concluded that these financial metrics could not support loss causation because they did not reveal the alleged fraud.  *Id.* Plaintiffs also point to various other metrics in the September Statements that were supposedly "suspicious," but (1) Plaintiffs did not raise these allegations in their opposition to Defendants' motion to dismiss, (2) the Court need not specifically address every minor allegation in a complaint (especially one as lengthy as the 97-page complaint here), and (3) none of these allegations would change the outcome.

Plaintiffs also argue that the Court "overlooked" their allegation that the September Statement was "corrective of the false August 6, 2019 statements that Aurora continued to track toward positive EBITDA."  Mot. at 4.  Again, the Court

2

considered and rejected this argument, which has nothing to do with Radient.  The Court explained that it had "already ruled that the EBITDA guidance is inactionable and the risk of the Sham Transaction could not have materialized if the disclosures did not reveal th[e] alleged fraud."  MTD Op. at 9.

As discussed further below, Plaintiffs' Motion fails to meet the requirements for reconsideration and should be summarily denied.

## BACKGROUND

### I.    Defendants' Motion to Dismiss

Plaintiffs' Third Amended Complaint alleges that Aurora's stock dropped following four specific statements:  "[1] a September 11, 2019 statement regarding missed EBITDA projections (the 'September Statement'); [2] an October 9, 2019 report from the analyst Craig Wiggins (the 'Wiggins Report'); [3] an October 17, 2019 report from the website *Yahoo Finance Canada* (the 'Yahoo Report'); and [4] a November 19, 2019 statement regarding revenue decline and EBITDA losses (the 'November Statement')."  MTD Op. at 4.  In their motion to dismiss, Defendants argued that Plaintiffs failed to allege loss causation with respect to any of those statements.  The Court dismissed Plaintiffs' claims concerning the September and November Statements, but allowed Plaintiffs to proceed with their claims concerning the Wiggins and Yahoo Reports.   Plaintiffs' motion challenges only the Court's dismissal of claims concerning the September Statement.

3

Defendants demonstrated that the financial results Aurora reported on September 11, 2019, cannot support a finding of loss causation because Plaintiffs do not allege that Aurora's announcement on that date disclosed any fraud regarding Radient.  ECF No. 72-1 ("MTD Br.") at 7-9, 15-19.  To the contrary, Plaintiffs allege that Defendants "conceal[ed] Aurora's sham transaction with Radient and its true financial condition," and that Aurora's stock price "remained inflated at that time." TAC ¶¶ 195, 208.

In their motion to dismiss, Defendants pointed to numerous cases—including from the Supreme Court—demonstrating that Plaintiffs improperly rely on negative financial results without any allegation that the market was informed about the alleged fraud regarding Radient or that the decline in stock price was substantially caused by disclosure of the alleged fraud.  MTD Br. at 16-17 (collecting cases). Plaintiffs failed to allege—as the law requires—that "the defendant misrepresented or omitted the *very facts* that were a substantial factor in causing the plaintiff's economic loss (loss causation)."  *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425 (3d Cir. 2007) (emphasis added).

Defendants also demonstrated that Plaintiffs could not avoid this result by switching from a corrective-disclosure theory of loss causation to a materialization-of-the-risk theory.  Plaintiffs allege that "Aurora's September 11, 2019 disclosure of missed adjusted EBITDA guidance was a materialization of the concealed risk that

4

Defendants' guidance was premised on Aurora's anticipated effectuation of the sham transaction." MTD Br. at 17-18 (quoting TAC ¶ 265). Even under a materialization-of-the-risk theory, however, Plaintiffs must allege that the September 11 financials "revealed" or "disclosed" the alleged fraud. *Id.* at 18-19 (collecting cases). Because there was no such revelation or disclosure here, the September Statement cannot support loss causation under any theory.

## II.    Plaintiffs' Opposition Brief

Plaintiffs' opposition to Defendants' motion to dismiss devoted significant attention to the September Statement. ECF No. 73 ("MTD Opp'n") at 9-11, 18-24.

Plaintiffs admitted that Aurora's September financials did not disclose anything about the Radient relationship. *See, e.g., id.* at 11 (arguing that the September Statement "continued to conceal the nature of the Radient transaction"). Indeed, Plaintiffs acknowledged that the October 2019 "Wiggins and *Yahoo Finance* reports were the first inkling of the sham Radient transaction," *id.* at 32, and that Aurora's stock price "remained inflated" after the September financials were issued, *id.* at 21.

Nonetheless, Plaintiffs argued that they could satisfy the materialization-of-the-risk theory without alleging any disclosure about Radient. According to Plaintiffs, the "undisclosed risk of defendants' fraudulent EBITDA projections materialized when defendants announced on September 11, 2019, that Aurora

missed its much-touted projections of positive EBITDA for 4Q19." *Id.* at 21. Thus, Plaintiffs argued that, "contrary to defendants, plaintiffs do not need to allege that Aurora's September 11, 2019 EBITDA-guidance miss 'revealed' or 'disclosed' anything about Aurora's relationship with Radient." *Id.* at 23 (quoting MTD Br. at 18). Rather, Plaintiffs maintained that it "is sufficient for purposes of pleading loss causation that the September 11 announcement revealed that Aurora's EBITDA guidance was wrong." *Id.*

The cases Plaintiffs cited to support their legal theory, *id.* at 19-23 (collecting cases), only served to underscore that the "ultimate loss causation inquiry under either the corrective disclosure theory or the materialization of a concealed risk theory is the same: whether a misstatement or omission concealed something from the market that, when *disclosed*, negatively affected the value of the security." *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *39 n.37 (D.N.J. Dec. 31, 2018) (emphasis added) (internal quotation marks omitted); *see Howard v. Arconic Inc.*, 2021 WL 2561895, at *17 (W.D. Pa. June 23, 2021) (confirming that the materialization-of-the-risk theory permits a party to allege loss causation by "showing an event that *reveals* that an earlier statement was false") (emphasis added).

Although Plaintiffs acknowledged that Aurora did not disclose anything about Radient in September 2019, Plaintiffs mentioned in a single sentence that "Wiggins

6

himself wrote that his suspicions about the Radient transaction first arose with Aurora's September 11 conference call." MTD Opp'n at 21. Plaintiffs did not elaborate on this point in their brief, but the Third Amended Complaint quotes Wiggins as saying that his "suspicions" regarding "Aurora's miraculous $20 million in wholesale revenue (a +870% incremental increase QoQ)" started on September 11, 2019. TAC ¶ 251. This is precisely the point that Plaintiffs now claim the Court overlooked. But as shown below, the Court did no such thing.

### III.   The Court Rejects Plaintiffs' Allegations About the September Statement

On August 24, 2023, the Court granted in part and denied in part Defendants' Motion to Dismiss, concluding that Plaintiffs failed to allege loss causation as to the September and November Statements, but adequately alleged loss causation as to the Wiggins Report and Yahoo Report. Given that the Court had already issued two prior opinions on Defendants' earlier motions to dismiss, the Court did not "retrace the full factual or procedural background of this case." MTD Op. at 1. Rather, "[t]o the extent relevant, the Court incorporate[d] the factual history, procedural history, and legal standards from these opinions." *Id.*

In fact, the Court carefully considered and rejected Plaintiffs' arguments concerning the September Statement. *Id.* at 7-11. As the Court explained, "Plaintiffs argue that the September and November Statements did not need to admit, disclose, or otherwise reveal the Sham Transaction. Instead, Plaintiffs suggest that the

7

disclosures only needed to reveal the alleged falsity of the EBITDA guidance." *Id.* at 7-8 (internal citations omitted). "Plaintiffs' theory," the Court said, "is that the September and November Statements revealed the falsity of the EBITDA guidance, that the Sham Transaction was intended to cover-up this falsity, and that the disclosures thereby materialized the risks of both the EBITDA guidance and the Sham Transactions." *Id.* at 8-9.

The Court also pointed out that "Plaintiffs continue that the analyst Craig Wiggins first became suspicious of the Sham Transaction following the September Statement." *Id.* at 4. Moreover, Plaintiffs "maintain that the missed EBITDA projections would have been more significant if not for the Sham Transaction and that the stock price remained inflated because the Sham Transaction 'remained concealed.'" *Id.* (quoting TAC ¶¶ 13, 200).

After describing the parties' arguments, the Court concluded that "Plaintiffs fail to allege that revelation of the Sham Transaction caused the stock price drops that followed the September and November Statements. In fact, Plaintiffs do not even allege that the September or November Statements revealed the Sham Transaction." *Id.* at 8. The Court agreed with Defendants that, even under a materialization-of-the risk theory, Plaintiffs must allege that the statement "revealed" or "disclosed" the alleged fraud. MTD Op. at 9-10 (collecting cases and explaining that "other courts in this district have routinely concluded that loss

8

causation is lacking in similar contexts"); *see id.* at 10-11 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005)) ("[If] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." (alteration in original)).

Based on these cases, the Court determined that "the Sham Transaction was related to positive EBITDA projections and the September and November Statements relayed negative EBITDA metrics, but the disclosures did not reveal the subject or false nature of the alleged fraud." *Id.* at 10.  As such, "loss causation has not been pled sufficiently" as to the September Statement.  *Id.*

In rejecting Plaintiffs' argument to the contrary, the Court concluded that the cases cited by Plaintiffs were "inapposite."  *Id.* at 10 n.11 (distinguishing cases). "[I]n those cases," the Court explained, "the disclosures revealed the subject or false nature of the misrepresentations, which allowed this Court and other courts in this district to apply the materialization of the risk theory."  *Id.*

### IV.    Plaintiffs' Motion for Reconsideration

In their Motion, Plaintiffs argue that the Court "overlooked" two sets of allegations about the September Statement.  Mot. at 7.  The Court did not overlook either of these sets of allegations and should reject the Motion on that basis alone.

### ARGUMENT

As Plaintiffs acknowledge, "[r]econsideration under Local Civil Rule 7.1 is

9

an extraordinary remedy that should be granted very sparingly." *Sanofi-Aventis U.S., LLC v. Great Am. Lines, Inc.*, 2016 WL 4472949, at *1 (D.N.J. Aug. 22, 2016) (internal quotation marks omitted). Reconsideration is appropriate only in three narrow circumstances: (1) an intervening change in controlling law; (2) the availability of new evidence that was not previously available; or "(3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

Motions for reconsideration are not an opportunity for litigants to take a second bite at the apple. "Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration]." *United States v. Pinkhasov*, 2009 WL 150669, at *1 (D.N.J. Jan. 21, 2009) (internal quotation marks omitted). Likewise, motions for reconsideration "should only be granted where [the applicable] facts or legal authority were indeed presented but overlooked." *Dogan v. Bureau of Prisons*, 2016 WL 1162373, at *1 (D.N.J. Mar. 23, 2016). Where a motion merely "advance[s] the same arguments that were in [the] complaint and [prior] motions," the Third Circuit has been clear that there "is not a proper basis for reconsideration." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010); *see also Kadonsky v. Ahsan*, 782 F. App'x 87, 89 (3d Cir. 2019) (affirming denial of a motion for reconsideration where that motion "[i]n large part . . . repeated arguments that [the movant] had made in his previous filings").

10

Moreover, "the law does not require courts to provide an exhausting analysis of every minor argument that parties raise." *Gutierrez v. Johnson & Johnson*, 743 F. Supp. 2d 418, 423-24 (D.N.J. 2010) (citing *Rita v. United States*, 551 U.S. 338, 356 (2007) ("Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word 'granted' or 'denied' on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear."). The Third Circuit respects a trial judge's professional discretion "whether to address a particular argument or not." *Gutierrez*, 743 F. Supp. 2d at 423-24.

Plaintiffs here argue that the Court "overlooked dispositive factual allegations," Mot. at 7, but as discussed below, the Court considered and rejected those very allegations and arguments.

## I.   The Court Rejected Plaintiffs' Argument That the September Statement Partially Disclosed the Sham Transaction

To begin, Plaintiffs incorrectly assert that the Court overlooked their argument that the September Statement was "the first in a series of partial corrective disclosures of the truth about the Sham Transaction." Mot. at 10. To the contrary, in the Court's September 23, 2022 opinion, which the Court incorporated by reference into the August 2023 Opinion, the Court stated that "Plaintiffs continue that through a *series of partial disclosures* beginning in September 2019, when Aurora's 4Q19 financial results were released, the value of Aurora's common stock

11

declined." ECF No. 64 at 4 (emphasis added). Moreover, although the Court did not use the specific phrase "partial disclosure" in the August 2023 Opinion, the Court addressed this precise concept in response to Plaintiffs' argument that, "[d]espite this partial disclosure of Aurora's financial condition, defendants continued to conceal the nature of the Radient transaction and Aurora's true financial condition, which remained distorted and inflated." MTD Opp'n at 11. In particular, the Court acknowledged Plaintiffs' argument that "the stock price remained inflated because the Sham Transaction 'remained concealed.'" MTD Op. at 4 (quoting TAC ¶¶ 13, 200). Accordingly, the Court did not overlook Plaintiffs' argument about partial disclosures; the Court simply and correctly noted that Plaintiffs' argument lacked merit.

Nor did the Court overlook Plaintiffs' argument that the September Statement "disclosed the subject of the Sham Transaction." Mot. at 3. In fact, the Court expressly rejected this argument, holding that the September Statement "did not reveal the *subject* or the false nature of the alleged fraud." MTD Op. at 10 (emphasis added).

Along the same lines, Plaintiffs claim that the Court overlooked various metrics in the September Statement that were later identified as "suspicious" by Wiggins (e.g., "$20 million [in] bulk cannabis revenue"). Mot. at 8. But these allegations also cannot support reconsideration. For one thing, the Court specifically

12

concluded that the "Sham Transaction was related to positive EBITDA projections," but that the September Statement could not support loss causation because it did not reveal the "false nature" of the alleged Radient transaction.  MTD Op. at 10. Moreover, Plaintiffs argue that Wiggins later wrote that his "***suspicions started September 11, 2019 with Aurora's June 30, 2019 conference call***," Mot. at 9 (emphasis in original), but the Court considered this exact point, MTD Op. at 4 ("Plaintiffs continue that the analyst Craig Wiggins first became suspicious of the Sham Transaction following the September Statement.").

It does not matter that the Court did not address every metric and individual allegation referenced in the Motion (e.g., "Wiggins also noted that the $12.3 million of wholesale gross margin reported by Aurora for Q4 2019 represented an $11 million quarter-over-quarter increase."). Mot. at 8.  Although Plaintiffs may have included these allegations in their 97-page complaint, they did not actually "present[]" them to the Court in their opposition to Defendants' motion to dismiss. *Dogan*, 2016 WL 1162373, at *1.  And even if Plaintiffs had included these individual metrics in their opposition brief, "the law does not require courts to provide an exhausting analysis of every minor argument that parties raise." *Gutierrez*, 743 F. Supp. 2d at 423-24.

In short, far from "overlook[ing] dispositive factual allegations," Mot. at 7, the Court methodically addressed Plaintiffs' arguments about the September

Statement and rejected them for the fundamental reason that the "disclosures did not reveal the subject or false nature of the alleged fraud," MTD Op. at 10.

**II.    The Court Rejected Plaintiffs' Argument That the September Statement Corrected Defendants' August 2019 Statements**

Plaintiffs half-heartedly argue that the "Court also overlooked Plaintiffs' allegations that Defendants' statements on August 6, 2019—five weeks after Q4 2019 had ended—that Aurora was tracking for positive EBITDA for Q4 2019 were materially false and misleading because Defendants had access to the Company's Q4 2019 financial results and knew, or recklessly disregarded, that Aurora had already missed its guidance."   Mot. at 4.  According to Plaintiffs, "the September 11, 2019 Statements were corrective of the false August 6, 2019 statements that Aurora continued to track toward positive EBITDA." *Id.*

Again, the Court considered and rejected this argument.  The Court described Plaintiffs' allegations that "Defendants disclosed or otherwise stated that Aurora would achieve positive [EBITDA]," and that "Defendants omitted to disclose a sham transaction that Aurora undertook to inflate these metrics for FQ 2019."  MTD Op. at 2.  However, the Court went on to explain that it "already ruled that the EBITDA guidance is inactionable and the risk of the Sham Transaction could not have materialized if the disclosures did not reveal th[e] alleged fraud." *Id.* at 9.  And because the "alleged fraud was not revealed or disclosed by the September [Statement]," the Court held that Plaintiffs failed to allege loss causation. *Id.*

14

Instead of seeking to "correct a clear error of law or fact," Plaintiffs have re-hashed the same meritless arguments that the Court has already dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Reconsideration and/or Clarification of the Court's August 24, 2023 Opinion should be denied.

Dated: September 26, 2023

By: _____
Kevin H. Marino
John D. Tortorella
MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, NJ 07928-1488
Phone: 973-824-9300
Fax: 973-824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

Stephen L. Ascher (*pro hac vice*)
Andrew J. Lichtman
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036-2711
Phone: 212-891-1600
Fax: 212-891-1699
sascher@jenner.com
alichtman@jenner.com

Howard S. Suskin (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Phone: 312-222-9350
Fax: 312-527-0484
hsuskin@jenner.com

*Attorneys for Defendants*

15