James E. Cecchi
Donald A. Ecklund
CARELLA, BYRNE, CECCHI,
  OLSTEIN, BRODY
  & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Local Counsel for Lead Plaintiffs*

Samuel H. Rudman
Alan I. Ellman
Magdalene Economou
ROBBINS GELLER RUDMAN &
  DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
aellman@rgrdlaw.com
meconomou@rgrdlaw.com

Steve W. Berman
Shayne C. Stevenson
HAGENS BERMAN SOBOL
  SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: 206/268-9340
206/623-0594 (fax)
steve@hbsslaw.com
shaynes@hbsslaw.com

*Lead Counsel for Lead Plaintiffs*

[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re AURORA CANNABIS INC. SECURITIES LITIGATION | ) ) ) | No. 2:19-cv-20588-BRM-JBC |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND PURSUANT TO FED. R. CIV. P. 15** |
| ALL ACTIONS. | ) ) ) | |

# TABLE OF CONTENTS

**Page**

PROCEDURAL HISTORY ..............................................................................2

ARGUMENT ..............................................................................................6

    A.    The Court should grant Plaintiffs leave to amend................................6

        1.    Amendment here is not futile.......................................................8

        2.    Amendment will not prejudice Defendants. ............................14

        3.    Plaintiffs' proposed amendment is brought in good faith and in the interests of efficiency for the Court. ........................16

CONCLUSION .........................................................................................17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. Gould Inc.*,
739 F.2d 858 (3d Cir. 1984) ...............................................................................17

*Arab African Int'l Bank v. Epstein*,
10 F.3d 168 (3d Cir. 1993) ....................................................................................6

*Briskin v. Sony Energy Devices Corp.*,
2020 WL 13553827
(D.N.J. Aug. 14, 2020)............................................................................................7

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014) ................................................................................13

*Chubb INA Holdings Inc. v. Chang*,
2016 WL 6841075
(D.N.J. Nov. 21, 2016)................................................................................ *passim*

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
252 F.3d 267 (3d Cir. 2001) ................................................................................14

*De Vito v. Liquid Holdings Grp., Inc.*,
2018 WL 6891832
(D.N.J. Dec. 31, 2018) .........................................................................................13

*Doe v. Princeton Univ.*,
30 F.4th 335 (3d Cir. 2022) .................................................................................12

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).............................................................................................12

*E85 Inc. v. CIMID Corp.*,
2009 WL 10690054
(D.N.J. Sept. 8, 2009) ..........................................................................................16

*EP Medsystems, Inc. v. EchoCath, Inc.*,
235 F.3d 865 (3d Cir. 2000) ................................................................................12

**Page**

*First Priority Emergency Vehicles, Inc. v. REV Ambulance Grp. Orlando, Inc.*,
2019 WL 3423571
(D.N.J. July 30, 2019)..................................................................................17

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ........................................................................7

*In re Eros Int'l PLC Sec. Litig.*,
2021 WL 1560728
(D.N.J. Apr. 20, 2021) .................................................................................13

*In re Intelligroup Sec. Litig.*,
527 F. Supp. 2d 262 (D.N.J. 2007).................................................................13

*In re Wilmington Tr. Sec. Litig.*,
29 F. Supp. 3d 432 (D. Del. 2014)...................................................................12

*Leibholz v. Hariri*,
2007 WL 2177386
(D.N.J. July 27, 2007)...................................................................................15

*Long v. Wilson*,
393 F. 3d 390 (3d Cir. 2004) .........................................................................14

*Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.*,
106 F. Supp. 2d 761 (D.N.J. 2000)..................................................................7

*Schiano v. MBNA*,
2013 WL 2452681
(D.N.J. Feb. 11, 2013) ...................................................................................8

*Shane v. Fauver*,
213 F.3d 113 (3d Cir. 2000) ......................................................................7, 14

*TransWeb, LLC v. 3M Innovative Properties Co.*,
2011 WL 2181189
(D.N.J. June 1, 2011) ....................................................................................15

*United States Fire Insurance Co. v. Kelman Bottles*,
538 Fed. Appx. 175 (3d Cir. Sept. 23, 2013) ..................................................14

**Page**

*Voilas v. General Motors Corp.*,
   173 F.R.D. 389 (D.N.J. 1997)................................................................ 14-15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §78j(b)..............................................................................................2, 3
   §78t(a) ..............................................................................................2, 3

Federal Rules of Civil Procedure
   Rule 8 ...................................................................................................12
   Rule 8(a)(2)......................................................................................7, 17
   Rule 12(b)(6)......................................................................................7,14
   Rule 15 ..........................................................................................1, 6, 17
   Rule 15(a)................................................................................................6
   Rule 15(a)(2).....................................................................................7, 17

Lead Plaintiffs Doug Daulton, Francisco Quintana, Donald S. Parrish, and Quang Ma (collectively, "Plaintiffs") respectfully move the Court for an order pursuant to Federal Rule of Civil Procedure ("Rule") 15(a)(2) permitting the filing of their proposed Fourth Amended Complaint ("FAC").[1]

Plaintiffs' proposed FAC incorporates focused allegations and additional information and cures the pleading defects the Court previously identified in its August 24, 2023 order and opinion granting in part and denying in part Defendants' motion to dismiss the Third Amended Complaint ("MTD Order") (ECF 75-76).[2] The proposed FAC also alleges additional loss-causing events for the investor class and extends the Class Period by three months. Collectively, these new allegations adequately allege loss causation for three additional disclosure dates during the Class Period. Accordingly, pursuant to Rule 15, Plaintiffs respectfully move this Court to grant Plaintiffs leave to file the proposed FAC.

---

[1] The proposed FAC is attached as Exhibit A to the accompanying Declaration of Alan I. Ellman ("Ellman Declaration" or "Ellman Decl."). References to "¶__" are to the proposed FAC. Exhibit B to the Ellman Declaration is a redline version of the proposed FAC, which highlights the differences between the FAC and the Third Amended Complaint ("TAC") (ECF 68), the operative complaint in the action. Unless otherwise noted, emphasis has been added and internal citations and quotations have been omitted.

[2] Defendants refers to Aurora Cannabis, Inc. ("Aurora" or the "Company"), Terry Booth, and Allan Cleiren (together, "Defendants").

**PROCEDURAL HISTORY**

On September 21, 2020, Plaintiffs filed their first Amended Complaint alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  ECF 24.  On July 6, 2021, the Court dismissed the first Amended Complaint for failure to plead false or misleading statements.  ECF 42 at 30.  With leave to amend, the Court observed "it is suspicious that on August 6, 2019—after the close of FQ4 2019 but before the results from that quarter were released—defendants reiterated their expectation of achieving positive EBITDA [earnings before interest, taxes, depreciation and amortization]."  ECF 42 at 30.  In the Second Amended Complaint (ECF 49), filed on September 7, 2021, Plaintiffs added allegations that, beginning in January or February 2019, Defendants orchestrated and executed a $21.7 million round-trip, sham transaction with Radient Technologies Inc. ("Radient" or "RTI"), an entity affiliated with Aurora.  Plaintiffs alleged that Defendants devised the sham transaction in order to achieve their baseless projections of positive adjusted EBITDA for the fourth fiscal quarter of 2019, ending June 30, 2019 ("FQ4 2019"), which they repeatedly made during the Class Period.

On September 23, 2022, the Court found that the Second Amended Complaint adequately alleged that Defendants made actionable omissions with scienter.  ECF 64 at 9-18.  Specifically, the Court found that Defendants' "statements about Aurora's positive 4Q19 EBITDA projection were false because they knew that the

Radient transaction was fraudulently engineered to boost Aurora's sales." ECF 64 at 4. In its Opinion, the Court found that Plaintiffs adequately alleged that the sham transaction was orchestrated as a "round-trip" transaction to boost Aurora's financials, and rejected Defendants' alternate factual arguments. *Id.* The Court also concluded that Plaintiffs provided sufficient information to establish their confidential sources' bases of knowledge related to the sham transaction. *Id.* at 12.

The Court, however, dismissed the Second Amended Complaint for failure to sufficiently plead loss causation. *See id.* at 18-19. The Court held that Plaintiffs: (i) failed to identify any corrective disclosures related to the sham transaction; and (ii) failed to plead that Aurora's stock price declined after two analyst articles, dated October 9, 2019 and October 18, 2019, discussing the sham transaction were published. *Id.*

On November 7, 2022, Plaintiffs filed the TAC. The TAC alleged four loss-causing events with respect to the alleged fraud:

- September 11, 2019 – Aurora disclosed, *inter alia*, that it missed its EBITDA guidance, causing a 9% decline in its share price (ECF 68 ¶¶ 177-206) (the "September 11, 2019 Statements");

- October 9, 2019 – Craig Wiggins ("Wiggins"), a cannabis industry analyst, published a report raising concern about a potential sham sale between Aurora and Radient, causing a 9.5% decline in Aurora's share price (*id.* ¶¶ 207, 211, 215-16, 219, 267);

- October 17, 2019 – *Yahoo Finance Canada* reported on Wiggins' investigation into Aurora's financial condition and the Radient

3

transaction, further raising the possibility of a sham sale and causing a 5.4% decline in Aurora's share price (*id*. ¶¶ 220, 223, 268); and

- November 14, 2019 – Aurora disclosed additional negative financial news including revenue decline and EBITDA losses, causing a 17% decline in its share price. *Id*. ¶¶157, 225, 269.

On August 24, 2023, Judge Vazquez issued the MTD Order granting in part and denying in part Defendants' motion to dismiss the TAC. Specifically, the MTD Order granted Defendants' motion for failure to plead loss causation with respect to the September 11, 2019 Statements concerning Aurora's financial results for FQ4 2019 and the 2019 fiscal year ending June 30, 2019, and the November 14, 2019 statements regarding revenue decline and EBITDA losses. ECF 75 at 7-10. The Court found that Plaintiffs failed to plead loss causation for these statements because there were no allegations that the sham transaction was revealed by Defendants. *Id.* at 10. The Court, however, found that Plaintiffs adequately pled loss causation with respect to the October 9, 2019 Wiggins article and the October 17, 2019 *Yahoo Finance Canada* article, holding that those articles revealed the sham transaction and Aurora's stock price declined following the disclosures. *Id*. at 12.

On September 8, 2023, Plaintiffs timely filed a motion for reconsideration of the MTD Order (ECF 80, 80-1, the "Reconsideration Motion"), which asked the Court to reconsider its dismissal of Plaintiffs' loss causation allegations with respect to the September 11, 2019 Statements. In the Reconsideration Motion, Plaintiffs argued that in making the determination regarding Defendants' September 11, 2019

4

Statements, the Court overlooked Plaintiffs' basis for establishing loss causation, *to wit*, that Aurora's disclosures on September 11, 2019 were *the first in a series of partial corrective disclosures* of the subject of the fraud—Aurora's sham transaction with Radient.  *See* ECF 80-1 at 2-3, 7-8, 11.

On September 14, 2023, this action was reassigned from Judge Vasquez to Judge Martinotti.  ECF 81.  On September 22, 2023, Defendants filed their Answer to the TAC (ECF 84), and on September 26, 2023, Defendants filed their brief in opposition to the Reconsideration Motion.  ECF 85.

On October 19, 2023, the parties submitted a joint discovery plan to the Court (ECF 89) and on October 26, 2023, Magistrate Judge Clark held a conference to discuss the joint discovery plan with the parties.  On the same day, Magistrate Judge Clark entered the Pretrial Scheduling Order (ECF 90) and the parties commenced discovery.  Magistrate Judge Clark scheduled February 23, 2024 as the deadline for Plaintiffs to file a motion to amend the pleadings.  *See id*. at 3.

On November 16, 2023, the parties appeared before the Court for a status conference.  ECF 91.  During the status conference, the Court discussed the status of Plaintiffs' Reconsideration Motion with the parties.  The Court discussed with Plaintiffs the possibility of withdrawing their Reconsideration Motion and, alternatively, filing a motion for leave to amend the TAC.  Following the status conference, Plaintiffs decided to withdraw the Reconsideration Motion and move to

5

amend the TAC.  Subsequently, Plaintiffs met and conferred with Defendants and informed them of their intention to amend.  On November 30, 2023, Plaintiffs submitted a letter informing the Court that Plaintiffs decided to withdraw the Reconsideration Motion and instead move for leave to amend the TAC.  ECF 92.

On December 1, 2023 the Court issued an order: (i) withdrawing Plaintiffs' Reconsideration Motion; (ii) ordering Plaintiffs to send a draft proposed FAC to Defendants by December 18, 2023; and (iii) ordering Defendants to inform Plaintiffs whether or not they consent to the filing of the amendment by January 5, 2024.  ECF 93.  Plaintiffs sent a draft proposed FAC to Defendants on December 18, 2023, and on January 5, 2024, Defendants informed Plaintiffs that they did not consent to Plaintiffs' filing of the amendment.  On January 8, 2024, the parties submitted a proposed briefing schedule for Plaintiffs' motion for leave to amend.  ECF 95.  On January 9, 2024, the Court So Ordered the briefing schedule.  ECF 98.

## ARGUMENT

### A.    The Court should grant Plaintiffs leave to amend.

The Court has the power under Rule 15 to grant Plaintiffs leave to file the proposed FAC. *See Chubb INA Holdings Inc. v. Chang*, 2016 WL 6841075, at *3 (D.N.J. Nov. 21, 2016) (Martinotti, J.) (quoting *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993)) ("The decision to grant or deny leave to amend under Rule 15(a) is 'committed to the sound discretion of the court.'").  Leave to

6

amend is "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "Third Circuit jurisprudence requires th[e] [c]ourt to grant motions for leave to amend in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, dilatory motive, or some other equitable consideration that might render the amendment unjust." *Briskin v. Sony Energy Devices Corp.*, 2020 WL 13553827, at *4 (D.N.J. Aug. 14, 2020). "Stated differently, in the absence of unfair prejudice, futility of amendment, undue delay, bad faith, or dilatory motive, the court must grant a request for leave to amend." *Chubb*, 2016 WL 6841075, at *3.

"In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane*, 213 F.3d at 115. Under this standard, the Court must accept the allegations in the proposed amendment as true and construe those allegations in the light most favorable to the plaintiff. *Pharm. Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.*, 106 F. Supp. 2d 761, 765 (D.N.J. 2000).

## 1.     Amendment here is not futile.

Amendment should be permitted here because the proposed FAC is not "clearly futile." *Schiano v. MBNA*, 2013 WL 2452681, at *11 (D.N.J. Feb. 11, 2013). "Defendants bear the burden of establishing that Plaintiffs' proposed amendments are futile and, given the liberal standard applied to the amendment of pleadings, their burden is a 'heavy' one." *Chubb INA*, 2016 WL 6841075, at *4.

Here, the proposed FAC includes additional details of Aurora's sham transaction with Radient, including: (i) bolstered allegations and information related to the September 11, 2019 disclosure—the date on which the subject of the sham transaction first began to be disclosed—which the Court previously found was lacking; and (ii) additional allegations, following discussions with a consulting expert, related to subsequent loss-causing events.

Regarding the statements made on September 11, 2019, the proposed FAC explains that the statements made by Defendants on that date disclosed for the first time the subject of Defendants' fraud: an unprecedented $20 million of revenue that Aurora derived from wholesale bulk cannabis. ¶¶11, 202, 291. The magnitude of this revenue shocked analyst Craig Wiggins. ¶¶11, 273. Shortly after the September 11 disclosures, Wiggins characterized Aurora's $20 million wholesale bulk cannabis revenue as "miraculous," as it represented an *870% increase* from the previous quarter. *Id*. Wiggins also reacted incredulously to Aurora's $12.3 million of

wholesale gross margin for Q4 2019, which represented an $11 million quarter-over-quarter increase—reflecting an astonishing *896% increase*—and contributed substantially to the adjusted EBITDA improvement of $9 million for the quarter. *Id.* ¶¶11, 273, 291. Thus, the September 11, 2019 Statements disclosed that Aurora's wholesale segment, which had been Aurora's smallest contributor of revenue, jumped by an astronomical amount. In fact, Wiggins confirmed that Aurora's September 11, 2019 Statements were the first partial corrective disclosure of Defendants' fraud, when he expressly acknowledged that his suspicions about the FQ4 2019 Transaction first arose with Aurora's September 11, 2019 conference call, triggered by the comparatively large size of the wholesale bulk cannabis sale in a declining pricing environment. *Id.* ¶¶14, 212, 273, 293.

Plaintiffs further support their loss-causation allegations concerning the September 11, 2019 disclosures by citing an October 23, 2019 Piper Jaffray analyst report in which the analyst revised his FQ1 2020 sales estimate in response to statements by Aurora management during the FQ4 2019 earnings call. Piper Jaffray stated that it expected a "bit of a plateau between now and the advent of the cannabis legalization 2.0 products." ¶¶15, 231-232. Piper Jaffray explained: "We had imagined this characterization to apply at the total company level, but closer scrutiny suggests that *the $20M lift from wholesale sales was likely not included as part of the reference run-rate that management had in mind*." ¶231. Thus, Piper Jaffray

interpreted the September 11, 2019 Statements to mean that Aurora's "miraculous" (in Wiggins' words) wholesale sales were not sustainable. ¶232.

In addition, Aurora's September 11, 2019 announcement of missed guidance was a corrective disclosure that Defendants' August 6, 2019 statement that "[t]he Company continues to track toward positive adjusted EBITDA" was materially false and misleading because *the quarter and full fiscal year had already been over for more than a month*, and Defendants had access to the Company's FQ4 2019 financial results and knew, or recklessly disregarded, that Aurora would miss its guidance. ¶¶12, 294.

Plaintiffs also expand the class period in the proposed FAC by alleging additional loss-causing corrective disclosures following further investigation into Defendants' conduct as well as discussions with a consulting expert about these disclosures. Specifically, Plaintiffs added allegations about Aurora's February 6, 2020 disclosures, when Aurora announced, among other things, that its cannabis revenues for FQ2 2020 would be approximately $62-66 million with provisions for returns, price reductions and future provisions of approximately $12 million. ¶¶20-21, 250, 298. The proposed FAC alleges Aurora's announcement of a $12 million provision for future returns and discounts as well as other further revenue shortfalls related to "much lower bulk sales." *Id*. Aurora's announcement of the collapse of its wholesale bulk revenue was another partial corrective disclosure of the truth

10

about Aurora's FQ4 2019 wholesale bulk sales, *i.e.*, that they had been fraudulently engineered.  In response, Aurora's stock price declined 22%.  ¶¶20-21, 262, 298.  To further bolster their allegations related to the February 6, 2020 stock price decline, Plaintiffs include seven additional analyst and news reports attributing Aurora's lower cannabis revenues to declining bulk sales.  *See, e.g.* ¶254 (Cantor Fitzgerald: "Dec qtr sales guidance of $62-66Mn in net sales, minus a $12Mn provision for future returns and discounts on slow-moving, low-potency flower sold in earlier quarters, is below previous guidance of a flat qtr, which had implied ~$75Mn. True, the silver lining is that ex provisions, the Canada rec business saw 'modest seq growth,' with *the seq drop caused by much lower bulk sales* and a hiatus in Germany."); ¶259 (BofA Global Research: "Basically, *the key q-q decline is likely to be driven by a roughly C$9mn drop in bulk wholesale rev (B2B flower in Canada), which disproportionately benefitted ACB last qtr"*).

Plaintiffs also allege in the proposed FAC an additional corrective disclosure (and associated loss causation) on February 28, 2020.  ¶¶22, 263-64, 299.  On that day, Wiggins published a report titled "Aurora and Radient Technologies: The Possible Return Flight of the Wholesale Biomass Boomerang," where he stated, in pertinent part: "Today Radient Technology posted their December 31, 2019 earnings.  In these earnings they record sales of $11 million an increase from last Q's $1.2 million, and June 30, 2019 Q of $61 thousand.  Much like the September

11

2019 statements, which included in Note 15 b) 'Information about major customers' indicating that RTI earned 89% of its revenue from one customer, this Q indicates Note 16 b) that *RTI earned 100% of its revenue from one customer*." ¶¶22, 263, 299. The proposed FAC alleges that Wiggins' February 28, 2020 report confirmed the sham transaction link between Radient and Aurora by explaining that Radient earned 100% of its revenue from Aurora, causing Aurora's stock price to decline by 7.6%. *Id*.

At the pleading stage, this is sufficient to adequately plead loss causation and defeat any argument that the amendment would be futile. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-48 (2005) (with respect to loss causation, "[the] ordinary pleading rules are not meant to impose a great burden upon a plaintiff," and "require only" satisfaction of Rule 8(a)(2)'s pleading standard, without "any special further requirement in respect to the pleading of proximate causation or economic loss"). In addition to the Rule 8 threshold, and as the Court has noted previously, "[t]he proper place to resolve factual disputes is not on a motion to dismiss." ECF 64 at 10-11 (quoting *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022)). "Third Circuit precedent instructs that loss causation is a fact intensive inquiry which is best resolved by the trier of fact." *In re Wilmington Tr. Sec. Litig.*, 29 F. Supp. 3d 432, 450 (D. Del. 2014) (citing *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865,

884 (3d Cir. 2000) ("[w]hether the plaintiff has proven [loss] causation is usually reserved for the trier of fact")).

"Plaintiffs need not demonstrate on a motion to dismiss" (much less a motion to amend) that their allegations point to "the *only* possible cause for decline in the stock price." *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 233 (2d Cir. 2014) (emphasis in original); *accord De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *39 n.37 (D.N.J. Dec. 31, 2018) ("[a] complaint is not required to 'plead facts indicating that disclosure of the alleged fraud was the sole reason for the investment's decline in value'") (quoting *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 265 (D.N.J. 2007)). "At the motion to dismiss stage, Plaintiffs do not need to explain why other market forces did not affect the share price." *In re Eros Int'l PLC Sec. Litig.*, 2021 WL 1560728, at *15 (D.N.J. Apr. 20, 2021).

Here, Plaintiffs' claims of loss causation are sufficient to survive a motion to dismiss. On each disclosure date, the subject of the fraud—the wholesale bulk cannabis sales that formed the core of the sham transaction between Aurora and Radient—was partially disclosed and caused Aurora's share price to decline. To begin with, Aurora's statements on September 11, 2019 first disclosed the suspicious wholesale bulk sales; the Wiggins report and *Yahoo Finance Canada* article further disclosed to investors the allegations of a sham transaction in October of 2019; then

13

Aurora's February 6, 2020 announcement of declining wholesale bulk revenues further disclosed the fraud by linking missed guidance to lower bulk sales, and demonstrating that those sales were an unsustainable source of revenue; and finally, Wiggins' February 28, 2020 article strengthened Wiggins' theory of the sham transaction between Aurora and Radient by explaining that Radient earned 100% of its revenue from one customer. Aurora's stock declined on each of these dates. As such, Plaintiffs have adequately pled loss causation.

Accordingly, since the allegations in the proposed FAC are sufficient to survive a motion to dismiss under Rule 12(b)(6), Plaintiffs' motion for leave to amend is plainly not futile. *See Shane*, 213 F.3d at 115.

### 2. Amendment will not prejudice Defendants.

Filing of the proposed FAC will not prejudice any of the Defendants. Here, with discovery continuing apace, it is unlikely even to cause delay at all. And potential delay is only a sufficient basis for denying an otherwise valid amendment where defendant can establish prejudice resulting from such delay. *See Long v. Wilson*, 393 F. 3d 390, 401 (3d Cir. 2004). Delay alone is an insufficient ground to deny a motion to amend. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001); *see also United States Fire Insurance Co. v. Kelman Bottles*, 538 Fed. Appx. 175, 184 (3d Cir. Sept. 23, 2013) ("[P]rejudice to the non-moving party is the touchstone for denial of the amendment."); *Voilas v. General Motors*

14

*Corp.*, 173 F.R.D. 389, 396 (D.N.J. 1997) (to justify the denial of a motion to amend, the asserted prejudice must amount to more than mere inconvenience to the non-moving party).

Generally, courts in this District have not found prejudice merely because a party moves to amend while discovery is ongoing. In *Chubb*, this Court found that defendants suffered no unfair prejudice when only "minimal discovery ha[d] taken place" and the amendment did not add any "new claims or theories." 2016 WL 6841075, at *5; *see also TransWeb, LLC v. 3M Innovative Properties Co.*, 2011 WL 2181189, at *9 (D.N.J. June 1, 2011) (finding that defendants failed to show unfair prejudice where discovery schedule would not be impacted and several months of fact discovery remained); *Leibholz v. Hariri*, 2007 WL 2177386, at *6 (D.N.J. July 27, 2007) (granting amendment where discovery was still open and final pretrial conference had not been set, among other factors).

Here, discovery is still in the early stages—but would not be suspended or delayed by the proposed amendment, and nearly all discovery the parties will seek in this case overlaps with discovery already in progress. While the parties have served document requests and interrogatories, no document productions have been made to date and no depositions have been scheduled yet. Experts have not been identified and all expert-report deadlines have yet to be determined. ECF 90 at 3. A final pretrial conference and trial date have yet to be set. *Id*. at 4. In other words,

15

discovery in this case is in its initial stages, but importantly has begun in earnest and will continue to do so.  Moreover, Plaintiffs are filing the proposed FAC in lieu of continuing to litigate their Reconsideration Motion, and Plaintiffs moved to amend promptly following withdrawal of that motion.  Plaintiffs' motion for leave to amend is also timely under the Court's Pretrial Scheduling Order, which allows for any "motion to add new parties, whether by amended or third-party complaint" to be filed by February 23, 2024.  *See* ECF 90 at 3; *see also E85 Inc. v. CIMID Corp.*, 2009 WL 10690054, at *2 (D.N.J. Sept. 8, 2009) ("Here, the court is not persuaded that Plaintiff is acting in bad faith by not seeking to amend earlier.  Moreover, Plaintiff filed the instant motion within the time frame set forth in the Scheduling Order.").

Thus, Plaintiffs have filed this motion promptly.  Plaintiffs have shown sufficient good cause to allow the proposed amendment, which will not unduly prejudice Defendants.

### 3.    Plaintiffs' proposed amendment is brought in good faith and in the interests of efficiency for the Court.

Finally, leave to amend should be granted because Plaintiffs' proposed FAC is brought in good faith and, as discussed with the Court, provides a more efficient means for the Court to consider the fullness of Plaintiffs' allegations than adjudication of a backward-looking motion for reconsideration.  The proposed amendment includes additional information and allegations conforming to and in

16

recognition of deficiencies previously found by the Court. "[T]he question of bad faith[] requires that the Court focus on the plaintiff's motives for not amending their complaint to assert th[e] claim earlier." *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). There is no credible allegation that Plaintiffs have been dilatory or acted with manipulative motives.

As explained above, Plaintiffs moved for leave to amend promptly following withdrawal of their Reconsideration Motion. As Plaintiffs have satisfied the Rule 15 standard for amendment, the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, Plaintiffs' motion should be granted. *See First Priority Emergency Vehicles, Inc. v. REV Ambulance Grp. Orlando, Inc.*, 2019 WL 3423571, at *9 (D.N.J. July 30, 2019) (Martinotti, J.) (granting plaintiffs' motion and finding that "none of the four grounds precluding a Motion to Amend—undue delay, undue prejudice to the non-moving party, bad faith or dilatory motive, or futility of amendment—are present in this case").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for leave to file the proposed FAC.

DATED: January 22, 2024        CARELLA, BYRNE, CECCHI, OLSTEIN,
                                BRODY & AGNELLO, P.C.
                               JAMES E. CECCHI
                               DONALD A. ECKLUND

*/s/ James E. Cecchi*

JAMES E. CECCHI
_____

5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Local Counsel*

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ALAN I. ELLMAN
MAGDALENE ECONOMOU
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
aellman@rgrdlaw.com
meconomou@rgrdlaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN
SHAYNE C. STEVENSON
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)
steveb@hbsslaw.com
shaynes@hbsslaw.com

*Lead Counsel for Lead Plaintiffs and the
Proposed Class*

18

SCHALL LAW FIRM
BRIAN SCHALL
1880 Century Park East, Suite 404
Los Angeles, CA  90067
Telephone:  310/301-3335
310/338-0192 (fax)
brian@schallfirm.com

*Additional Plaintiffs' Counsel*

19