**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re AURORA CANNABIS INC. SECURITIES LITIGATION<br><br><br>This Document Relates To:<br>ALL ACTIONS | Case No. 2:19-cv-20588-BRM-JBC<br><br>Hon. Brian R. Martinotti, U.S.D.J. |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT

Kevin H. Marino
John D. Tortorella
MARINO, TORTORELLA & BOYLE P.C.
437 Southern Boulevard
Chatham, NJ 07928-1488
Phone: 973-824-9300
Fax: 973-824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

Stephen L. Ascher (*pro hac vice*)
Andrew J. Lichtman
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036-2711
Phone: 212-891-1600
Fax: 212-891-1699
sascher@jenner.com
alichtman@jenner.com

Howard S. Suskin (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654-3456
Phone: 312-222-9350
Fax: 312-527-0484
hsuskin@jenner.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................3

I.    The Filing of the Initial Complaints ...............................................................3

II.   The Dismissal of the First Amended Complaint Without Prejudice...............4

III.  The Dismissal of the Second Amended Complaint Without Prejudice ..........4

IV.   The Partial Dismissal of the Third Amended Complaint With
      Prejudice ........................................................................................................6

V.    The Motion for Reconsideration......................................................................9

VI.   The Proposed Fourth Amended Complaint......................................................9

      A.    The September 2019 Financials....................................................10

      B.    The February 6, 2020 Announcements.........................................11

      C.    The February 28, 2020 Wiggins Article ......................................13

ARGUMENT .........................................................................................................14

I.    Plaintiffs Cannot Reintroduce the September 2019 Allegations, Which
      Were Dismissed With Prejudice.....................................................................15

II.   Granting Leave To Amend Would Be Futile Because Plaintiffs Fail
      To Allege Loss Causation...............................................................................18

      A.    Aurora's September 11, 2019 Financials......................................19

      B.    Aurora's February 6, 2020 Disclosures .......................................21

      C.    Wiggins' February 28, 2020 Article ............................................23

III.  Plaintiffs' Amendments Will Prejudice Defendants ....................................26

CONCLUSION......................................................................................................27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Borelli v. City of Reading*,
532 F.2d 950 (3d Cir. 1976) ................................................................15

*Borenstein v. Animal Found.*,
No. 2:19-cv-00985, 2023 WL 4077163 (D. Nev. June 20, 2023) ......................16

*In re Bradley Pharmaceuticals, Inc. Sec. Litig.*,
421 F. Supp. 2d 822 (D.N.J. 2006) ................................................................19

*Canez v. Intelligent Sys. Corp.*,
No. 19-CV-3949, 2021 WL 3667012 (E.D.N.Y. Aug. 18, 2021) ......................25

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. De Blasio*,
627 F. Supp. 3d 253 (S.D.N.Y. 2022) ................................................................13

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
928 F. Supp. 2d 705 (S.D.N.Y. 2013) ................................................................23

*Crawford v. W.V. Governor's Off.*,
935 F.2d 1285 (4th Cir. 1991) ................................................................15

*Cureton v. National Collegiate Athletic Ass'n*,
252 F.3d 267 (3d Cir. 2001) ................................................................26

*Duran v. Welfare Reform Act Cong.*,
No. 14-4120, 2016 WL 1135517 (D.N.J. Mar. 23, 2016) ................................16

*Duran v. Wells Fargo Bank, N.A.*,
No. 09-20411-CIV, 2009 WL 10668548 (S.D. Fla. Oct. 6, 2009) ......................16

*In re DVI, Inc. Sec. Litig.*,
639 F.3d 623 (3d Cir. 2011) ................................................................24

*Eaton v. Aurora Cannabis Inc.*,
No. 20-cv-00274 (S.D.N.Y. Jan. 10, 2020) ................................................................3

*In re First Marblehead Corp. Sec. Litig.*,
639 F. Supp. 2d 145 (D. Mass. 2009) ................................................................23

*Ganske v. Mensch*,
480 F. Supp. 3d 542 (S.D.N.Y. 2020) .................................................................13

*Grayson v. Mayview State Hosp.*,
293 F.3d 103 (3d Cir. 2002) ..............................................................................14

*New York ex rel. Khurana v. Spherion Corp.*,
No. 15-cv-6605, 2019 WL 1274710 (S.D.N.Y. Mar. 20, 2019) .........................27

*Lerma v. Falks*,
338 F. App'x 472 (5th Cir. 2009) .......................................................................15

*Lorenz v CSX Co.*,
1 F.3d 1406 (3d Cir. 1993) .................................................................................26

*McCabe v. Ernst & Young, LLP.*,
494 F.3d 418 (3d Cir. 2007) ..............................................................................19

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
No. CIV.A. 05-1151; 05-2367, 2013 WL 2395035
(D.N.J. May 29, 2013) ........................................................................................25

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010).....................................................................19

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
259 F.3d 154 (3d Cir. 2001) ..............................................................................18

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010) ..............................................................................25

*Papera v. Pennsylvania Quarried Bluestone Co.*,
948 F.3d 607 (3d Cir. 2020) ..............................................................................15

*Pezza v. Middletown Twp. Pub. Sch.*,
2023 WL 2019623 (D.N.J. Feb. 15, 2023) .........................................................14

*Rhymer v. Philip Morris, Inc.*,
164 F. App'x 268 (3d Cir. 2006) ........................................................................14

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) ...........................................................................17

*Shane v. Fauver,*
   213 F.3d 113 (3d Cir. 2000) ..............................................................................15, 18

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.,*
   545 F. Supp. 3d 120 (S.D.N.Y. 2021) ........................................................................24

*Stern v. Gen. Elec. Co.,*
   924 F.2d 472 (2d Cir. 1991) .......................................................................................15

*United States v. Union Corp.,*
   194 F.R.D. 223 (E.D. Pa. 2000)..................................................................................15

*Warren v. Aurora Cannabis Inc.,*
   No. 20-cv-00555 (D.N.J. Jan. 16, 2020)........................................................................3

*Wilson v. Aurora Cannabis Inc.,*
   No. 19-cv-20588 (D.N.J. Nov. 21, 2019) .......................................................................3

Defendants Aurora Cannabis, Inc. ("Aurora" or the "Company"), Terry Booth, and Allan Cleiren (collectively, "Defendants") respectfully submit this memorandum of law in opposition to Plaintiffs' motion for leave to file a Fourth Amended Complaint ("Motion" or "Mot.").

## PRELIMINARY STATEMENT

Plaintiffs launched this case back in 2019 and have already been given the opportunity to file four complaints, including three amended complaints. Over the years, Defendants have filed three motions to dismiss, and the Court has issued three detailed decisions on those motions. Now, after the Court has set the parameters of this litigation in its most recent opinion and while the parties are in the midst of significant discovery, Plaintiffs seek leave to file yet another amended complaint, which would add three new stock drops and expand the putative class period by over three months. Plaintiffs' Motion suffers from several fundamental flaws and should be denied.

*First*, the Court has already dismissed with prejudice Plaintiffs' allegations concerning Aurora's September 2019 financial statements, after previously warning Plaintiffs that they would have "one further, and final, opportunity to file an amended pleading." Op. on Pls.' Second Am. Compl., ECF No. 64 at 20. Plaintiffs' efforts to replead similar allegations in the proposed Fourth Amended Complaint violates the Court's previous dismissal orders.

*Second*, the proposed amendments are futile because Plaintiffs fail to allege loss causation with respect to any of the three dates in question. Plaintiffs' allegations concerning the September 11, 2019 financials are nearly identical to those contained in the Third Amended Complaint, but the Court has already concluded that the September "disclosures did not reveal the subject or false nature of the alleged fraud" concerning a transaction with Radient and thus "loss causation has not been pled sufficiently." Op., ECF No. 75 at 10. Nothing in the proposed Fourth Amended Complaint changes this conclusion. Likewise, Plaintiffs allege that Aurora's stock dropped after the company made several announcements on February 6, 2020 (including the CEO's retirement and significant layoffs), but again, Plaintiffs do not allege that Aurora disclosed anything about Radient that day, which defeats loss causation. Finally, Plaintiffs allege that Aurora's stock dropped by 7.6% in response to an article written by Craig Wiggins on February 28, 2020, but that allegation is patently false. Aurora's stock dropped by 7.6% on February 28, but the Wiggins article did not come out until after markets closed that day, so the article could not have caused that loss. In fact, Aurora's stock price went up the next trading day after the article was published.

*Third*, Plaintiffs' proposed amendments would cause Defendants undue prejudice. Plaintiffs' serial amendments have already forced Defendants to file three motions to dismiss and an opposition to a motion for reconsideration. Moreover, the

February 2020 amendments would significantly expand the scope and cost of discovery, including by extending the putative class period by over three months. Such amendments are particularly unfair given that Plaintiffs could have asserted these allegations (based on public information) years ago.

**STATEMENT OF FACTS**

The lengthy history of this case demonstrates that Plaintiffs' Motion lacks merit.

### I.     The Filing of the Initial Complaints

On November 21, 2019, the first of three related securities class actions were filed on behalf of Aurora investors.[1]  The complaints alleged that Aurora and certain current and former officers and directors failed to disclose that Aurora had materially overstated demand and the potential market for Aurora's consumer cannabis products, Aurora failed to comply with licensing requirements in Germany, and Aurora was suffering from liquidity constraints.  Compl., ECF No. 1.  The Court thereafter appointed Plaintiffs as lead Plaintiffs and gave them an opportunity to file a consolidated amended complaint.  ECF Nos. 16, 20.

---

[1] *Wilson v. Aurora Cannabis Inc.*, No. 19-cv-20588 (D.N.J. Nov. 21, 2019); *Eaton v. Aurora Cannabis Inc.*, No. 20-cv-00274 (S.D.N.Y. Jan. 10, 2020); *Warren v. Aurora Cannabis Inc.*, No. 20-cv-00555 (D.N.J. Jan. 16, 2020).

3

## II.    The Dismissal of the First Amended Complaint Without Prejudice

On September 21, 2020, Plaintiffs filed their First Amended Complaint.  First Am. Compl., ECF 24.  As previously described by the Court, "[t]he crux of Plaintiffs' case is that Aurora's statements about the Company's ability to achieve positive EBITDA [or earnings before interest, taxes, depreciation, and amortization] were materially false and misleading because of omissions of known risks—the Company knew or recklessly disregarded that its sales were severely constricted by (1) an oversupplied market, (2) lack of sufficient retail stores, and (3) a robust black market."  Op. on Pls.' First Am. Compl., ECF No. 42 at 24.

On July 6, 2021, the Court granted Defendants' motion to dismiss the Amended Complaint, holding that Plaintiffs failed to allege any material misrepresentation or omission.  Op., ECF No. 42.  Particularly relevant here, the Court said that "[t]he dismissal is without prejudice.  Plaintiffs shall have thirty (30) days to file a second amended complaint, which cures the deficiencies noted herein. If Plaintiffs do not do so, this matter will be dismissed with prejudice."  *Id.* at 33.

## III.    The Dismissal of the Second Amended Complaint Without Prejudice

On September 7, 2021, Plaintiffs filed the Second Amended Complaint, which alleged that Aurora entered into a "sham transaction with Radient."  Op., ECF No. 64 at 3.  As the Court explained, "Plaintiffs allege[d] that Radient purchased $21.7 million of dried cannabis biomass from Aurora" and that Aurora "repurchased

4

the biomass from Radient for $18 million." *Id.* at 4 (internal quotation marks omitted). According to Plaintiffs, "there was no business reason for this transaction, and it was simply an orchestrated round-trip transaction to boost Aurora's financials." *Id.* (internal quotation marks omitted).

On September 23, 2022, the Court granted Defendants' motion to dismiss the Second Amended Complaint, holding that Plaintiffs failed to allege loss causation. *Id.* at 18–19. The Court concluded that "Defendants are correct that Plaintiffs do not identify any corrective disclosures related to the Radient deal." *Id.* Moreover, Plaintiffs failed to allege that "Aurora's stock dropped after analyst articles about the Radient transaction were published on October 9, 2019 and October 1[7], 2019." *Id.* at 18. The Court went on to explain that "[e]ven if the Court were to take judicial notice of stock prices, Plaintiffs' argument that the articles constitute corrective disclosures that resulted in a stock drop do not appear in the SAC." *Id.* at 19. For these reasons, Plaintiffs did not adequately allege "any loss caused by the Radient transaction." *Id.* at 18.

Notably, the Court dismissed the Second Amended Complaint "without prejudice" because it "include[d] new allegations about the Radient transaction, [and] Plaintiffs have not had a previous opportunity to address any deficiencies related to such allegations." *Id.* at 20. However, the Court warned Plaintiffs that they had "one further, and <u>final</u>, opportunity to file an amended pleading." *Id.*

5

(emphasis added).

## IV. The Partial Dismissal of the Third Amended Complaint With Prejudice

Plaintiffs' Third Amended Complaint alleged that Aurora's stock dropped on four particular dates.

Aurora's September 11, 2019 Financial Results:  Aurora announced Q4 2019 and full-year 2019 financial results on September 11, 2019.  Third Am. Compl ("TAC"), ECF No. 68 ¶ 194.  Although Aurora's stock dropped following these disappointing results, Plaintiffs did not identify any disclosure in the September 2019 financials relating to Radient.  In fact, Plaintiffs alleged the opposite.  Plaintiffs alleged that "Defendants continued to conceal Aurora's sham transaction with Radient and its true financial condition."  *Id.* ¶ 195.  Thus, Plaintiffs alleged that Aurora's stock price "remained inflated" at this time because, "[w]ithout the sham sale, [Aurora] would have missed that [positive EBIDTA] projection by more than $30 million."  *Id.* ¶¶ 200, 208.

October 9 and 17, 2019 Articles:  Plaintiffs alleged that Aurora's stock dropped in response to an October 9, 2019 article written by industry analyst Craig Wiggins and an October 17, 2019 article published by *Yahoo Finance Canada*.  *Id.* ¶¶ 211, 219, 220, 223.  Although these articles speculated about an alleged Aurora-Radient transaction, any investor loss was caused by other factors impacting the entire cannabis market as opposed to these articles.

6

Aurora's November 14, 2019 Financial Results:  The last stock drop Plaintiffs point to occurred after Aurora announced "deeply disappointing financial results" for Q1 2020 on November 14, 2019.  *Id.* ¶ 225.  Plaintiffs alleged that, "[s]hockingly, Aurora's consumer cannabis revenue fell by 33% and its wholesale bulk revenue fell by 49% sequentially."  *Id.*  As with the September 2019 financials, however, Plaintiffs failed to allege that the November 2019 financials disclosed anything about the alleged Radient transaction.

On August 24, 2023, the Court granted in part and denied in part Defendants' Motion to Dismiss the Third Amended Complaint, concluding that Plaintiffs failed to allege loss causation as to the September and November statements, but adequately alleged loss causation as to the October articles.  Op., ECF No. 75.

The Court carefully considered and rejected Plaintiffs' arguments concerning the September and November statements.  *Id.* at 7–11.  As the Court explained, "Plaintiffs argue that the September and November Statements did not need to admit, disclose, or otherwise reveal the Sham Transaction.  Instead, Plaintiffs suggest that the disclosures only needed to reveal the alleged falsity of the EBITDA guidance."  *Id.* at 8 (internal citations omitted).  "Plaintiffs' theory," the Court said, "is that the September and November Statements revealed the falsity of the EBITDA guidance, that the Sham Transaction was intended to cover-up this falsity, and that the

7

disclosures thereby materialized the risks of both the EBITDA guidance and the Sham Transactions." *Id.* at 8–9.

The Court concluded that "Plaintiffs fail to allege that revelation of the Sham Transaction caused the stock price drops that followed the September and November Statements. In fact, Plaintiffs do not even allege that the September or November Statements revealed the Sham Transaction." *Id.* at 8. The Court determined that "the Sham Transaction was related to positive EBITDA projections and the September and November Statements relayed negative EBITDA metrics, but the disclosures did not reveal the subject or false nature of the alleged fraud." *Id.* at 10. As such, "loss causation has not been pled sufficiently" as to the September or November financials. *Id.*

Unlike the Court's two prior opinions, the Court's August 2023 opinion did not dismiss Plaintiffs' claims concerning the September and November financials "without prejudice." *See, e.g.*, Op., ECF No. 64 at 20. The Court's accompanying order said that Defendants' motion to dismiss is "GRANTED as to Count One and Count Two insofar as the allegations of loss causation are based on the alleged disclosures of September 11, 2019 and November 1[4], 2019." Order, ECF No. 76. Thus, the Court did not provide Plaintiffs with an opportunity to amend their pleading to address these loss-causation deficiencies, which was consistent with the

8

Court's prior warning that Plaintiffs had one "final" opportunity to amend their complaint.  Op., ECF No. 64 at 20.

### V.    The Motion for Reconsideration

Recognizing that their allegations concerning the September 2019 statements were dismissed with prejudice, Plaintiffs filed a motion for reconsideration instead of another amended complaint.  Mot. Recons., ECF No. 80-1.  In their motion, Plaintiffs argued that the Court "overlooked" certain allegations, but the Court's opinion confirmed the opposite.  *Id.* at 2.

Plaintiffs primarily argued that the Court "overlooked" Plaintiffs' allegation that the "September 11, 2019 Statements disclosed the *subject* of the Sham Transaction—more than $20 million of wholesale bulk cannabis revenue booked by Aurora."  Mot., ECF No. 80-1 at 3.  However, the Court expressly rejected this argument, holding that the September 2019 financials "did not reveal the *subject* or the false nature of the alleged fraud."  Op., ECF No. 75 at 10 (emphasis added).  The Court recognized that the "Sham Transaction was related to positive EBITDA projections," but concluded that these financial metrics could not support loss causation because they did not reveal the alleged fraud.  *Id.*

### VI.    The Proposed Fourth Amended Complaint

Plaintiffs later decided to withdraw their motion for reconsideration and, instead, file a motion for leave to file a Fourth Amended Complaint.  Mot. for Leave

to File Fourth Am. Compl., ECF No. 100-1.  According to Plaintiffs, their Fourth Amended Complaint contains "new allegations [that] adequately allege loss causation for three additional disclosure dates" and "extends the Class Period by three months."  *Id.* at 1.

### A.    The September 2019 Financials

Even though the Court dismissed Plaintiffs' allegations concerning the September 2019 financials with prejudice, the proposed Fourth Amended Complaint attempts to "cure[] the pleading defects the Court previously identified."  Mot., ECF No. 100-1 at 1.  Putting aside the fact that Plaintiffs cannot plead around a dismissal with prejudice—as discussed below—the Fourth Amended Complaint does nothing to change the Court's prior conclusion.

Plaintiffs' redlined Fourth Amended Complaint shows that Plaintiffs made minimal edits to their allegations concerning the September 2019 financials. Plaintiffs added a new paragraph 11 to their introductory section, which says that "Aurora's September 11, 2019 statements disclosed for the first time the subject of Defendants' fraud:  Aurora's 'miraculous'—in the words of Craig Wiggins ('Wiggins'), a cannabis industry analyst—$20 million wholesale bulk cannabis revenue, which represented an 870% increase from the previous quarter."  Redline Fourth Am. Compl. Ex. B ("FAC"), ECF No. 100-4 ¶ 11.  Far from being new, this is just a regurgitation of Plaintiffs' motion for reconsideration argument.  Plaintiffs'

10

Third Amended Complaint contained this precise allegation.  TAC, ECF No. 68 ¶ 251 ("Our suspicions, that started September 11, 2019 with Aurora's June 30, 2019 conference call, regarding Aurora's miraculous $20 million in wholesale revenue (a +870% incremental increase QoQ) have now come full circle with RTI declaring Aurora a 'Related Party' on their March 31, 2020 year end audited exhibits." (emphasis removed)).

The only new allegation about the September 11, 2019 financials relates to an analyst report that was issued six weeks later.  FAC, ECF No. 100-4 ¶¶ 15, 231–32. On October 23, 2019, the investment bank Piper Jaffray wrote that, with respect to the September 2019 financials, "closer scrutiny suggests that the $20M lift from wholesale sales was likely not included as part of the reference run-rate that management had in mind."  *Id.* ¶¶ 15, 231.  According to Plaintiffs, this means that "Piper Jaffray interpreted the September 11, 2019 disclosures to mean that Aurora's wholesale sales were not sustainable—and they were not, because they were the product of a sham transaction."  *Id.* ¶¶ 15, 232.  However, Plaintiffs do not allege that Piper Jaffray mentions Radient—let alone claims that the September 2019 financials disclosed the alleged Radient fraud.

### B.    The February 6, 2020 Announcements

The proposed Fourth Amended Complaint seeks to expand the putative class period by over three months based on alleged corrective disclosures in February

2020.  On February 6, 2020, Aurora made several important announcements that had nothing to do with the alleged Radient fraud.  Aurora announced that its CEO Terry Booth would be retiring, FAC, ECF No. 100-4 ¶ 249; "sweeping changes intended to rationalize the cost structure and balance sheet going forward," including the elimination of "about 500 full-time staff positions, *id.* ¶ 251; and "asset impairment charges" in the "range of C$190 million to C$225 million and write-downs of goodwill in the range of C$740 million to C$775 million," *id.* ¶ 252.  As the redlined Fourth Amended Complaint shows, all of these allegations were contained in the Third Amended Complaint as well, but Plaintiffs correctly chose not to allege any loss based on the February 6 disclosures because they were unrelated to the alleged fraud here.

Now, after having "discussions with a consulting expert," Plaintiffs believe that these were "loss-causing corrective disclosures."  Mot., ECF No. 100-1 at 10.  The proposed Fourth Amended Complaint contains quotes from several analysts who "were disappointed by Aurora's statements," including because of Aurora's "lower bulk sales."  FAC, ECF No. 100-4 ¶¶ 253–54, 257, 258.  Even though none of these analysts refer to Radient, Plaintiffs allege that "Aurora's stock price declined by 22%" in response to "Aurora's February 6, 2020 announcement of the collapse of its wholesale bulk revenue, falling gross margin, and further revenue shortfalls."  *Id.* ¶ 262.

12

### C.    The February 28, 2020 Wiggins Article

Plaintiffs' third alleged loss-causing disclosure concerns a report published by Craig Wiggins on February 28, 2020, titled "Aurora and Radient Technologies:  The Possible Return Flight of the Wholesale Biomass Boomerang."  FAC, ECF No. 100-4 ¶ 263.  As with the February 6 disclosures, Plaintiffs' Third Amended Complaint discussed this article as well, TAC, ECF No. 68 ¶ 243, but Plaintiffs did not previously allege that it caused any loss.  And for very good reason:  Aurora's stock rose by 1.5% on the next trading day.  Ex. A (MarketWatch historical price data for Aurora's stocks between February 27, 2020 and March 4, 2020).

Again with the help of their "consulting expert," Plaintiffs nonetheless allege that "Aurora's stock fell 7.6%" in response to this article.  FAC, ECF No. 100-4 ¶ 264.  This allegation is demonstrably false.  Aurora's stock dropped by 7.6% on February 28, Ex. A, but the Wiggins article did not come out until after the market closed that day.  As Plaintiffs allege, the focus of the Wiggins article is Radient's December 31, 2019 financial statements.  FAC, ECF No. 100-4 ¶ 263 ("Today Radient Technology posted their December 31, 2019 earnings.").   However, Radient's financial statements did not become public until 5pm ET—after markets closed.  Ex. B (Radient press release announcing earnings is dated "February 28, 2020 17:00 ET"); Ex. C (screenshot showing Radient filed its financials with

13

SEDAR on "28 Feb 2020 17:11 EST").[2]  Accordingly, the Wiggins article could not have caused the 7.6% stock drop that occurred earlier that day.

## ARGUMENT

A district court has discretion to deny a request to amend a complaint if, among other reasons, the amendment would be futile, the amendment would prejudice the other party, or the moving party has demonstrated undue delay. *Rhymer v. Philip Morris, Inc.*, 164 F. App'x 268, 269 (3d Cir. 2006) (citation omitted).  Any one of these factors alone is sufficient to deny a motion to amend. *Pezza v. Middletown Twp. Pub. Sch.*, No. 18-16354, 2023 WL 2019623, at *4 (D.N.J. Feb. 15, 2023) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)).  All three factors are present here.

As discussed below, the Court should deny Plaintiffs' Motion because (1) the allegations concerning the September 2019 financials were dismissed with prejudice; (2) Plaintiffs do not allege loss causation on any of the three dates, making their proposed amendments futile; and (3) the amended pleading will prejudice Defendants.

---

[2] The Court may take judicial notice of the existence of timestamps.  *See, e.g.*, *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545–46 (S.D.N.Y. 2020) (taking judicial notice of tweets, including the time of the tweets); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. De Blasio*, 627 F. Supp. 3d 253, 259 n.9 (S.D.N.Y. 2022) (taking judicial notice of tweets and noting the date of their publication).

## I.   Plaintiffs Cannot Reintroduce the September 2019 Allegations, Which Were Dismissed With Prejudice

Because Plaintiffs' allegations about Aurora's September 2019 financials were dismissed with prejudice, Plaintiffs cannot attempt to amend their complaint around this dismissal.

A dismissal with prejudice means that the court identified a pleading deficiency that cannot be corrected. *See United States v. Union Corp.*, 194 F.R.D. 223, 236 (E.D. Pa. 2000). The phrase "with prejudice" reflects the court's determination that it "thought an amendment was *not* possible; by using this phrase, the district judges expressly state that the plaintiff does not have leave to amend." *Id.* (internal quotation marks omitted) (quoting *Borelli v. City of Reading*, 532 F.2d 950, 951 n.1 (3d Cir. 1976)).

Moreover, when orders remain silent as to whether a dismissal is with or without prejudice, courts interpret that to mean a dismissal with prejudice. *See, e.g.*, *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("Because the order did not specify that the dismissal was without prejudice, under Fed. R. Civ. P. 41(b) the dismissal 'operates as an adjudication upon the merits.'"); *Papera v. Pennsylvania Quarried Bluestone Co.*, 948 F.3d 607, 610 (3d Cir. 2020) (explaining that "[u]nless the dismissal order states otherwise," "involuntary dismissals . . . are presumptively with prejudice"); *Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477 n.7 (2d Cir. 1991) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it

15

specifically orders dismissal without prejudice.") (citation omitted); *Lerma v. Falks*, 338 F. App'x 472, 474 (5th Cir. 2009) ("The district court's dismissal, though, will be construed as a dismissal with prejudice because it was silent on the issue."); *Crawford v. W.V. Governor's Off.*, 935 F.2d 1285, 1285 (4th Cir. 1991) (noting that final order that was "silent" as to whether the dismissal was with or without prejudice "indicat[ed] dismissal with prejudice").

Unlike the dismissals of the First Amended Complaint and the Second Amended Complaint, the dismissal of Plaintiffs' allegations concerning the September 2019 financials in the Third Amended Complaint did not contain language specifying that the dismissal was without prejudice and with leave to amend. *See supra* 8. Accordingly, the dismissal was <u>with prejudice</u> and <u>without leave to amend</u>. This reading of the dismissal order is cemented by the fact that the Court had already warned Plaintiffs that they had "one further, and final, opportunity to file an amended pleading." *See supra* 8.

Courts consistently reject similar efforts to amend around dismissed claims. *See, e.g.*, *Duran v. Wells Fargo Bank, N.A.*, No. 09-20411-CIV, 2009 WL 10668548, at *3 (S.D. Fla. Oct. 6, 2009) ("Plaintiff's Amended Complaint asserts a claim under the Real Estate Settlement Procedures Act . . . even though the Court dismissed his claim with prejudice. Plaintiff shall not assert this claim in his Second Amended Complaint."); *Borenstein v. Animal Found.*, No. 2:19-cv-00985, 2023 WL 4077163,

16

at *1 (D. Nev. June 20, 2023) ("Put simply, Borenstein may not amend his complaint as a method to escape dismissal with prejudice of his previous claims. But that is exactly what he attempts in this motion."); *see also Duran v. Welfare Reform Act Cong.*, No. 14-4120, 2016 WL 1135517, at *7 (D.N.J. Mar. 23, 2016) ("[T]he Plaintiffs were well aware that this was their 'final opportunity' to amend their complaint and, yet, failed to follow the Court's explicit directives.") (internal citations omitted); *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously amended.") (internal quotation marks omitted).

Plaintiffs' Motion ignores this fundamental issue. In fact, Plaintiffs expressly acknowledge that the proposed Fourth Amended Complaint attempts to "cure[] the pleading defects the Court previously identified." Mot., ECF No. 100-1 at 1; *see id.* at 8 ("[T]he proposed FAC includes additional details of Aurora's sham transaction with Radient, including . . . bolstered allegations and information related to the September 11, 2019 disclosure—the date on which the subject of the sham transaction first began to be disclosed—which the Court previously found was lacking."). But Plaintiffs cannot "cure" allegations that were dismissed with prejudice.

Instead of addressing this issue, Plaintiffs hang their hat on the parties' November 16, 2023 status conference, saying that the "Court discussed with

17

Plaintiffs the possibility of withdrawing their Reconsideration Motion and, alternatively, filing a motion for leave to amend the TAC." Mot., ECF No. 100-1 at 5. However, the parties never discussed—let alone did the Court endorse—Plaintiffs' attempt to reintroduce allegations that were dismissed with prejudice back into the case. The Court's minute entry following that conference simply states that the "Court ordered counsel to meet and confer re: the status of the pending motions by 11/30/23." Min. Entry, ECF No. 91. While Plaintiffs could have sought to add new allegations unrelated to the September and November financial statements—as they have done here with respect to the February 2020 allegations—they are not permitted to amend around a dismissal with prejudice. Accordingly, Plaintiffs' Motion should be denied as to the allegations concerning the September 2019 financials.

## II.    Granting Leave To Amend Would Be Futile Because Plaintiffs Fail To Allege Loss Causation

Additionally, the Court should deny leave because the proposed amendments are futile, which means that, under the Rule 12(b)(6) standard, the Fourth Amended Complaint fails to state a claim upon which relief could be granted. *Shane*, 213 F.3d at 115. Plaintiffs' amendments could not survive a motion to dismiss because Plaintiffs do not allege loss causation on any of the three dates in question.

### A.    Aurora's September 11, 2019 Financials

The Court's August 2023 opinion set out the governing law with respect to the loss-causation analysis:

> "Loss causation demonstrates that the fraudulent misrepresentation actually caused the loss suffered." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 173 (3d Cir. 2001). If "the plaintiff shareholder alleges that a fraudulent misrepresentation or omission has artificially inflated the price of a publicly-traded security," then "the plaintiff must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff." *McCabe v. Ernst & Young, LLP.*, 494 F.3d 418, 425–26 (3d Cir. 2007). In other words, the investor must "allege sufficient facts to show that the alleged misrepresentations proximately caused the decline in the security's value." *In re Bradley Pharmaceuticals, Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 827 (D.N.J. 2006) (citations omitted). "[W]here the price of a security declines for reasons unrelated to the fraud, the investor has no right to recovery." *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 559 (D.N.J. 2010).

Op., ECF No. 75 at 8.

For the same reasons discussed in the Court's August 2023 opinion, Plaintiffs still "fail to allege that revelation of the Sham Transaction caused the stock drops that followed the September . . . Statements." *Id.* As before, "the only actionable misstatements or omissions concern the Sham Transaction, and that alleged fraud was not revealed or disclosed by the September . . . Statements." *Id.* at 9.

Recognizing that the September 2019 financials did not disclose the Radient relationship itself, Plaintiffs try to reframe the same allegations that the Court has already rejected. Plaintiffs argue that "the proposed FAC explains that the

19

statements made by Defendants on [September 11, 2019] disclosed for the first time the subject of Defendants' fraud:  an unprecedented $20 million of revenue that Aurora derived from wholesale bulk cannabis."  Mot., ECF No. 100-1 at 8.  In fact, Plaintiffs' Third Amended Complaint referred to "Aurora's miraculous $20 million in wholesale revenue (a +870% incremental increase QoQ)," TAC, ECF No. 68 ¶ 251, but the Court held that the September 2019 financials "did not reveal the *subject* or the *false nature* of the alleged fraud."  Op., ECF No. 75 at 10 (emphasis added).

Likewise, Plaintiffs argue in their Motion that Wiggins' "suspicions about the FQ4 2019 Transaction first arose with Aurora's September 11, 2019 conference call."  Mot., ECF No. 100-1 at 9.  But Plaintiffs also included this allegation in their Third Amended Complaint, TAC, ECF No. 68 ¶ 251, which the Court expressly acknowledged in its opinion, ECF No. 75 at 4 ("Plaintiffs continue that the analyst Craig Wiggins first became suspicious of the Sham Transaction following the September Statement.").

Plaintiffs also recycle their argument that "Aurora's September 11, 2019 announcement of missed guidance was a corrective disclosure that Defendants' August 6, 2019 statement that '[t]he Company continues to track toward positive adjusted EBITDA' was materially false and misleading because the quarter and full fiscal year had already been over for more than a month."  Mot., ECF No. 100-1 at

20

10 (emphasis removed). The Court considered and rejected this argument. The Court described Plaintiffs' allegations that "Defendants disclosed or otherwise stated that Aurora would achieve positive [EBITDA]," and that "Defendants omitted to disclose a sham transaction that Aurora undertook to inflate these metrics for FQ4 2019." Op., ECF No. 75 at 2. The Court then went on to explain that it "already ruled that the EBITDA guidance is inactionable and the risk of the Sham Transaction could not have materialized if the disclosures did not reveal th[e] alleged fraud." *Id.* at 9.

Plaintiffs' new allegation about the October 23, 2019 Piper Jaffrey analyst report does not change the result. Mot., ECF No. 100-1 at 9–10. As Plaintiffs acknowledge, the report discusses disappointing sales estimates, but never mentions Radient—let alone claims the alleged Radient fraud was disclosed six weeks earlier in the September 2019 financials. *Id.* The Court has already rejected this argument. Op., ECF No. 75 at 10 ("[T]he September and November Statements relayed negative EBIDA metrics, but the disclosures did not reveal the subject or false nature of the alleged fraud."); *see also id.* at 9–10 (discussing cases in this District that have "concluded that loss causation is lacking in similar contexts").

### B. Aurora's February 6, 2020 Disclosures

Plaintiffs' allegations concerning the February 6, 2020 disclosures fail for similar reasons. As discussed above, Plaintiffs allege that Aurora made several

21

announcements on February 6, 2020, including the retirement of the CEO, significant layoffs, asset impairment charges, write-downs, and lower bulk sale revenues. *See supra* 11–12. Even though these announcements and the cited analyst reports did not mention Radient, Plaintiffs argue that "Aurora's announcement of the collapse of its wholesale bulk revenue was another partial corrective disclosure of the truth about Aurora's FQ4 2019 wholesale bulk sales, *i.e.*, that they had been fraudulently engineered." Mot., ECF No. 100 at 10–11.

The Court has already correctly rejected nearly identical allegations concerning Aurora's November 2019 financials. In particular, Plaintiffs' Third Amended Complaint alleged that Aurora announced "deeply disappointing financials results" on November 14, 2019, including a 90% decline in net income. TAC, ECF No. 68 ¶ 225. Moreover, Plaintiffs alleged that, "[s]hockingly, Aurora's consumer cannabis revenue fell by 33% and its wholesale bulk revenue fell by 49% sequentially." *Id.* Plaintiffs further alleged that "[a]nalysts were shocked and dismayed by the Company's disclosures." *Id.* ¶ 230. As with the allegations concerning the September 2019 financials, the Court dismissed these allegations because "Plaintiffs fail[ed] to allege that revelation of the Sham Transaction caused the stock price drop[] that followed . . . the November Statement[]." Op., ECF No. 75 at 8. Without a revelation of the alleged fraud, "[d]isclosures about lower-then-expected revenues" are insufficient to support loss causation. *Id.* at 10.

22

The same logic applies here. Plaintiffs point to Aurora's disclosures and analyst reports discussing lower bulk sales, but they do not allege that the "subject or false nature of the alleged fraud" was revealed on February 6, 2020. *Id.* Accordingly, these disclosures cannot support loss causation.

### C. Wiggins' February 28, 2020 Article

The proposed amendment concerning Wiggins' February 28, 2020 article is futile for two reasons: (1) it is based on a false allegation—Aurora's stock price went up after this article, not down; and (2) the alleged fraud had already been revealed multiple times.

To begin, Plaintiffs argue that the "proposed FAC alleges that Wiggins' February 28, 2020 report confirmed the sham transaction link between Radient and Aurora by explaining that Radient earned 100% of its revenue from Aurora, causing Aurora's stock price to decline by 7.6%." Mot., ECF No. 100-1 at 12. Although Aurora's stock did drop 7.6% on February 28, Ex. A, public documents confirm that Radient's earnings, which were core to Wiggins' article, were published after the stock market closed that day, Exs. B, C. Thus, Wiggins could not have commented on Radient's earnings until after markets were closed and his report could not have caused the alleged 7.6% stock drop that occurred earlier that day.[3]

---

[3] Courts take judicial notice of market trends and stock prices. For example, in *City of Westland Police*, the court took judicial notice of MetLife's competitors' stock prices and determined they traded downward in "lockstep with one another" because

23

In fact, Aurora's stock price went up following the report. As the Court previously explained, the Third Circuit has found that information may take two days to impact stock prices in an efficient market. Op., ECF No. 75 at 12 (citing *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 635 (3d Cir. 2011)). Here, Aurora's stock price went up by approximately 1.5% the next trading day (March 2) and up by approximately 3% from February 28 to March 4. Ex. A.

Moreover, the February 28 Wiggins report cannot serve as a corrective disclosure because, according to Plaintiffs' own allegations, the alleged fraud had already been made public on at least two prior occasions, including the October 9, 2019 Wiggins article and the October 17, 2019 *Yahoo Finance Canada* article. The three articles are substantially similar. *Compare* FAC, ECF No. 100-4 ¶ 224 (October 9 article) ("IF Aurora sells product to Radient and Aurora repurchases it, Aurora get[s] to claim a Sale and then reacquire the extracted biomass in inventory, and then they resell it again. Essentially the potential to double dip on sales.") (emphasis removed), *with id.* ¶ 228 (October 17 article) ("If Aurora sells product to Radient and Aurora repurchases it, Aurora gets to claim a sale and then reacquire the extracted biomass in inventory, and then they resell it again. Essentially there's

---

of external market forces. *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 715–16 (S.D.N.Y. 2013). Similarly, another court took judicial notice of stock prices and found no loss causation because the defendant's "drop in share price coincided with a significant downturn in the credit markets." *In re First Marblehead Corp. Sec. Litig.*, 639 F. Supp. 2d 145, 164–65 (D. Mass. 2009).

potential to double dip on sales."), *with id.* ¶ 263 (February 28 article) ("IF the above is not addressed investors and the public will be left with the possibility that two publicly traded companies may have colluded to inflate their sales figures.").

Plaintiffs cannot establish loss causation by citing disclosures or articles that are "substantially similar" to previous reporting. *See Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 545 F. Supp. 3d 120, 146–49 (S.D.N.Y. 2021) (concluding that four articles were "not actionable" for purposes of the loss-causation analysis because they discussed information that was "substantially similar" to previous reporting and public statements and thus "constitute[d] mere materialization of known risk"); *see also Canez v. Intelligent Sys. Corp.*, No. 19-cv-3949, 2021 WL 3667012, at *9 (E.D.N.Y. Aug. 18, 2021) ("Because the Lumense-related disclosures that plaintiff relies on as corrective disclosures merely republished information that was already publicly available, those disclosures are not corrective for purposes of pleading loss causation."); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. CIV.A. 05-1151; 05-2367, 2013 WL 2395035, at *4–5 (D.N.J. May 29, 2013) (holding that article did not "disclose any previously unknown information that revealed the falsity of [defendant's] statements and omissions"); *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 513 (2d Cir. 2010) (holding that article did not constitute a corrective disclosure because the appellant did not demonstrate that the article contained any new information).

For these reasons, Plaintiffs fail to establish loss causation based on the February 28 Wiggins report.

## III. Plaintiffs' Amendments Will Prejudice Defendants

Finally, the Motion should be denied because Plaintiffs' amendments will cause Defendants undue prejudice, which is an independent basis for denying a motion to amend. *Lorenz v CSX Co.*, 1 F.3d 1406, 1414 (3d Cir. 1993). The "undue prejudice" inquiry focuses on the hardship to the defendants if the amendment was permitted. *Cureton v. National Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Courts "consider[] whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Id.*

This case has been pending for over four years. Plaintiffs have already filed four complaints, including three amended complaints. The resulting motion practice—including Defendants' three motions to dismiss and Defendants' opposition to Plaintiffs' motion for reconsideration—has overburdened both the Court and Defendants and militates towards denying the Motion.

Moreover, the proposed February amendments would significantly expand the scope and topics of discovery, which has already been proceeding for several months. For example, if the amendments are allowed, Plaintiffs will seek wide-ranging and costly discovery concerning the various announcements on February

26

6—including the CEO's retirement, layoffs, impairment charges, and Aurora's financials—and Defendants will have to engage in costly expert discovery concerning the alleged stock drops on February 6 and 28.  The Court should not allow Plaintiffs to expand the putative class period by over three months, particularly given that they could have pursued these loss-causation allegations in their Second Amended Complaint, which they filed over 2.5 years ago.  *See New York ex rel. Khurana v. Spherion Corp.*, No. 15-cv-6605, 2019 WL 1274710, at *2–3 (S.D.N.Y. Mar. 20, 2019) (denying party's motion for leave to amend a claim in a securities fraud case based on the prejudice of additional discovery when the case had "been pending for over three years").

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to file a Fourth Amended Complaint should be denied.

Dated: February 12, 2024            By: _____

Kevin H. Marino
John D. Tortorella
MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, NJ 07928-1488
Phone: 973-824-9300
Fax: 973-824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

Stephen L. Ascher (*pro hac vice*)
Andrew J. Lichtman
JENNER & BLOCK LLP

27

1155 Avenue of the Americas
New York, NY 10036-2711
Phone: 212-891-1600
Fax: 212-891-1699
sascher@jenner.com
alichtman@jenner.com

Howard S. Suskin (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, IL 60654-3456
Phone: 312-222-9350
Fax: 312-527-0484
hsuskin@jenner.com

*Attorneys for Defendants*