James E. Cecchi
Donald A. Ecklund
CARELLA, BYRNE, CECCHI,
  OLSTEIN, BRODY
  & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Local Counsel for Lead Plaintiffs*

Samuel H. Rudman
Alan I. Ellman
Magdalene Economou
ROBBINS GELLER RUDMAN &
  DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
aellman@rgrdlaw.com
meconomou@rgrdlaw.com

Steve W. Berman
Shayne C. Stevenson
HAGENS BERMAN SOBOL
  SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone: 206/268-9340
206/623-0594 (fax)
steve@hbsslaw.com
shaynes@hbsslaw.com

*Lead Counsel for Lead Plaintiffs*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re AURORA CANNABIS INC. SECURITIES LITIGATION | No. 2:19-cv-20588-BRM-JBC |
| | <u>CLASS ACTION</u> |
| This Document Relates To: | **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR LEAVE TO AMEND PURSUANT TO FED. R. CIV. P. 15** |
| ALL ACTIONS. | |

**TABLE OF CONTENTS**

**Page**

I.    Introduction..................................................................................................1

II.   Argument .....................................................................................................2

    A.    Amendment here is not futile. ............................................................2

        1.    The September 11, 2019 Statements............................................5

        2.    The February 6, 2020 Disclosures ..............................................7

    B.    The September 11, 2019 Statements were not dismissed with prejudice. ...........................................................................................8

    C.    Amendment will not unfairly prejudice Defendants...........................11

III.  Conclusion .................................................................................................14

# TABLE OF AUTHORITIES

**Page**

### CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ...............................................................................3

*Alvin v. Suzuki*,
  227 F.3d 107 (3d Cir. 2000) ................................................................................9

*Astrazeneca AB v. Perrigo Co. PLC*,
  2015 WL 8483298
  (D.N.J. Dec. 9, 2015) .........................................................................................14

*Borenstein v. Animal Found.*,
  2023 WL 4077163
  (D. Nev. June 20, 2023)................................................................................10, 11

*Chubb INA Holdings Inc. v. Chang*,
  2016 WL 6841075
  (D.N.J. Nov. 21, 2016)....................................................................................11, 14

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
  252 F.3d 267 (3d Cir. 2001) ...............................................................................12

*De Vito v. Liquid Holdings Grp., Inc.*,
  2018 WL 6891832
  (D.N.J. Dec. 31, 2018) .........................................................................................3

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)..............................................................................................3

*Duran v. Welfare Reform Act Cong.*,
  2016 WL 1135517
  (D.N.J. Mar. 23, 2016).........................................................................................11

*Duran v. Wells Fargo Bank, N.A.*,
  2009 WL 10668548
  (S.D. Fla. Oct. 6, 2009).......................................................................................10

**Page**

*Hunter v. Dematic USA*,
2016 WL 2904955
(D.N.J. May 18, 2016) ..................................................................................9

*In re BofI Holding, Inc. Sec. Litig.*,
2021 WL 1812822
(S.D. Cal. May 6, 2021)...............................................................................13

*Katyle v. Penn Nat'l Gaming, Inc.*,
637 F.3d 462 (4th Cir. 2011) .........................................................................3

*Lerma v. Falks*,
338 F. App'x 472 (5th Cir. 2009) ................................................................10

*New York ex rel. Khurana v. Spherion Corp.*,
2019 WL 1274710
(S.D.N.Y. Mar. 20, 2019) ............................................................................14

*Papera v. Penn. Quarried Bluestone Co.*,
948 F.3d 607 (3d Cir. 2020) .....................................................................9, 11

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) ...........................................................................9

*Riley v. Timmons Constr. LLC*,
2022 WL 597356
(W.D. Pa. Feb. 28, 2022) ...............................................................................9

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) ......................................................................11

*Shane v. Fauver*,
213 F.3d 113 (3d Cir. 2000) .........................................................................10

*Stern v. General Electric Co.*,
924 F.2d 472 (2d Cir. 1991) .........................................................................10

**Page**

*Stratis v. BMW of N. Am., LLC,*
  2023 WL 3092188
  (D.N.J. Apr. 26, 2023) ......................................................................................9

*U.S. Fire Ins. Co. v. Kelman Bottles*,
  538 Fed. Appx. 175 (3d Cir. 2013)..................................................................12

*U.S. v. Union Corp.*,
  194 F.R.D. 223 (E.D. Pa. 2000)......................................................................10

*Vanderhoef v. China Auto Logistics Inc.*,
  2020 WL 5105243
  (D.N.J. Aug. 31, 2020)......................................................................................3

*Zhengyu He v. China Zenix Auto Int'l Ltd.*,
  2020 WL 3169506
  (D.N.J. June 12, 2020) ......................................................................................3

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
  Rule 15 ...................................................................................................1, 2, 8

Lead Plaintiffs Doug Daulton, Francisco Quintana, Donald S. Parrish, and Quang Ma (collectively, "Plaintiffs") submit this reply in further support of their motion for leave to file the proposed FAC.[1]

## I.    Introduction

Notwithstanding the liberal pleading standard of Federal Rule of Civil Procedure 15, and despite the plain absence of futility and a complete lack of prejudice to Defendants or likelihood of delay in the litigation, Defendants ask the Court to treat a dismissal *without* prejudice as if it were *with* prejudice so to deny Plaintiffs the opportunity of a final amendment to their pleading.  Each of Defendants' arguments fails.  Plaintiffs should be granted leave to file the proposed FAC.

First, Plaintiffs have adequately alleged loss causation in the proposed FAC. Plaintiffs allege a corrective disclosure theory of loss causation, pleading that the subject of the fraud, *i.e.*, Aurora's purported wholesale cannabis bulk "sale" that was actually a sham transaction with Radient (a related entity), became revealed over time, resulting in material declines in Aurora's stock price in response.  The additional allegations included in the proposed FAC are supported by analyst reports

---

[1]  Capitalized terms have the definitions ascribed to them in Plaintiffs' Memorandum of Law in Support of Motion for Leave to Amend Pursuant to Fed. R. Civ. P. 15 (ECF 100-1, "Pl. Br.").  Citations to "¶__" are to the proposed FAC.

further explaining how on each of the corrective disclosure dates, aspects of the fraud were further revealed.

Second, the Court did not dismiss the claims in the TAC with prejudice. Defendants unsuccessfully attempt to portray the Court's previous dismissal of Plaintiffs' allegations related to the September 11, 2019 Statements as "with prejudice," despite the obvious—and determinative—absence of those words. Defendants' argument is contrary to Rule 15 and the law in the Third Circuit, and is wholly unsupported by Defendants' cited case law.

Finally, Defendants have failed to show that they are prejudiced—much less unduly so—by Plaintiffs' proposed amendment. Plaintiffs have moved to amend in a timely manner and discovery in this case is only in the beginning stages, which Defendants do not dispute.

Accordingly, Plaintiffs respectfully request that the Court grant leave to file the proposed FAC.

## II.    Argument

### A.    Amendment here is not futile.

Defendants argue that the Court should deny the motion for leave to amend because "Plaintiffs do not allege loss causation on any of the three dates in question," since the disclosures on each of the three dates did not "disclose the Radient relationship itself" or "did not mention Radient." Defendants' Opposition to

Plaintiffs' Motion for Leave to File a Fourth Amended Complaint ("Opp.") at 18-22. Defendants are essentially arguing that the series of partial corrective disclosures must mirror the alleged false statements during the proposed Class Period. This is not the standard in the Third Circuit. "A corrective disclosure only needs to relate to the same *subject* as the misrepresentation and there is no requirement that the disclosure mirror the earlier misrepresentation." *Vanderhoef v. China Auto Logistics Inc.*, 2020 WL 5105243, at *4 (D.N.J. Aug. 31, 2020) (emphasis added); *see also De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *39 (D.N.J. Dec. 31, 2018) (same); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009) ("If a fact-for-fact disclosure were required to establish loss causation, a defendant could defeat liability by refusing to admit the falsity of its prior misstatements."). Additionally, the corrective disclosure need not occur all at once; "[i]nstead, the truth may be revealed through a series of partial disclosures through which the truth gradually 'leaks out.'" *Zhengyu He v. China Zenix Auto Int'l Ltd.*, 2020 WL 3169506, at *11 (D.N.J. June 12, 2020) (quoting *De Vito*, 2018 WL 6891832, at *39); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (referencing "the relevant truth begin[ing] to leak out"); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 472 (4th Cir. 2011) ("neither a single complete disclosure nor a fact-for-fact disclosure of the relevant truth to the market is a

- 3 -

necessary prerequisite to establishing loss causation (although either may be sufficient)").

Plaintiffs allege that Defendants made corrective disclosures during the proposed Class Period that partially revealed the subject of the sham transaction between Aurora and Radient. Beginning on September 11, 2019, Aurora announced its financial results for FQ4 2019, and first disclosed the suspicious wholesale bulk sales. Aurora's stock price declined by 9.2% the next day. ¶¶211, 293. On October 9, 2019, analyst Craig Wiggins published his theory of a sham transaction, which he said was based on Aurora's September 11, 2019 Statements and the suspicious nature of the wholesale bulk sales discussed therein. Aurora's stock price declined by 9.5% the next day. ¶¶225, 296. On October 17, 2019, *Yahoo Finance Canada* published an article disclosing to investors further details of the sham transaction. Aurora's stock price declined by 5.4% the next day. ¶¶229, 297. On February 6, 2020, Aurora announced declining wholesale bulk revenues, which further disclosed the subject of the fraud by linking missed guidance to lower bulk sales, and demonstrated that those sales were an unsustainable source of revenue. Aurora's stock price declined by 22% over the next two trading days. ¶¶262, 298.[2] Therefore, Plaintiffs have adequately pled loss causation.

---

[2] Plaintiffs are no longer pursuing February 28, 2020 as a corrective disclosure date, and would edit the proposed FAC accordingly before filing.

### 1.    The September 11, 2019 Statements

Defendants argue that since the September 11, 2019 Statements did not disclose the Radient relationship, they "did not reveal the subject or the false nature of the alleged fraud." Opp. at 20. Defendants ignore the facts alleged in the proposed FAC. The proposed FAC highlights that the September 11, 2019 Statements actually did disclose for the first time the *subject* of Defendants' fraud: an unprecedented $20 million of revenue that Aurora derived from wholesale bulk cannabis sales. ¶¶11, 202, 291. These statements, related to the magnitude of the revenue, raised suspicions for analyst Craig Wiggins. ¶¶11, 273.

Defendants also ignore the proposed FAC's allegations related to Wiggins' comments about the September 11, 2019 Statements, including: (i) his description of the $20 million wholesale bulk cannabis revenue as "miraculous," as it represented an 870% increase from the previous quarter (*id.* ¶¶11, 273); (ii) his observation that Aurora's $12.3 million of wholesale gross margin for FQ4 2019 represented an $11 million quarter-over-quarter increase—reflecting an astonishing 896% increase—and contributed substantially to the adjusted EBITDA improvement of $9 million for the quarter (*id.* ¶¶11, 273, 291); and (iii) his express acknowledgement that his suspicions about the FQ4 2019 Transaction first arose with Aurora's September 11, 2019 conference call and were triggered by the

comparatively large size of the wholesale bulk cannabis sale in a declining pricing environment. *Id*. ¶¶14, 212, 273, 293.

Further, despite Defendants' assertions, the October 23, 2019 Piper Jaffray analyst report strengthens the argument that the September 11, 2019 Statements first disclosed the subject of the fraud related to the bulk transactions. The Piper Jaffray analyst revised his FQ1 2020 sales estimate in response to statements by Aurora management during the September 11, 2019 earnings call. *Id*. ¶¶15, 231-232. Piper Jaffray stated that management expected a "bit of a plateau between now and the advent of the cannabis legalization 2.0 products." *Id*. Piper Jaffray explained: "We had imagined this characterization to apply at the total company level, but closer scrutiny suggests that *the $20M lift from wholesale sales was likely not included as part of the reference run-rate that management had in mind*." ¶231. Thus, Piper Jaffray interpreted the September 11, 2019 Statements to mean that Aurora's wholesale transactions were not sustainable—and they were not, because they were the product of a sham transaction. ¶232. In response to the September 11, 2019 Statements, Aurora's stock price declined by 9.2% the next day. ¶¶211, 293.

Defendants also argue that Plaintiffs "try to reframe the same allegations that the Court has already rejected." Opp. at 19-20. Defendants ignore the changes Plaintiffs made in the proposed FAC, including that Plaintiffs are now alleging a corrective disclosure theory of loss causation and are no longer alleging a

- 6 -

materialization of the risk theory. *See* ECF 100-4 at 4-5, 7, 65-66, 77, 81, 101-103 (changing allegations that the risk "materialized" to allegations that "partial disclosures" revealed the subject of the sham transaction). Plaintiffs also include the Piper Jaffray analyst report interpreting the September 11, 2019 Statements to mean that Aurora's wholesale sales were not sustainable, *id*. at 6, 78, and that Wiggins' suspicions related to the September 11, 2019 Statements were due to the comparatively large size of the biomass sale in a declining pricing environment. *Id*. at 70, 103.

### 2.    The February 6, 2020 Disclosures

Similar to the September 11, 2019 Statements, Defendants argue that the February 6, 2020 disclosures did not allege "that the 'subject or false nature of the alleged fraud' was revealed." Opp. at 23. Not so. The February 6, 2020 disclosures *further* revealed the subject of Defendants' fraud related to the wholesale bulk transactions. Specifically, the proposed FAC added allegations that on February 6, 2020, Aurora announced that its cannabis revenues for FQ2 2020 would be approximately $62-66 million with provisions for returns, price reductions, and future provisions of approximately $12 million related to "much lower bulk sales." ¶¶20-21, 250, 298. Thus, Aurora's February 6, 2020 announcements further disclosed that its wholesale bulk sales were unsustainable—which in fact they were, because they had been fraudulently engineered.

Defendants also ignore Plaintiffs' inclusion of seven additional analyst and news reports attributing Aurora's lower cannabis revenues to the declining bulk sales, further supporting the February 6, 2020 statements as a corrective disclosure. *See* ¶¶254-261 (blaming the $12 million provision on "much lower bulk sales" and a "drop in bulk wholesale rev . . . which disproportionately benefitted ACB last qtr"). In response, Aurora's stock price declined by 22% the next two trading days.  ¶¶21, 298.

As such, Plaintiffs have pled all that is required for loss causation: that on each disclosure date additional information related to the *subject* of the fraud—the wholesale bulk cannabis sales that formed the core of the sham transaction between Aurora and Radient—was disclosed and caused Aurora's stock price to decline in response.

### B. The September 11, 2019 Statements were not dismissed with prejudice.

Defendants somehow argue that Plaintiffs' allegations related to the September 11, 2019 Statements were previously dismissed *with* prejudice, even though Judge Vazquez nowhere stated that.  Opp. at 15-17.  This argument runs contrary to the purpose of Rule 15, the law in the Third Circuit, and Defendants' cited authorities.

The Third Circuit has instructed that "'[i]f a complaint is vulnerable to Rule 12(b)(6) dismissal, a district court must permit a curative amendment, unless an

amendment would be inequitable or futile.'" *Riley v. Timmons Constr. LLC*, 2022 WL 597356, at \*6 (W.D. Pa. Feb. 28, 2022) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008)); *see also Hunter v. Dematic USA*, 2016 WL 2904955, at \*3 (D.N.J. May 18, 2016) ("Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith on the part of the movant as long as the amendment would not be futile and the opposing party would not suffer undue prejudice."). "A general presumption exists in favor of allowing a party to amend its pleadings." *Stratis v. BMW of N. Am., LLC*, 2023 WL 3092188, at \*15 (D.N.J. Apr. 26, 2023) (Martinotti, J.) (granting plaintiff's request for leave to cure any deficiencies and file an amended complaint). "In sum, a silent or unclear record will not do" when it comes to dismissal with prejudice. *Papera v. Penn. Quarried Bluestone Co.*, 948 F.3d 607, 612 (3d Cir. 2020).

The Third Circuit has also recognized that dismissal with prejudice is "a severe and disfavored remedy." *Alvin v. Suzuki*, 227 F.3d 107, 122 (3d Cir. 2000). In fact, *Papera*, cited by Defendants for this argument (*see* Opp. at 15), quotes *Alvin* for this point and stresses that dismissal with prejudice is "only appropriate in limited circumstances." 948 F.3d at 611.[3]

---

[3]  Defendants' reliance on *Papera* for their position that the September 11, 2019 Statements were dismissed with prejudice is unpersuasive. The Third Circuit's discussion in that case involved plaintiffs' voluntary dismissal of the entire action in light of settlement communications with defendants. *See id*. at 609-10.

- 9 -

Notably, several of Defendants' cases actually support allowing Plaintiffs to file their amendment.  For example, in *Stern v. General Electric Co.*, the Second Circuit "reverse[d] the district court's decision to dismiss [certain counts of a complaint] insofar as that dismissal was with prejudice, and remand[ed] with instructions to dismiss those [c]ounts with leave to replead."  924 F.2d 472, 477-78 (2d Cir. 1991).  Similarly, in *Lerma v. Falks*, the Fifth Circuit reversed and remanded the district court's decision dismissing an action with prejudice for the entry of a dismissal without prejudice.  338 F. App'x 472, 474 (5th Cir. 2009).  Additionally, in *Shane v. Fauver*, the Third Circuit vacated and remanded the district court's order dismissing plaintiffs' claims with prejudice, finding that "dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility," and that the district court did not test plaintiffs' claims against that standard.  213 F.3d 113, 117 (3d Cir. 2000).

Defendants' other cases fail to support their argument, as the court in each of those cases *explicitly* dismissed the claims at issue with prejudice, which is the opposite of what Judge Vazquez did here.  *See U.S. v. Union Corp.*, 194 F.R.D. 223, 225 (E.D. Pa. 2000) (striking defendants' previously dismissed-with-prejudice counterclaim, which was re-filed without leave of court); *Duran v. Wells Fargo Bank, N.A.*, 2009 WL 10668548, at *2 (S.D. Fla. Oct. 6, 2009) (prohibiting plaintiff to replead claims that the court explicitly dismissed with prejudice); *Borenstein v.*

- 10 -

*Animal Found.*, 2023 WL 4077163, at *1 (D. Nev. June 20, 2023) (denying leave to amend concerning claims that were previously dismissed with prejudice).[4] Here, the Court's dismissal did not include any language or suggestion that it be with prejudice, and any ambiguity must resolve in favor of Plaintiffs.

Defendants' argument on this point is nothing more than an attempt to avoid meeting their "heavy" burden of proving futility. *Chubb INA Holdings Inc. v. Chang*, 2016 WL 6841075, at *4 (D.N.J. Nov. 21, 2016). Plaintiffs' proposed amendments are not futile (*see supra* at 2-8; Pl. Br. at 8-14), and the Court's silence on the question of dismissal with prejudice should not be construed against Plaintiffs. *See Papera*, 948 F.3d at 612.

### C. Amendment will not unfairly prejudice Defendants.

Lastly, Defendants have failed to show any unfair prejudice resulting from the proposed amendment. Defendants argue that they will be prejudiced by Plaintiffs' amendment because: (i) the case has been pending for over four years and Plaintiffs

---

[4] Defendants' remaining cases fail to support their argument that "[c]ourts consistently reject similar efforts to amend around dismissed claims," Opp. at 16, as the court in each case rejected plaintiffs' amendments because they disregarded the court's instructions related to amending. *See Duran v. Welfare Reform Act Cong.*, 2016 WL 1135517, at *6 (D.N.J. Mar. 23, 2016) ("The Court has attempted to guide the Plaintiffs and inform them of the pleading requirements and yet the deficiencies persist and, perhaps, worsen."); *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("Indeed, the district court gave Plaintiffs specific instructions on how to amend the complaint, and Plaintiffs did not comply.").

have previously filed amended complaints; and (ii) the proposed amendments would significantly expand the scope and topics of discovery. Opp. at 26-27. Both arguments fail.

First, Defendants' argument regarding prior amendments and the amount of years the case has been pending fails to establish unfair prejudice towards Defendants and is not a basis to deny Plaintiffs' motion. Plaintiffs' second and third amendments were allowed by the Court to cure the deficiencies described in the Court's prior orders granting the motions to dismiss. *See generally* ECF 43 and 64. And now, Plaintiffs seek to amend their complaint a fourth and final[5] time following the discussion with the Court during the November 16, 2023 status conference. Further, as Plaintiffs have previously explained, *see* Pl. Br. at 14, delay alone is an insufficient ground to deny a motion to amend. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001); *see also U.S. Fire Ins. Co. v. Kelman Bottles*, 538 Fed. Appx. 175, 184 (3d Cir. 2013). Moreover, there would be no delay caused by amendment because discovery is continuing apace and aims at nearly the same information and documents sought under the operative complaint.

Defendants do not address Plaintiffs' point that their motion for leave to amend is also timely under the Court's Pretrial Scheduling Order, which allows for

---

[5] Plaintiffs acknowledge that should the Court grant their motion for leave to amend, they would not seek to amend again.

any "motion to add new parties, whether by amended or third-party complaint" to be filed by February 23, 2024.  *See* Pl. Br. at 16; ECF 90 at 3.

Defendants also fail to explain how expanding the Class Period by only three months would "significantly expand the scope and topics of discovery."  Opp. at 26. Plaintiffs' operative pleading already includes allegations related to Aurora's February 6, 2020 disclosures.  *See* TAC ¶¶240-242.  Additionally, Plaintiffs have expressed to Defendants their intention to seek discovery through February 2020 and will continue to do so regardless of the outcome of this motion.  Indeed, it is common for the time period covered by discovery to briefly extend beyond the end of a class period.  *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, 2021 WL 1812822, at *5 (S.D. Cal. May 6, 2021) (holding that the "appropriate time period for discovery" post-dated the end of the class period by approximately three months).  And Defendants' argument that they will have to engage in costly expert discovery concerning the alleged corrective disclosure of February 6, 2020, *see* Opp. at 27, is inapt because neither party has designated any expert.

Defendants argue that discovery "has been proceeding for several months," *id*. at 26, but do not dispute that discovery in this case is in the early stages with fact discovery set to close months from now.  Nor do they dispute that to date, no documents have been produced, no depositions have been scheduled, and no experts have been designated.  *See Astrazeneca AB v. Perrigo Co. PLC*, 2015 WL 8483298,

- 13 -

at *5 (D.N.J. Dec. 9, 2015) (granting leave to amend and noting that discovery was still in the early stages and not due to close for several months).[6]

Notably, Defendants fail to engage with Plaintiffs' authority on this point, *cf.* Pl. Br. at 15, and ignore this Court's ruling in *Chubb*, which found that defendants would suffer no prejudice by allowing plaintiffs to amend their pleading to add claims, as it would not result in any significant "additional discovery, cost and preparation to defend against new facts or theories." 2016 WL 6841075, at *6.

Therefore, Plaintiffs have shown that the proposed amendment will not unfairly prejudice Defendants.

## III.   Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for leave to file the proposed FAC.

---

[6]   For these reasons, Defendants' reliance on *New York ex rel. Khurana v. Spherion Corp.*, is misplaced. 2019 WL 1274710, at *3 (S.D.N.Y. Mar. 20, 2019) (denying plaintiff's motion for leave to amend because the court would have to reopen discovery, which would significantly delay the resolution of the dispute).

- 14 -

DATED:  February 28, 2024

CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
DONALD A. ECKLUND


_/s/ James E. Cecchi_
JAMES E. CECCHI

5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

_Local Counsel_

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ALAN I. ELLMAN
MAGDALENE ECONOMOU
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
aellman@rgrdlaw.com
meconomou@rgrdlaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
STEVE W. BERMAN
SHAYNE C. STEVENSON
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)
steveb@hbsslaw.com
shaynes@hbsslaw.com

*Lead Counsel for Lead Plaintiffs and the Proposed Class*

SCHALL LAW FIRM
BRIAN SCHALL
1880 Century Park East, Suite 404
Los Angeles, CA  90067
Telephone:  310/301-3335
310/338-0192 (fax)
brian@schallfirm.com

*Additional Plaintiffs' Counsel*