CARELLA, BYRNE, CECCHI,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
DONALD A. ECKLUND
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

Local Counsel for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re AURORA CANNABIS INC. SECURITIES LITIGATION | ) ) ) | No. 2:19-cv-20588-BRM-JBC |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) ) | MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S |
| ALL ACTIONS. | ) ) ) | MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, AND AWARDS TO LEAD PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4) |

Motion Return Date: January 28, 2025

4904-2399-8981.v1

# TABLE OF CONTENTS

**Page**

I.    OVERVIEW .................................................................................................1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY.................4

III.  THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED.................................................................................5

    A.    Lead Plaintiffs' Counsel Are Entitled to a Fee from the Common Fund................................................................................6

    B.    The Court Should Award Attorneys' Fees Using the Percentage Approach ...............................................................................7

    C.    The Requested Fee Is Presumptively Reasonable Because It Has Been Approved by the Court-Appointed Lead Plaintiffs ..............8

    D.    The Requested Fee Is Fair and Reasonable Under the *Gunter* Factors .................................................................................9

        1.    The Size of the Common Fund Created and the Number of Persons Benefited by the Settlement .....................................9

        2.    Reaction of Settlement Class Members to the Fee Request .................................................................................11

        3.    The Skill and Efficiency of Counsel.........................................12

        4.    The Complexity and Duration of the Litigation .......................15

        5.    The Risk of Non-Payment .........................................................16

        6.    The Significant Time Devoted to This Case..............................18

        7.    The Range of Fees Typically Awarded .....................................19

    E.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check.................................................................................21

4904-2399-8981.v1

**Page**

F.   Reasonably Incurred Litigation Expenses Should Be Awarded .........24

B.   Lead Plaintiffs Are Entitled to Awards Pursuant to 15 U.S.C. §78u-4(a)(4) ................................................................................26

IV.   CONCLUSION.................................................................................28

4904-2399-8981.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abrams v. Lightolier Inc.*,
  50 F.3d 1204 (3d Cir. 1995) ......................................................................25

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
  77 F.4th 74 (2d Cir. 2023) ........................................................................17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)....................................................................................6

*Beltran v. SOS Ltd.*,
  2023 WL 319895, (D.N.J. Jan. 3, 2023),
  *report & recommendation adopted*,
  2023 WL 316294 (D.N.J. Jan. 19, 2023)...................................................21

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)..................................................................................6, 7

*Calhoun v. Invention Submission Corp.*,
  2023 WL 2403917 (W.D. Pa. Mar. 8, 2023) .............................................24

*Dartell v. Tibet Pharms., Inc.*,
  2017 WL 2815073 (D.N.J. June 29, 2017).......................................8, 10, 14

*Del. Cnty. Emps. Ret. Sys. v. Adapthealth Corp., et al.*,
  No. 2:21-cv-03382-HB, ECF 169
  (E.D. Pa. July 10, 2024)............................................................................20

*Fanning v. Acromed Corp.*,
  2000 WL 1622741 (E.D. Pa. Oct. 23, 2000) ...............................................8

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ........................................................................22

*Grier v. Chase Manhattan Auto. Fin. Co.*,
  2000 WL 175126 (E.D. Pa. Feb. 16, 2000) ..................................................8

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) ...............................................................*passim*

- iii -

**Page**

*Hall v. Accolade, Inc.*,
2020 WL 1477688 (E.D. Pa. Mar. 25, 2020) .......................................................8

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)............................................................................................9

*High St. Rehab., LLC v. Am. Specialty Health Inc.*,
2019 WL 4140784 (E.D. Pa. Aug. 29, 2019) .............................................11, 16

*Howard v. Arconic Inc.*,
No. 2:17-cv-01057-MRH, ECF 253 (W.D. Pa. Aug. 9, 2023)..........................20

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010) ...............................................................18

*In re AT&T Corp.*,
455 F.3d 160 (3d Cir. 2006) ........................................................................8, 22

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...............................................................24

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .............................................................................11

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ...............................................................................7

*In Re: Charles Schwab Corp. Sec. Litig.*,
No. 08-CV-01510-WHA, ECF No. 1101 (N.D. Cal.) ........................................13

*In re CIGNA Corp. Sec. Litig.*,
No. 2:02-cv-08088-MMB, ECF 288 (E.D. Pa. July 13, 2007)..........................27

*In re Computron Software, Inc.*,
6 F. Supp. 2d 313 (D.N.J. 1998).......................................................................12

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part*, 999 F. 3d 1247 (11th Cir. 2021).............................................................................23

4904-2399-8981.v1

**Page**

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ....................................................................7

*In re Ikon Office Sols., Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000).....................................................7, 14, 20, 22

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ....................................................................5

*In re Lucent Techs., Inc. Sec. Litig.*,
  327 F. Supp. 2d 426 (D.N.J. 2004)...............................................................8, 14

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
  2010 WL 547613 (D.N.J. Feb. 9, 2010) .........................................................21

*In re Novo Nordisk Sec. Litig.*,
  No. 3:17-cv-00209-ZNQ-LHG, ECF 361 (D.N.J. July 13, 2022).......................20

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 19, 2009),
  *aff'd*, 627 F.3d 376 (9th Cir. 2010)............................................................18

*In re Par Pharm. Sec. Litig.*,
  2013 WL 3930091 (D.N.J. July 29, 2013) ......................................................28

*In re Prudential Fin., Inc. Sec. Litig.*,
  No. 2:19-cv-20839-SRC-CLQ, ECF 78
  (D.N.J. June 13, 2024) ...........................................................................20

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ...................................................................22

*In re S.S. Body Armor I, Inc. v. Carter Ledgard & Milburn LLP*,
  927 F.3d 763 (3d Cir. 2019) ...................................................................23

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
  2012 WL 1964451 (D.N.J. May 31, 2012)...................................................16, 25

- v -

**Page**

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  2013 WL 5505744 (D.N.J. Oct. 1, 2013) ......................................................26, 27

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
  2024 WL 815503 (E.D. Pa. Feb. 27, 2024) .......................................................20

*In re Tesla, Inc. Sec. Litig.*,
  2022 WL 1497559 (N.D. Cal. Apr. 1, 2022)......................................................17

*In re Tesla, Inc. Sec. Litig.*,
  No. 3:18-cv-04865-EMC, ECF 671
  (N.D. Cal. Feb. 3, 2023) ...................................................................................17

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
  2021 WL 358611 (D.N.J. Feb. 1, 2021) ..............................................................9

*In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*,
  2022 WL 525807 (D.N.J. Feb. 22, 2022) ..........................................................24

*In re Veritas Software Corp. Sec. Litig.*,
  396 F. App'x 815 (3d Cir. 2010) ......................................................................22

*In re ViroPharma Inc. Sec. Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016)...................................................*passim*

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964).............................................................................................6

*Kanefsky v. Honeywell Int'l Inc.*,
  2022 WL 1320827 (D.N.J. May 3, 2022).........................................17, 19, 20, 27

*Li v. Aeterna Zentaris Inc.*,
  2021 WL 2220565 (D.N.J. June 1, 2021).........................................................28

*McDermid v. Inovio Pharms., Inc.*,
  2023 WL 227355 (E.D. Pa. Jan. 18, 2023)...................................................*passim*

*Mo. v. Jenkins by Agyei*,
  491 U.S. 274 (1989)...........................................................................................23

4904-2399-8981.v1

**Page**

*Moore v. GMAC Mortg.*,
2014 WL 12538188 (E.D. Pa. Sept. 19, 2014)................................................21

*Morrison v. Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010)........................................................................................18

*P. Van Hove BVBA v. Universal Travel Grp.*,
2017 WL 2734714 (D.N.J. June 26, 2017)........................................................8

*Pelletier v. Endo Int'l PLC*,
No. 2:17-CV-05114-MMB, ECF 417
(E.D. Pa. Apr. 8, 2022) ...................................................................................20

*Rowe v. E.I. DuPont de Nemours & Co.*
2011 WL 3837106 (D.N.J. Aug. 26, 2011) ......................................................10

*Schuler v. Meds. Co.*,
2016 WL 3457218 (D.N.J. June 24, 2016).................................................6, 9, 22

*Stevens v. SEI Invs. Co.*,
2020 WL 996418 (E.D. Pa. Feb. 28, 2020) .....................................................23

*Teh Shou Kao v. CardConnect Corp.*,
2021 WL 698173 (E.D. Pa. Feb. 23, 2021) .....................................................23

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)...........................................................................................6

*Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*,
2022 WL 118104 (E.D. Pa. Jan. 12, 2022)................................................8, 15, 27

*Whiteley v. Zynerba Pharms., Inc.*,
2021 WL 4206696 (E.D. Pa. Sept. 16, 2021)..................................................20

*Wood v. AmeriHealth Caritas Servs., LLC*,
2020 WL 1694549 (E.D. Pa. Apr. 7, 2020)......................................................23

*Yedlowski v. Roka Bioscience, Inc.*,
2016 WL 6661336 (D.N.J. Nov. 10, 2016)..................................................14, 25

4904-2399-8981.v1

**Page**

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(4) ...............................................................................1, 5, 26, 28
    §78u-4(a)(6) ...............................................................................5

Federal Rules of Civil Procedure
    Rule 23(h) ...............................................................................5

H.R. Conf. Rep. No. 104-369 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) .......................................26

4904-2399-8981.v1

Lead Counsel,[1] on behalf of all Lead Plaintiffs' Counsel, respectfully submit this memorandum of law in support of their motion for attorneys' fees and litigation expenses, and for awards to Lead Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) for their work on behalf of the Settlement Class.

## I.    OVERVIEW

This Settlement, consisting of $8.05 million in cash, which resulted from arm's-length mediation overseen by Robert Meyer, Esq. of JAMS, an experienced mediator, represents a very good recovery for the Settlement Class under the circumstances. The Settlement follows nearly five years of lengthy and hard-fought litigation. *See generally* Declaration of Alan I. Ellman in Support of: (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) ("Ellman Declaration" or "Ellman Decl."), submitted herewith.

Lead Counsel's request for an award of attorneys' fees and payment of litigation expenses, and Lead Plaintiffs' requests for awards pursuant to 15 U.S.C. §78u-4(a)(4), are reasonable and well within the range approved in similar matters and

---

[1]    Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation of Settlement, dated June 7, 2024 (ECF 112-2) (the "Stipulation").  All citations are omitted and emphasis is added unless otherwise indicated.

- 1 -

should be approved.  Lead Counsel advanced costs and devoted substantial time on a contingent basis to this complex matter, despite not knowing how long the litigation would last or whether there would ultimately be any recovery.  Throughout the Litigation, Lead Counsel faced off against highly sophisticated defense counsel.  Over the past five years, Lead Counsel conducted a thorough investigation into the facts giving rise to this Litigation; drafted complaints which they believed were sufficient to comply with the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"); opposed Defendants' motions to dismiss those amended complaints; moved for partial reconsideration of the Court's motion to dismiss order, and later moved to amend their complaint; propounded and responded to discovery; and identified and retained experts and consultants.  Ellman Decl., ¶¶22-37.  Lead Counsel also engaged in mediation and negotiations overseen by Robert Meyer.  All of this work resulted in the recovery presented here for final approval and supports Lead Counsel's fee and expense request.

Lead Counsel firmly believe that the Settlement is the result of their strenuous, diligent, and creative efforts, as well as their well-earned reputations as firms whose attorneys are unwavering in their dedication to the interests of the Settlement Class and willing to zealously prosecute a meritorious case through trial and subsequent appeals.  Here, in a case asserting claims based on complex legal and factual issues

- 2 -

that were opposed by highly skilled and experienced defense counsel, Lead Counsel succeeded in securing a very good result for the Settlement Class.

Lead Plaintiffs' Counsel dedicated a total of 6,406.50 hours of attorney and other professional staff time to bring the Litigation to this favorable resolution for Settlement Class Members.  Ellman Decl., ¶67.  In class actions like this one, which are prosecuted on a contingent-fee basis, courts often award fees representing a "multiplier" of counsel's lodestar (often one to four times the amount of their lodestar) to compensate counsel for taking the risks of non-recovery and other factors.  Here, however, Lead Plaintiffs' Counsel's requested 25% fee represents a negative lodestar multiplier of 0.426, meaning counsel's fee represents a substantial discount to their lodestar.

Further, the requested fees have been approved by the Court-appointed Lead Plaintiffs.  *See* Declarations of Lead Plaintiffs, submitted herewith.  Lead Plaintiffs evaluated the request for fees and expenses and have determined that the requested fees are warranted based on counsel's diligent and aggressive prosecution of the Litigation.  *Id.*  As a result, the fee request is entitled to a "presumption of reasonableness."  *In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *15-*16 (E.D. Pa. Jan. 25, 2016) ("Where the Lead Plaintiff approves the Lead Plaintiff's counsel's request[ed] fee award – as Lead Plaintiff does here – the Court should afford the fee requested a presumption of reasonableness.").

- 3 -

4904-2399-8981.v1

For all the reasons set forth herein, in the Ellman Declaration, and in the Memorandum of Law in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), Lead Counsel respectfully submit that the requested attorneys' fees and expenses are fair and reasonable under the applicable legal standards and should be awarded by the Court. Likewise, the modest awards sought by Lead Plaintiffs are fully justified given their efforts on behalf of the Settlement Class.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

To avoid repetition, Lead Counsel respectfully refer the Court to the accompanying Settlement Memorandum and the Ellman Declaration for detailed discussions of the factual background and procedural history of the Litigation, the extensive efforts undertaken by Lead Counsel and Lead Plaintiffs during the course of the Litigation, the risks of the Litigation, and the negotiations leading to the Settlement. *See generally* Ellman Declaration.

In summary, however, in the nearly five years that this case was actively litigated, Lead Counsel filed three amended complaints and had sought leave to file a fourth complaint; the parties briefed motions to dismiss, for partial reconsideration, and for leave to file a fourth amended complaint; Lead Counsel retained experts and consultants; propounded and responded to discovery; and engaged in arm's-length settlement negotiations overseen by an eminently qualified mediator. *Id*.

- 4 -

4904-2399-8981.v1

## III.    THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE APPROVED

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C.  §78u-4(a)(6).   The ultimate determination of the proper amount of attorneys' fees rests within the sound discretion of the court based on the facts of the case.  *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009).

Here, Lead Counsel request attorneys' fees of 25% of the Settlement Fund plus litigation costs, charges, and expenses.  Per the Stipulation, Lead Counsel will allocate the attorneys' fees among Lead Plaintiffs' Counsel in a manner that Lead Counsel in good faith believe reflects the contributions of such counsel to the prosecution and resolution of the Litigation.  Stipulation, ¶6.2.  Also, Lead Plaintiffs Doug Daulton, Francisco Quintana, Donald S. Parrish, and Quang Ma each seek an award of $10,000, for a total of $40,000, in connection with their representation of the Settlement Class pursuant to 15 U.S.C. §78u-4(a)(4).

These requests are fair and reasonable, and well within the range of fees and expenses typically granted in similar matters.  The Settlement is a very good result for the Settlement Class in the face of significant risks.  This case involved substantial

outlays of costs and attorney and staff time, with no guarantee of any ultimate recovery. Further, Lead Counsel brought substantial experience to their work on this case, and skillfully overcame defense counsel's determined opposition. For these reasons, and as detailed below, Lead Counsel respectfully request that these attorneys' fees, expenses, and PSLRA awards to Lead Plaintiffs be approved.

### A. Lead Plaintiffs' Counsel Are Entitled to a Fee from the Common Fund

It is well-established that an attorney "who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also, e.g.*, *ViroPharma*, 2016 WL 312108, at *15 (same). Courts have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund ensure that "'competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000); *Schuler v. Meds. Co.*, 2016 WL 3457218, at *8 (D.N.J. June 24, 2016). The Supreme Court has emphasized that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

- 6 -

Courts in this Circuit have consistently adhered to these teachings.  *See, e.g.*, *ViroPharma*, 2016 WL 312108, at \*15 ("'The common fund doctrine provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995)); *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 192 (E.D. Pa. 2000) ("[T]here is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members.").

**B.      The Court Should Award Attorneys' Fees Using the Percentage Approach**

The Supreme Court has recognized that it is appropriate to award counsel a reasonable percentage of a common fund as a fee.  *See Boeing*, 444 U.S. at 478-79. Further, the Third Circuit has noted that "the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005).  This is because the percentage method aligns counsel's interests with those of the class.

Courts in this Circuit recognize that the percentage-of-recovery method is preferred in common fund cases because it rewards counsel for success, penalizes counsel for failure, and ensures that "'competent counsel continue to be willing to undertake risky, complex, and novel litigation.'"  *Gunter*, 223 F.3d at 198; *see also*

- 7 -

*McDermid v. Inovio Pharms., Inc.*, 2023 WL 227355, at *11 (E.D. Pa. Jan. 18, 2023)

(same); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) ("In common fund cases

such as this one, the percentage-of-recovery method is generally favored . . . ."); *see*

*also Dartell v. Tibet Pharms., Inc.*, 2017 WL 2815073, at *8 (D.N.J. June 29, 2017)

("The percentage-of-recovery method is preferred in common fund cases because it

'rewards counsel for success and penalizes it for failure.'"); *P. Van Hove BVBA v.*

*Universal Travel Grp.*, 2017 WL 2734714, at *10 (D.N.J. June 26, 2017) (same); *Hall*

*v. Accolade, Inc.*, 2020 WL 1477688, at *10 (E.D. Pa. Mar. 25, 2020); *Fanning v.*

*Acromed Corp.*, 2000 WL 1622741, at *5 (E.D. Pa. Oct. 23, 2000); *Grier v. Chase*

*Manhattan Auto. Fin. Co.*, 2000 WL 175126, at *7 (E.D. Pa. Feb. 16, 2000).

### C.     The Requested Fee Is Presumptively Reasonable Because It Has Been Approved by the Court-Appointed Lead Plaintiffs

Lead Plaintiffs, investors who took an active role in the Litigation, support

approval of the requested fee.  Lead Plaintiffs' endorsement of the fee request

supports its approval.  *See, e.g.*, *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d

426, 442 (D.N.J. 2004).  Indeed, while approval of the fee is left to the sound

discretion of the Court, the fact the requested award has the support of Lead Plaintiffs

affords it a "presumption of reasonableness."  *See ViroPharma*, 2016 WL 312108, at

*15; *Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, 2022 WL 118104, at *11 (E.D. Pa.

Jan. 12, 2022) ("Given that Lead Plaintiff, a sophisticated entity, reviewed and

- 8 -

approved the fee, this presumption applies."); *see also In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2021 WL 358611, at *5 (D.N.J. Feb. 1, 2021) (same).

### D.   The Requested Fee Is Fair and Reasonable Under the *Gunter* Factors

Under Third Circuit law, district courts have considerable discretion on setting an appropriate percentage-based fee award in traditional common fund cases. *See, e.g., Gunter*, 223 F.3d at 195 ("We give [a] great deal of deference to a district court's decision to set fees.").

Nonetheless, in exercising that broad discretion, the Third Circuit has also noted that a district court should consider, "among other things," the following factors in determining a fee award:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* at 195 n.1. These factors "need not be applied in a formulaic way . . . and in certain cases, one factor may outweigh the rest." *Id.*; *Schuler*, 2016 WL 3457218, at *9. Here, each factor supports the requested 25% fee award.

### 1.   The Size of the Common Fund Created and the Number of Persons Benefited by the Settlement

In awarding fees, the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *ViroPharma*, 2016 WL 312108, at

- 9 -

*16 (same).  To assess this factor, courts "'consider the fee request in comparison to the size of the fund created and the number of class members to be benefitted.'" *Dartell*, 2017 WL 2815073, at *9 (quoting *Rowe v. E.I. DuPont de Nemours & Co.*, 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011)).

Here, the $8.05 million Settlement is a very good result that provides an immediate cash recovery to a large class of investors.  There were substantial risks to proceeding and proving liability and damages.  Ellman Decl., ¶¶10, 12-13, 44-45, 51; Settlement Memorandum, §V.C.  If this Litigation were to continue absent the Settlement, Lead Plaintiffs faced the significant risk that the remaining allegations in the case would be dismissed on a subsequent motion to dismiss or motion for summary judgment or at trial, decreasing the likelihood of obtaining any recovery in the future.  In light of this and other factors, after discussions and negotiations, Mr. Meyer recommended that the parties accept an $8.05 million settlement.  As discussed in the Settlement Memorandum (§V.C.4.), the Settlement is a good result under the circumstances.

Additionally, the "number of class members to be benefitted" by the Settlement is undoubtedly large, since the Settlement Class includes all Persons who purchased Aurora common stock on the New York Stock Exchange between October 23, 2018 and February 28, 2020, inclusive (excluding those individuals and entities who are excluded by definition or who request exclusion from the Settlement Class).  Likely

- 10 -

thousands of investors who bought Aurora common stock on the New York Stock Exchange during that period will benefit from the Settlement. *See* Settlement Memorandum, §II.B. (Over 495,800 Postcard Notices were sent to potential Settlement Class Members). For these reasons, the first *Gunter* factor clearly weighs in favor of approving the negotiated fee.

### 2. Reaction of Settlement Class Members to the Fee Request

Notice of this Settlement, including the fee request, has been provided to potential Settlement Class Members. *See* Declaration of Luiggy Segura Regarding: (A) Dissemination of Notice; (B) Publication/Transmission of the Summary Notice; (C) Establishment of Call Center Services and Website; and (D) Requests for Exclusion Received to Date, ¶8, submitted herewith. To date, ***no*** objections to the fee request have been submitted. Ellman Decl., ¶72. Thus, the reaction of the Settlement Class weighs in favor of approval of the requested fee. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (stating that "[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement"); *see also High St. Rehab., LLC v. Am. Specialty Health Inc.*, 2019 WL 4140784, at *4 (E.D. Pa. Aug. 29, 2019) ("A low number of objectors or opt-outs is persuasive evidence of the proposed settlement's fairness and adequacy."); *Inovio*,

- 11 -

2023 WL 227355, at *12 (fact that these were no objections to fee request "favors approval").

### 3. The Skill and Efficiency of Counsel

The third *Gunter* factor, the skill and efficiency of the attorneys involved, is measured by the "'quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *ViroPharma*, 2016 WL 312108, at *16 (quoting *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998)). Here, each of these considerations demonstrates the skill and efficiency of Lead Counsel and supports the requested fee.

Among other things, Lead Counsel investigated Defendants' conduct; drafted detailed complaints; opposed Defendants' motions to dismiss; moved for partial reconsideration of the Court's motion to dismiss order and thereafter moved to amend the complaint; and retained experts and consultants to assist them in pursuing claims against Defendants. Finally, Lead Counsel engaged in arm's-length settlement negotiations with an experienced mediator. *See generally* Ellman Decl.

By any measure, Lead Counsel's efforts have resulted in a highly favorable outcome for the benefit of the Settlement Class in a case where they very likely could have received nothing. The substantial and certain recovery obtained is the direct

4904-2399-8981.v1

result of the significant efforts of highly skilled and specialized attorneys who possess substantial experience in the prosecution of complex securities class actions. Lead Counsel have well-earned reputations as firms whose attorneys and staff will zealously litigate a meritorious case through the trial and appellate stages. *See, e.g.*, *Lawrence E. Jaffe Pension Plan v. Household Int'l, et al.*, No. 1:02-cv-05893 (N.D. Ill.) (Robbins Geller obtained $1.575 billion settlement after 14 years of litigation and prevailing at trial); *Hsing Ching Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865 (C.D. Cal.) (Robbins Geller securing 2019 jury verdict in securities fraud class action). *See also Inovio*, 2023 WL 227355, at *12 ("Additionally, Robbins Geller Rudman & Dowd LLP's skill and experience in securities class actions has been well noted (ECF 149-3) and favors approval of the requested award."); *see also Roberts v. Zuora, Inc. et al.*, No. 3:19-cv-03422-SI (N.D. Cal.) (on behalf of the certified class, Hagens Berman secured a $75.5 settlement, representing a recovery of five times greater than the median recovery obtained in comparable securities class actions cases in 2023); *In Re: Charles Schwab Corp. Sec. Litig.*, No. 08-CV-01510-WHA, ECF No. 1101 (N.D. Cal.) (Hagens Berman secured settlements totaling $235 million recovering 45 percent and 85 percent of investor losses for the two different classes; the Honorable William Alsup commented, "Class counsel did a good job persistently advocating for the best interests of the class members, and obtained a very good result for the class . . . ."); *Aequitas Investor Litig.*, No. 3:16-cv-00580-AC (D. Or.) (Hagens

- 13 -

Berman, on behalf of its clients, reached a unified $234 million settlement with defendants, allowing investors to recover 80% to 90% of their losses after the liquidation of the Aequitas estate).

Defendants undoubtedly considered this when they decided to forego further legal challenges and agreed to settle this case for $8.05 million.  Ultimately, this excellent result is the best indicator of the skill and expertise that Lead Counsel brought to this matter.  *See Lucent Techs.*, 327 F. Supp. 2d at 436 ("Indeed, 'the results obtained' for a class evidence the skill and quality of counsel.").

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by plaintiffs' counsel.  *See, e.g.*, *Ikon*, 194 F.R.D. at 194; *Dartell*, 2017 WL 2815073, at *9 ("'The quality and vigor of opposing counsel' is relevant when evaluating the quality of services rendered by Lead Counsel.") (quoting *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016)).  Defendants were represented by attorneys from Jenner & Block LLP and Marino, Tortorella & Boyle, P.C., prominent law firms with widely recognized experience and skill.  The ability of Lead Counsel to obtain such a favorable settlement for the Settlement Class in the face of such formidable opposition further confirms the superior quality of the representation.

- 14 -

## 4.    The Complexity and Duration of the Litigation

As detailed in the Ellman Declaration and the Settlement Memorandum, this Litigation has spanned nearly five years and involved full briefing on Defendants' motions to dismiss, motion for partial reconsideration of the Court's motion to dismiss order, and motion to amend the Complaint.  Document discovery requests had been propounded by each party.  As a result of the procedural posture of the case, and in light of the PSLRA's mandatory discovery stay pending denial of a motion to dismiss, formal fact discovery has just begun.  Therefore, this case would likely continue for many more years, through class certification; fact and expert discovery; summary judgment; trial; and subsequent appeals.

Multiple complex factual and legal issues are expected to arise in the course of this Litigation.  In light of the complexity and duration of this case, this factor favors approval of the requested attorneys' fees.  *See Healthcare Servs. Grp.*, 2022 WL 118104, at *12 ("Regarding the fourth [*Gunter*] factor, securities litigation is inherently complex, expensive, and lengthy, usually requiring expert testimony on variety of issues.  Without a settlement, a significant amount of time and resources would be necessary to bring the case to a close."); *see also Inovio*, 2023 WL 227355, at *12 ("With efforts spanning almost three years, Counsel's requested fees [of 27.5%] are justified.").

- 15 -

4904-2399-8981.v1

### 5.    The Risk of Non-Payment

Lead Plaintiffs' Counsel prosecuted this case on a contingency fee basis. Thus, without a settlement or a trial victory, they would go unpaid. This created an incentive to litigate the case aggressively and seek the best recovery possible. Unlike defendants' counsel, who are paid at an hourly rate and paid for their expenses on a regular basis, Lead Plaintiffs' Counsel have not been compensated for any time or expense since this case began in 2019. Since that time, Lead Plaintiffs' Counsel have expended over 6,400 hours in the prosecution of this Litigation and incurred $100,882.88 in litigation costs, charges, and expenses. "'Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval.'" *High St. Rehab.*, 2019 WL 4140784, at \*13; *see also In re Schering-Plough Corp. Enhance ERISA Litig.*, 2012 WL 1964451, at \*7 (D.N.J. May 31, 2012) ("*Schering-Plough I*") (approving 33.3% fee; noting that "the risk created by undertaking an action on a contingency fee basis militates in favor of approval").

Even though Lead Plaintiffs' claims survived in part following the third motion to dismiss, Lead Plaintiffs still faced hurdles in prevailing on a subsequent motion to dismiss, a class certification motion, and on Defendants' summary judgment motion, which they would undoubtedly file at the end of discovery, and later, at trial. As set forth in more detail in the Settlement Memorandum and the Ellman Declaration, Defendants argued that the discovery will confirm that they did not make any

- 16 -

materially false or misleading statement or omission, with scienter or otherwise.

Ellman Decl., ¶¶11, 51; Settlement Memorandum, §V.C.1.  Likewise, Defendants

have argued that there is no evidence to support loss causation or damages.  Ellman

Decl., ¶11; Settlement Memorandum, §V.C.1; *see also In re Tesla, Inc. Sec. Litig.*,

2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) and *In re Tesla, Inc. Sec. Litig.*, No. 3:18-

cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023) (jury verdict in favor of securities

fraud defendants where court had previously granted summary judgment in favor of

plaintiffs on certain elements).  In a "battle of the experts," the Court or jury could

side with Defendants' experts and find no damages or only a fraction of the damages

Lead Plaintiffs claimed.  *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at \*10

(D.N.J. May 3, 2022) (noting the various risks of nonpayment supporting the

requested fee).

The risk of no recovery for the class and counsel in complex cases of this type

is very real.  There are scores of hard-fought lawsuits where, because of the discovery

of facts unknown when the case was commenced, or changes in the law during the

pendency of the case, or a decision of a judge or jury following a trial on the merits,

extensive professional efforts of members of the plaintiffs' bar produced no fee for

counsel.  *See, e.g.*, *Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d

Cir. 2023) (class decertified following more than 12 years of litigation and appellate

and Supreme Court review, after plaintiffs' counsel incurred nearly $7 million in

- 17 -

expenses, and worked over 115,000 hours); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (court granted summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Even the most promising cases can be eviscerated by a sudden change in the law after years of litigation. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (After completing significant foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of some 40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)).

Because the fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result and that such a result would be realized only after considerable effort. This factor strongly favors approval of the requested fee.

### 6.    The Significant Time Devoted to This Case

The significant time that counsel devoted to this case favors approval of the requested attorneys' fees. Counsel collectively invested 6,406.50 hours of attorney and support staff time over the course of four-plus years and incurred $100,882.88 in expenses prosecuting this case for the benefit of the Settlement Class, without promise of payment of attorneys' fees or expenses if Lead Plaintiffs did not prevail on their

- 18 -

4904-2399-8981.v1

claims.  *See* Ellman Decl., ¶¶62-63; *see also* Declaration of Alan I. Ellman Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Fee and Expense Decl."), ¶¶4-5; Declaration of Shayne C. Stevenson Filed on Behalf of Hagens Berman Sobol Shapiro LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Hagens Berman Fee and Expense Decl."), ¶¶4-5; Declaration of James E. Cecchi Filed on Behalf of Carella, Bryne, Cecchi, Brody & Agnello, P.C. in Support of Application for Award of Attorneys' Fees and Expenses ("Carella Byrne Fee and Expense Decl."), ¶¶4-5, submitted herewith.

As discussed above and in the Ellman Declaration, this Litigation was actively litigated and vigorously defended for more than four years at the time the parties agreed to the Settlement.  Defendants fought Lead Plaintiffs at every step of the Litigation.  The successful resolution of this Litigation required Lead Plaintiffs' Counsel to commit a significant amount of time and expense to the case.[2]

### 7.    The Range of Fees Typically Awarded

"While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of

---

[2]  Lead Counsel's efforts will not end at final approval of the Settlement.  Many additional hours and resources will be expended assisting Settlement Class Members with claim administration. *Kanefsky*, 2022 WL 1320827, at *11.

- 19 -

the common fund." *Whiteley v. Zynerba Pharms., Inc.*, 2021 WL 4206696, at *12 (E.D. Pa. Sept. 16, 2021) (holding that this factor weighs in favor of approval where 33% fee request "falls in the middle" of the range of fees granted in comparable securities class actions in the Third Circuit); *see also Kanefsky*, 2022 WL 1320827, at *11 (finding 29.2% fee request "well within the reasonable range of awards approved by the Third Circuit and is consistent with similar class action settlements"); *ViroPharma*, 2016 WL 312108, at *17 (noting that "[i]n this Circuit, 'awards of thirty percent are not uncommon in securities class actions'") (quoting *Ikon*, 194 F.R.D. at 194) (citing cases).

Courts in the Third Circuit award fee percentages similar to (or above) the requested fee of 25% in this case. *See Del. Cnty. Emps. Ret. Sys. v. Adapthealth Corp., et al.*, No. 2:21-cv-03382-HB, ECF 169 (E.D. Pa. July 10, 2024) (awarding 25% of $51 million settlement); *In re Prudential Fin., Inc. Sec. Litig.*, No. 2:19-cv-20839-SRC-CLQ, ECF 78 (D.N.J. June 13, 2024) (awarding 25% of $35 million settlement); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 2024 WL 815503, at *17 (E.D. Pa. Feb. 27, 2024) (awarding 32% of $385 million settlement); *Howard v. Arconic Inc.*, No. 2:17-cv-01057-MRH, ECF 253 (W.D. Pa. Aug. 9, 2023) (awarding 33-1/3% of $74 million settlement); *In re Novo Nordisk Sec. Litig.*, No. 3:17-cv-00209-ZNQ-LHG, ECF 361 (D.N.J. July 13, 2022) (awarding 29% of $100 million settlement); *Pelletier v. Endo Int'l PLC*, No. 2:17-CV-

- 20 -

05114-MMB, ECF 417 (E.D. Pa. Apr. 8, 2022) (awarding 25% of $63.4 million settlement); *Beltran v. SOS Ltd.*, 2023 WL 319895, at *8 (D.N.J. Jan. 3, 2023) (Pascal, M.J.), *report & recommendation adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023), (awarding one-third of settlement as "within the typical range and . . . reasonable"); *Inovio*, 2023 WL 227355, at *12 (approving 27.5% of settlement as "within the norm for awards in common fund cases").  Because the requested fee is reasonable in relation to fees typically awarded in similar cases, this factor favors approval of the requested fee award.[3]

E.    **The Requested Fee Is Reasonable Under a Lodestar Cross-Check**

Courts in the Third Circuit may also use a "lodestar cross-check" to confirm the reasonableness of a percentage fee. *See Moore v. GMAC Mortg.*, 2014 WL 12538188, at *2 (E.D. Pa. Sept. 19, 2014) (stating that the "lodestar cross-check is 'suggested,' but not mandatory").  If used, the lodestar cross-check "should not displace a district

---

[3]    In evaluating attorneys' fee requests, courts in the Third Circuit have also considered factors such as whether the fee award "reflects commonly negotiated fees in the private marketplace," and any benefit received from the efforts of government agencies, or any innovative terms of settlement. *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *12-*13 (D.N.J. Feb. 9, 2010).  These additional factors also favor approval of the requested fee here, as the advancement of this case was based upon the efforts of counsel, not government agencies, and a 25% fee is lower than commonly negotiated contingent fees. *See id.* at *12 (noting that contingent fees in the private marketplace are commonly 30% to 40%).

4904-2399-8981.v1

court's primary reliance on the percentage-of-recovery method." *AT&T*, 455 F.3d at 164.[4]

The Third Circuit has recognized that when used, the lodestar cross-check "need entail neither mathematical precision nor bean-counting," and "district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005). The lodestar cross-check involves simply comparing counsel's "lodestar" – *i.e.*, timekeepers' hourly rates multiplied by the number of hours spent on the case – to the fee resulting from the requested percentage award, and assessing the reasonableness of the resulting multiplier. The appropriate multiplier varies based on the specifics of each case and "'need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award.'" *Schuler*, 2016 WL 3457218, at *10 (quoting *Rite-Aid*, 396 F.3d at 307).

The Third Circuit has recognized that percentage awards that result in positive multipliers "'ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.'" *In re Veritas Software Corp. Sec. Litig.*, 396 F.

---

[4] Placing too much emphasis on the lodestar method "may encourage attorneys to delay settlement or other resolution to maximize legal fees" and "may also compensate attorneys insufficiently for the risk of undertaking complex or novel cases on a contingency basis." *Ikon*, 194 F.R.D. at 193. Given its limited value, some courts consider a lodestar review "an inevitable waste of judicial resources." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000).

- 22 -

App'x 815, 819 (3d Cir. 2010); *accord In re S.S. Body Armor I, Inc. v. Carter Ledgard & Milburn LLP*, 927 F.3d 763, 774 (3d Cir. 2019); *Teh Shou Kao v. CardConnect Corp.*, 2021 WL 698173, at *11 (E.D. Pa. Feb. 23, 2021); *Wood v. AmeriHealth Caritas Servs., LLC*, 2020 WL 1694549, at *10 (E.D. Pa. Apr. 7, 2020); *see also Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *13 (E.D. Pa. Feb. 28, 2020) (approving multiplier of 6.16; noting that "multiples ranging from 1 to 8 are often used in common fund cases" to "compensate counsel for the risk of assuming the representation on a contingency fee basis").

Here, the lodestar cross-check further demonstrates the reasonableness of the requested fee percentage. As detailed in the Ellman Declaration, counsel spent over 6,400 hours of attorney and other professional time prosecuting the Litigation for the benefit of the Settlement Class. Ellman Decl., ¶67. Counsel's lodestar, derived by multiplying the hours spent on the Litigation by each attorney or other professional by his or her current hourly rate,[5] is $4,713,395.00.[6] In other words, the requested fee

---

[5]   The Supreme Court has approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *See Mo. v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989).

[6]   Courts have noted that it is appropriate to consider further time in the lodestar crosscheck; for example, time that will be needed to administer the settlement. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *39 (N.D. Ga. Mar. 17, 2020) (noting that "[i]n addition to time spent through final approval, class counsel estimate they will spend [significantly more time] to implement and

- 23 -

($2,012,500) is equal to approximately 42% of the value of the time expended by Lead Plaintiffs' Counsel. This fact strongly supports the reasonableness of the requested fee. *See, e.g.*, *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (approving fee with negative multiplier and noting it to be a "strong indication of the reasonableness of the [requested] fee"). *See also Calhoun v. Invention Submission Corp.*, 2023 WL 2403917, at *6 (W.D. Pa. Mar. 8, 2023) ("When, as here, the requested fee represents a lodestar multiplier of less than one, it 'reveals that the fee request constitutes only a fraction of the work that the attorneys billed and thus favors approval.'"); *In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, 2022 WL 525807, at *7 (D.N.J. Feb. 22, 2022) ("Unlike many others, Lead Counsel's lodestar results in a negative multiplier, thereby furnishing strong evidence that the requested fees are reasonable.").

## F.    Reasonably Incurred Litigation Expenses Should Be Awarded

Lead Plaintiffs' Counsel also request payment of costs, charges, and expenses incurred by them in connection with the prosecution of this Litigation in the aggregate amount of $100,882.88. Counsel in class actions are entitled to recover expenses that are "'adequately documented and reasonable and appropriately incurred in the prosecution of the class action.'" *ViroPharma*, 2016 WL 312108, at *18 (citing

---

administer the settlement"), *aff'd in part, rev'd in part*, 999 F. 3d 1247 (11th Cir. 2021). Such additional time will reduce the multiplier.

- 24 -

4904-2399-8981.v1

*Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *Schering-Plough I*, 2012 WL 1964451, at *8 (approving litigation expenses and noting that "[t]his type of reimbursement has been expressly approved by the Third Circuit").

The expenses borne by Lead Plaintiffs' Counsel are documented in the accompanying firm declarations. These expenses consist of typical categories, such as consultants, experts, travel, research costs, mediation fees, filing fees, postage, copying, and delivery. *See* Robbins Geller Fee and Expense Decl., ¶6; Hagens Berman Fee and Expense Decl., ¶6; Carella Byrne Fee and Expense Decl., ¶6. These expenses were reasonable and necessary to Lead Plaintiffs' prosecution of the claims and achieving the Settlement and are of the same type routinely approved in securities class actions. *See ViroPharma*, 2016 WL 312108, at *18 (approving costs and expenses for, among other things, experts, travel, copying, postage, telephone, filing fees, and online and financial research); *Yedlowski*, 2016 WL 6661336, at *23 (approving costs and expenses for experts, investigation, mediation, publishing notice, and online legal research, and noting that "[c]ourts have held that all of these items are properly charged to the [c]lass").

Further, the requested amount is less than the expense figure of up to $150,000 set out in the Postcard Notice and Notice; to date, there have been no objections to that proposed figure. For all of these reasons, the requested expense award should be approved.

- 25 -

### G.   Lead Plaintiffs Are Entitled to Awards Pursuant to 15 U.S.C. §78u-4(a)(4)

The Third Circuit has "favor[ed] encouraging class representatives, by appropriate means, to create common funds and to enforce laws." *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *37 (D.N.J. Oct. 1, 2013) ("*Schering-Plough II*").  The PSLRA expressly permits an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4).  In enacting this provision, "Congress explicitly acknowledged the importance of awarding appropriate reimbursement to class representatives."  *Schering-Plough II*, 2013 WL 5505744, at *37.  The reason behind permitting payment for services of a lead plaintiff was made clear in the congressional record:  "These provisions are intended to increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel."  H.R. Conf. Rep. No. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, at 731 (1995).  Thus, courts provide awards under 15 U.S.C. §78u-4(a)(4) to compensate class representatives for their time and effort in representing the class.

Lead Plaintiffs Doug Daulton, Francisco Quintana, Donald S. Parrish, and Quang Ma each seek an award of $10,000, for a total of $40,000, for the time Lead

- 26 -

Plaintiffs devoted to supervising counsel and participating in the Litigation. *See* Declaration of Doug Daulton ("Daulton Decl."), ¶5; Declaration of Francisco Quintana ("Quintana Decl."), ¶5; Declaration of Donald Parrish ("Parrish Decl."), ¶5; Declaration of Quang Ma ("Ma Decl."), ¶5; Ellman Decl., ¶73. The declarations describe Lead Plaintiffs' activities directly related to representing the Settlement Class, including: (i) consulting with counsel regarding the litigation and the Court's orders; (ii) reviewing and commenting upon pleadings, motions, and briefs; (iii) reviewing correspondence and status reports from counsel; (iv) responding to discovery requests and collecting documents for production; (v) conferring with counsel concerning litigation strategy; and (vi) monitoring settlement negotiations. Daulton Decl., ¶2; Quintana Decl., ¶2; Parrish Decl., ¶2; Ma Decl., ¶2.

The requested class representative awards are reasonable and are less than or equal to awards in many similar cases. *See, e.g.*, *AdaptHealth*, ECF 169 at 3 (approving awards to two lead plaintiffs totaling more than $13,000); *Kanefsky*, 2022 WL 1320827, at *12 (awarding $10,000 to each of the two class representatives); *Healthcare Servs. Grp.*, 2022 WL 118104, at *13 (awarding $12,500 to class representative); *In re CIGNA Corp. Sec. Litig.*, No. 2:02-cv-08088-MMB, ECF 288 at 1-2 (E.D. Pa. July 13, 2007) (approving awards to four lead plaintiffs totaling more than $130,000); *Schering-Plough II*, 2013 WL 5505744, at *37 (approving awards to four lead plaintiffs totaling more than $102,000); *id.*, at *56-*57 (in related matter,

- 27 -

approving awards to four separate lead plaintiffs totaling more than $109,000); *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at *11 (D.N.J. July 29, 2013) (approving award to lead plaintiff of $18,000); *Li v. Aeterna Zentaris Inc.*, 2021 WL 2220565, at *2 (D.N.J. June 1, 2021) (approving awards of $17,000 to each of the three lead plaintiffs). Lead Plaintiffs respectfully request that the proposed awards be approved.

## IV. CONCLUSION

For all the reasons stated above and in the accompanying declarations, Lead Counsel respectfully request that the Court: (i) award Lead Plaintiffs' Counsel attorneys' fees of 25% of the Settlement Amount and payment of litigation expenses of $100,882.88, plus the interest earned on both amounts; and (ii) award Lead Plaintiffs a total of $40,000 in connection with their representation of the Settlement Class pursuant to 15 U.S.C. §78u-4(a)(4).

DATED:  December 23, 2024

Respectfully submitted,

CARELLA, BYRNE, CECCHI,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
DONALD A. ECKLUND


*s/ James E. Cecchi*
JAMES E. CECCHI

- 28 -

5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Local Counsel*

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ALAN I. ELLMAN
(admitted *pro hac vice*)
MAGDALENE ECONOMOU
(admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
aellman@rgrdlaw.com
meconomou@rgrdlaw.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
ELLEN GUSIKOFF STEWART
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

- 29 -

HAGENS BERMAN SOBOL
  SHAPIRO LLP
STEVE W. BERMAN
(admitted *pro hac vice*)
SHAYNE C. STEVENSON
(admitted *pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206/623-7292
206/623-0594 (fax)
steveb@hbsslaw.com
shaynes@hbsslaw.com

HAGENS BERMAN SOBOL
  SHAPIRO LLP
REED R. KATHREIN
LUCAS GILMORE
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone:  510/725-3000
510/725-3001 (fax)
reed@hbsslaw.com
lucasg@hbsslaw.com

*Lead Counsel for Lead Plaintiffs and the
Proposed Class*

SCHALL LAW FIRM
BRIAN SCHALL
1880 Century Park East, Suite 404
Los Angeles, CA  90067
Telephone:  310/301-3335
310/338-0192 (fax)
brian@schallfirm.com

*Additional Counsel*

- 30 -